# Exhibit 2



## __Declaration of Custodian of Records__

**Insured**: TRAVEL ZAP INC

**Policy Number**: 60548-58-54

　　　　"My name is Hayley Gulley.  I am a duly authorized Custodian of Records or other qualified witness for Mid-Century Insurance Exchange _____ hereinafter called "The Company."  I am knowledgeable about the matters set forth herein and am familiar with the manner in which The Company records are created and maintained by virtue of my duties and responsibilities.  Attached are the requested documents and records.  These records are kept by The Company in the regular course of business, and it was the regular course of business of The Company for an employee or representative of The Company with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter.  The records attached hereto are the original or exact duplicates of the original."

☑ **CERTIFICATION OF RECORDS PROVIDED**

　　　- OR -

☐ **CERTIFICATION OF NO RECORDS**

　　　REASONS FOR NON COMPLIANCE:

　　　☐ Records requested have exceeded required retention period and have been destroyed.

　　　☐ Records do not exist for the dates requested.

　　　I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on 12/29/2021 _____ in Caledonia, Michigan.

Print Name: ____ Hayley Gulley ____　　Signature: ____ *Hayley Gulley* ____



**FARMERS**
INSURANCE

PRODUCER#: 08 22 09 32K
LISA BERENS
835 W WEBSTER AVE
CHICAGO      IL   60614

TRAVEL ZAP INC
29 E MADISON ST.
SUITE 400
CHICAGO      IL 60602

60548-58-54
12/29/21
03:06:47
A6054858540019
001
R8686
AUTOMATIC-RENEWAL
** REPRINT REQUEST **

CM057EP5
08

ADDIMANFLT

PRODUCER#: 08 22 09 32K
LISA BERENS
835 W WEBSTER AVE
CHICAGO                    IL    60614



**TRAVEL ZAP INC**
**29 E MADISON ST.**
**SUITE 400**
**CHICAGO        IL 60602**

60548-58-54
12/29/21
03:06:47
A6054858540019
001
R8686
AUTOMATIC-RENEWAL
** REPRINT REQUEST **

CM057EP5
08

ADDIMANFLT



**FARMERS**
**INSURANCE**

Dear Farmers® Customer,

Thank you for choosing Farmers for your Business Insurance needs.

In today's business environment, we understand that your business needs may change during the year. For example, you may acquire new equipment, adjust your staffing, add a new location, create electronic ordering and/or billing for your customers or begin offering new services.

**These changes may require updated insurance coverage for your business.**

Farmers and its agents want to help make you smarter about your insurance. To do that, we offer special services at no additional cost to you to help you ensure your business has the coverage it needs.

For example:

- Your agent will be happy to schedule a Farmers Friendly Review® with you. During this review, your agent can talk to you about available insurance discounts, potential coverage gaps, and new products that may be available to you. In addition, if there have been changes in your business since your last policy review, your premium may be eligible for additional pricing consideration.

- MysafetyPoint.com makes safety and loss control information available that may help you avoid workplace injuries and other losses.

  To access this information, log onto www.mysafetypoint.com, then register with your policy number and email address to find safety and loss control information that is specific to your type of business.

***ENCLOSED YOU WILL FIND YOUR POLICY DOCUMENTS. PLEASE REVIEW YOUR COVERAGES TO ENSURE THEY MEET YOUR NEEDS.***

If you have any questions, please contact your Farmers agent.

**Lisa Berens**
**Email: lberens@farmersagent.com**
**773-857-3500**

# Notice To Policyholders



Dear Farmers® Customer,

We are interested in providing you with the best insurance service possible. If you have any service problems or complaints, please contact the Farmers agent shown on your policy. Your agent will be happy to answer your questions. If, for any reason, you wish to contact one of our companies directly, please write or call our Service Center:

Farmers Insurance Group of Companies
Commercial Lines Customer Service
PO Box 2248
Grand Rapids, MI 49501-2248
(877) 411-4249

Inquiries to the State Department of Insurance should be addressed as follows:

Illinois Department of Insurance
Customer Service Section
320 W. Washington St.
Springfield, IL 62767-0001

25-5635 06-21                                                                                                     A5635401



# Farmers Insurance Group of Companies®
## Privacy Notice

In the course of our business relationship with you, we collect information about you that is necessary to provide you with our products and services. We treat this information as confidential and recognize the importance of protecting it. We value your confidence in us.

You trust us with an important part of your financial life. We are proud of our privacy policies and procedures and encourage you to review them carefully.

This notice from the member companies of the Farmers Insurance Group of Companies listed on the back of this notice* describes our privacy practices regarding information about our customers and former customers that obtain financial products or services from us for personal, family or household purposes.** When state law is more protective of individuals than federal privacy law, we will protect information in accordance with state law consistent with the requirements of federal preemption.

## Information We Collect

We collect and maintain information about you to provide you with the coverage, product or service you request and to service your account.

We collect certain information ("nonpublic personal information") about you and the members of your household ("you") from the following sources:

- Information we receive on applications or other forms, such as social security number, assets, income and property information;
- Information about your transactions with us, our affiliates or others, such as your policy coverage, premiums and payment history;
- Information we receive from a consumer reporting agency or insurance support organization, such as motor vehicle records, credit report information and claims history; and
- If you obtain a life, long-term care or disability product, information we receive from you, medical professionals who have provided care to you and insurance support organizations regarding your health.

## How we protect your information

At Farmers, our customers are our most valued assets. Protecting your privacy is important to us. We restrict access to personal information about you to those individuals, such as our employees and agents, who provide you with our products and services. We require those individuals to whom we permit access to your customer information to protect it and keep it confidential. We maintain physical, electronic, and procedural safeguards that comply with applicable regulatory standards to guard your nonpublic personal information.

We do not disclose any nonpublic personal information about you, as our customer or former customer, except as described in this notice.

## Information we disclose

We may disclose the nonpublic personal information we collect about you, as described above, to companies that perform marketing services on our behalf or to other financial institutions with which we have joint marketing agreements and to other third parties, all as permitted by law.

Many employers, benefit plans or plan sponsors restrict the information that can be shared about their employees or members by companies that provide them with products or services. If you have a relationship with Farmers or one of its affiliates as a result of products or services provided through an employer, benefit plan or plan sponsor, we will abide by the privacy restrictions imposed by that organization.

We are permitted to disclose personal health information (1) to process your transaction with us, for instance, to determine eligibility for coverage, to process claims or to prevent fraud; (2) with your written authorization, and (3) otherwise as permitted by law.

## Sharing information with affiliates

The Farmers family encompasses various affiliates that offer a variety of financial products and services in addition to insurance. Sharing information enables our affiliates to offer you a more complete range of products and services.

We may disclose nonpublic personal information, as described under Information we collect, to our affiliates, which include:

- Financial service providers such as insurance companies and reciprocals, investment companies, underwriters and brokers/dealers; and

- Non-financial service providers, such as management companies, attorneys-in-fact and billing companies.

We are permitted by law to share with our affiliates information about our transactions and experiences with you.

In addition, we may share with our affiliates consumer report information, such as information from credit reports and certain application information, that we have received from you and from third parties, such as consumer reporting agencies and insurance support organizations.

## Your choice

If it is your decision not to opt-out and to allow sharing of your information with our affiliates, you do not need to respond to us in any way.

If you prefer that we not share consumer report information with our affiliates, except as otherwise permitted by law, you may by calling toll free, 1-877-411-4249, (please have all of your policy numbers available). We will implement your request within a reasonable time after hearing from you.

## Modifications to our privacy policy

We reserve the right to change our privacy practices in the future, which may include sharing nonpublic personal information about you with nonaffiliated third parties. Before we do that, we will provide you with a revised privacy notice and give you the opportunity to opt-out of that type of information sharing.

## Website

Our website privacy notices, such as the one located at http://www.farmers.com/disclaimer/privacy-policy and http://cp.foremost.com/general/privacy-policy.htm, contain additional information particular to website use. Please pay careful attention to those notices if you transmit personal information to Farmers over the Internet.

## Recipients of this notice

We are providing this notice to the named policyholder at the mailing address to which we send your policy information. If there is more than one policyholder on a policy, only the named policyholder on that policy will receive this notice, though any policyholder may request a copy of this notice. You may receive more than one copy of this notice if you have more than one policy with Farmers. You also may receive notices from affiliates, other than those listed below. Please read those notices carefully to determine your rights with respect to those affiliates' privacy practices.

**Signed:**

Farmers Insurance Exchange, Foremost Insurance Company Grand Rapids, Michigan**, Foremost Signature Insurance Company**, Foremost Property and Casualty Insurance Company **, Fire Insurance Exchange, Truck Insurance Exchange, Mid-Century Insurance Company, Farmers Insurance Company, Inc. (A Kansas Corp.); Farmers Insurance Company of Arizona, Farmers Insurance Company of Idaho, Farmers Insurance Company of Oregon, Farmers Insurance Company of Washington, Farmers Insurance of Columbus, Inc.; Farmers New Century Insurance Company, Farmers Group, Inc.; Farmers Reinsurance Company, Farmers Services Insurance Agency, Farmers Services Corporation, Farmers Texas County Mutual Insurance Company, Farmers Underwriters Association, Farmers Value Added, Inc.; Farmers Financial Solutions, LLC member FINRA & SIPC***; FFS Holding, LLC; Farmers Services, LLC; ZFUS Services, LLC;, FIG Holding Company, FIG Leasing Co., Inc.; Fire Underwriters Association, Illinois Farmers Insurance Company, Mid-Century Insurance Company of Texas, Texas Farmers Insurance Company, Farmers New World Life Insurance Company, Truck Underwriters Association, Civic Property and Casualty Company, Exact Property and Casualty Company and Neighborhood Spirit Property and Casualty Company.

*The above is a list of the affiliates on whose behalf this privacy notice is being provided. It is not a comprehensive list of all affiliates of the Farmers Insurance Group of Companies.

**This notice does not apply to personal insurance policies issued by Foremost Insurance Company Grand Rapids, Michigan, Foremost Signature Insurance Company and Foremost Property and Casualty Insurance Company, but only to commercial insurance policies issued by these companies for business purposes. If you have obtained an insurance policy from these companies for personal, family or household purposes, you should refer to the privacy notice that you received with that policy.

***You may obtain more information about the Securities Investor Protection Corporation (SIPC) including the SIPC brochure by contacting SIPC at (202) 371-8300 or via the internet at www.sipc.org. For information about FINRA and Broker Check you may call the FINRA Broker Check hotline at (800) 289-9999 or access the FINRA website



**Notice to Policyholders  New Marijuana  Exclusion**

As you review the enclosed renewal policy, you will notice that an endorsement entitled **Marijuana Exclusion** has been added to your policy contract.  Marijuana has historically been excluded from coverage due to its classification as contraband. Due to changes in the legal status of marijuana and marijuana-related products at the state level, this new endorsement clarifies that your policy does not provide coverage for loss, damage or injury related to the ownership, sale or distribution of marijuana.

This notice is for informational purposes only; it is not a part of your insurance contract. It is not a substitute for reviewing your policy and the endorsements included with your policy. Please take a moment to carefully review your policy to better understand the terms and conditions of your coverage.

If you have any questions about this change to your insurance coverage, please contact your Farmers® agent.



## Important Notice – Regarding Supplementary Payments Coverage

Dear Farmers Customer,

Thank you for choosing Farmers[®] for your insurance needs. We appreciate your business and want to keep you informed of an update relating to your policy.

Your commercial insurance policy now contains endorsement J7230-ED1 Supplementary Payments.

This endorsement provides updated policy language in line with current industry standards as provided by Insurance Office Service (ISO) forms. This change may result in a reduction of coverage on your policy with regard to coverage for opposing party s attorney fees.

This notice is not a substitute for reviewing your policy and the endorsements included with your policy. Please review your policy to better understand the terms and conditions of your coverage.

If you have questions, please contact your Farmers agent.



**FARMERS**
**INSURANCE**

**Mid-Century Insurance Company (A Stock Company)**
Member Of The Farmers Insurance Group Of Companies®
**Home Office: 6301 Owensmouth Ave., Woodland Hills, CA 91367**

# COMMON POLICY DECLARATIONS

**Named Insured**  TRAVEL ZAP INC

**Mailing Address**  29 E MADISON ST.
SUITE 400
CHICAGO, IL 60602

| F003873657-001-00001 | |
| --- | --- |
| Account No. | Prod. Count |
| 22-09-32K | 60548-58-54 |
| Agent No. | Policy Number |

**Form of Business**
[ ] Individual   [ ] Joint Venture   [ ] Limited Liability Co.
[X] Corporation   [ ] Partnership   [ ] Other Organization

**Business Description:**
Travel Agencies

**Policy Period**
From _____ 09-16-2019 _____ (not prior to time applied for)
To _____ 09-16-2020 _____ 12:01 A.M. Standard time at your mailing address shown above.

If this policy replaces other coverage that ends at noon standard time of the same day this policy begins, this policy will not take effect until the other coverage ends. **This policy will continue for successive policy periods as follows:** If we elect to continue this insurance, we will renew this policy if you pay the required renewal premium for each successive policy period subject to our premiums, rules and forms then in effect.

This policy consists of the following coverage parts listed below and for which a premium is indicated. This premium may be subject to change.

| Coverage Parts | Premium After Discount And Modification |
| --- | --- |
| Businessowners | $623.00 |
| Employment Practices Liability | $35.00 |
| Cyber Liability And Data Breach Expense Coverage | $130.00 |
| Certified Acts Of Terrorism - See Disclosure Endorsement | Included |
| | |
| | |
| | |
| | |
| | |
| | |
| Total (See Additional Fee Information Below) | $788.00 |

56-2406  1-17
56-2406-ED2

C2406201  Page 1 of 3

**Policy Number:** 60548-58-54                    **Effective Date:** 09-16-2019

| **Forms Applicable To** | 25-9230ED3 | Reminder-Review Your Coverages |
|---|---|---|
| **All Coverage Parts:** | 56-5166ED5 | Additional Policy Conditions |
| | IL00030498 | Calculation Of Premium End |
| | IL00171198 | Common Policy Conditions |

**Your Agent**

Lisa Berens
835 W Webster Ave
Chicago, IL 60614
(773) 857-3500

Countersigned (Date)                    By Authorized Representative

**Policy Number:** 60548-58-54                    **Effective Date:** 09-16-2019

**Additional Fee Information**

The following additional fees apply on an account, not a per-policy, basis.

- A **service fee** will be assessed on every installment invoice and will be included in the minimum amount due. However, if you choose to pay the entire account balance in full upon receipt of the first installment, the fee will be waived. In addition, for accounts fully enrolled in online billing and scheduled for recurring Electronic Funds Transfer (EFT) payments the fee will be waived.

| State | Installment Fee |
|---|---|
| All states except Alaska, Florida, Maryland, New Jersey And West Virginia | $6.00 |
| Alaska and Maryland | Not applicable |
| Florida | $3.00 |
| New Jersey | $7.00 |
| West Virginia | $5.00 |

- A **returned payment fee** applies per check, electronic transaction or other remittance which is not honored by your financial institution for any reason including but not limited to insufficient funds or a closed account. ***NOTE: If the returned payment is in response to a Notice of Cancellation, coverage still cancels on the cancellation effective date set forth in the notice.***

| State | NSF Fee |
|---|---|
| All States Except Alaska, Florida, Indiana, Maine, Nebraska, New Jersey, North Dakota, Oklahoma, Virginia And West Virginia | $30.00 |
| North Dakota And Oklahoma | $25.00 |
| Nebraska And Indiana | $20.00 |
| Florida And West Virginia | $15.00 |
| Maine | $10.00 |
| Alaska, New Jersey And Virginia | Not applicable |

- A **late fee** will be assessed on each Notice of Cancellation that is issued and will be included in the minimum amount due.

| State | Late Fee |
|---|---|
| All States Except Alaska, Florida, Maryland, Missouri, Nebraska, New Jersey, Rhode Island, Virginia, South Carolina And West Virginia | $20.00 |
| Nebraska, Rhode Island And South Carolina | $10.00 |
| Alaska, Florida, Maryland, Missouri, New Jersey, Virginia And West Virginia | Not applicable |

The following applies on a per-policy basis.

- A **reinstatement fee** of $25.00 will be assessed if the policy is reinstated over 30 days but under 6 months from the cancellation date. *This fee does not apply to Florida, Indiana & Maryland or to Workers Compensation policies.*

One or more of the fees or charges described above may be deemed a part of premium under applicable state law.



Dear Valued Customer:

**THIS POLICY DOES NOT PROVIDE WORKERS´ COMPENSATION COVERAGE FOR JOB RELATED INJURIES TO YOUR EMPLOYEES.**

State law may require such coverage.  Be sure you are in compliance with the state law.

**FARMERS INSURANCE GROUP OF COMPANIES**

25-2110  3-98                                                                                      A2110101  PAGE 1  OF 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



**FARMERS**
**INSURANCE**

**E2010**
**3rd Edition**

## CONDITIONAL EXCLUSION OF TERRORISM
## (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
BUSINESSOWNERS LIABILITY COVERAGE FORM

### SCHEDULE

| |
|---|
| The **Exception Covering Certain Fire Losses** (Paragraph **B.2.**) applies to property located in the following state(s): |

| | |
|---|---|
| California | Oregon |
| Illinois | Virginia |
| Iowa | Washington |
| Missouri | Wisconsin |
| North Carolina | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** Coverage is amended as follows:

  **1. Applicability Of The Provisions Of This Endorsement**

  **a.** The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

  **(1)** The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Form; or

  **(2)** A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

  **(a)** Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

  **(b)** Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

  **(c)** Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

  **b.** If the provisions of this endorsement become applicable, such provisions:

  **(1)** Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to loss or injury or damage from an incident(s) of terrorism (however defined) that occurs on or after the date when the provisions of this endorsement become applicable; and

    **(2)** Remain applicable unless we notify you of changes in these provisions, in response to federal law.

  **c.** If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

**2.** The following definition is added and applies under this endorsement wherever the term terrorism is enclosed in quotation marks.

"Terrorism" means activities against persons, organizations or property of any nature:

**a.** That involve the following or preparation for the following:

  **(1)** Use or threat of force or violence; or

  **(2)** Commission or threat of a dangerous act; or

  **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**b.** When one or both of the following applies:

  **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

  **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**B.** The **Businessowners Special Property Coverage Form** is amended as follows:

**1.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

**a.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**b.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**c.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**d.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

**e.** The total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold is exceeded.

With respect to this Item **1.e.,** the immediately preceding paragraph describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form.

**2. Exception Covering Certain Fire Losses**

The following exception to the Exclusion Of Terrorism applies only if indicated and as indicated in the Schedule of this endorsement.

If "terrorism" results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverages or endorsements that apply to those coverages.

**3. Application Of Other Exclusions**

When the Exclusion Of Terrorism applies in accordance with the terms of Paragraph **1.a.** or **1.b.,** such exclusion applies without regard to the Nuclear Hazard Exclusion in this Coverage Form.

**C.** The **Businessowners Liability Coverage Form** is amended as follows:

**1.** The following definition is added and applies under this endorsement wherever the phrase any injury or damage, is enclosed in quotation marks:

"Any injury or damage" means any injury or damage covered under this Coverage Form or any applicable endorsement, and includes but is not limited to "bodily injury", "property damage" or "personal and advertising injury", as may be defined under this Coverage Form or any applicable endorsement.

**2.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**a.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**b.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**c.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**d.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

**e.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

   **f.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

      **(1)** Physical injury that involves a substantial risk of death; or

      **(2)** Protracted and obvious physical disfigurement; or

      **(3)** Protracted loss of or impairment of the function of a bodily member or organ.

   Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraph **2.e.** or **2.f.** are exceeded.

   With respect to this Exclusion, Paragraphs **2.e.** and **2.f.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form.

**D.** The following provision is added to the applicable Coverage Form:

   The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**



**FARMERS**
**INSURANCE**

**J6300**
**3rd Edition**

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

| SCHEDULE - PART I |
| --- |
| **Terrorism Premium (Certified Acts)** $      23.00 |
| **Additional information, if any, concerning the terrorism premium:** |

| SCHEDULE - PART II |
| --- |
| **Federal share of terrorism losses** __81__ **% Year: 20**19 <br> (Refer to Paragraph **B.** in this endorsement) |
| **Federal share of terrorism losses** __80__ **% Year: 20**20 <br> (Refer to Paragraph **B.** in this endorsement) |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

### A. Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

### B. Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

### C. Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



**ȷ7110**
**1st Edition**

## EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL
## OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM
BUSINESSOWNERS LIABILITY COVERAGE FORM
APARTMENT OWNERS LIABILITY COVERAGE FORM
CONDOMINIUM LIABILITY COVERAGE FORM

**A.** The following exclusion is added to Section **B. Exclusions**:

**Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability**

This insurance does not apply to damages, including but not limited to, "bodily injury" or "property damage" arising out of:

**1.** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**2.** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **1.** or **2.** above.

As used in this exclusion, electronic data means information, facts, recordings, images or computer programs stored as or on, created or used on, or transmitted to or from computer software, (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**B.** The following is added to Paragraph **B.1.p. Personal And Advertising Injury** Exclusion of the **Businessowners Coverage Form** and **Businessowners Liability Coverage** form and to Paragraph **B.1.q. Personal And Advertising Injury** Exclusion of the **Apartment Owners Liability Coverage Form** and **Condominium Liability Coverage Form:**

**Personal And Advertising Injury**

This insurance does not apply to damages, including but not limited to, "personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

**FARMERS**
**INSURANCE**

**Mid-Century Insurance Company (A Stock Company)**
Member Of The Farmers Insurance Group Of Companies

Home Office: 6301 Owensmouth Ave., Woodland Hills, CA 91367

# POLICY DECLARATIONS - SERVICE OR OFFICE
# PRIMARY POLICY

| | |
|---|---|
| **Named Insured** | TRAVEL ZAP INC |
| **Mailing Address** | 29 E MADISON ST.<br>SUITE 400<br>CHICAGO, IL 60602 |

**Policy Number**  60548-58-54

☐ **Auditable**

| **Policy Period** | From | 09-16-2019 | |
| | To | 09-16-2020 | 12:01 A.M. Standard time at your mailing address shown above. |

In return for the payment of premium and subject to all the terms of this policy, we agree with you to provide insurance as stated in this policy. We provide insurance only for those Coverages described and for which a specific limit of insurance is shown.

**Your Agent**

Lisa Berens
835 W Webster Ave
Chicago, IL 60614
(773) 857-3500

56-2407 1-15
562407-ED1

**Policy Number:** 60548-58-54                                                                  **Effective Date:** 09-16-2019

| PROPERTY, INLAND MARINE AND CRIME COVERAGES AND LIMITS | BUILDING |
|---|---|

**The following coverages apply to the described building. Please refer to the Base Coverages And Extensions section for other coverages and extensions applying at the policy level and to the individual location (premises) section for coverages and limits specific to the location (premises).**

**Option:** BV - Blanket Value (see Base Coverage & Extensions for the total limit)
**Valuation:** ACV - Actual Cash Value; AV - Agreed Value; RC - Replacement Cost;
ERC - Extended RC; FRC- Functional RC; GRC - Guaranteed RC
**Abbreviation:** ALS = Actual Loss Sustained; BI = Business Income; EE = Extra Expense

| Premises Number | Bldg. No. | Covered Premises Address | Mortgagee Name And Address |
|---|---|---|---|
| 001 | 001 | 29 E Madison St<br>Suite 400<br>Chicago, IL 60602 | |

| Coverage | Option | Valuation | Limit Of Insurance | Deductible/ Waiting Period |
|---|---|---|---|---|
| Business Personal Property (BPP) | | RC | $25,400 | $500 |

56-2407  1-15
562407-E1A

**Policy Number:** 60548-58-54                                         **Effective Date:** 09-16-2019

| PROPERTY, INLAND MARINE AND CRIME COVERAGES AND LIMITS CONTINUED | PREMISES |
|---|---|

The following coverages apply to the described location (premises). Please refer to the Base Coverages And Extensions section for other coverages and extensions applying at the policy level and to the individual building section for coverages and limits specific to the building.

| Premises Number | Bldg. No. | Covered Premises Address |
|---|---|---|
| 001 | All | 29 E Madison St Suite 400, Chicago, IL 60602 |

| Coverage | Limit Of Insurance | Deductible / Waiting Period |
|---|---|---|
| Accounts Receivables - On-Premises | $5,000 | $500 |
| Debris Removal | 25% Of Loss + 10,000 | |
| Personal Effects | $2,500 | $500 |
| Pollutant Clean Up And Removal Aggregate | $10,000 | $500 |
| Valuable Paper And Records - On-Premises | $5,000 | $500 |

56-2407  1-15
562407-E1B

**Policy Number:** 60548-58-54                 **Effective Date:** 09-16-2019

| PROPERTY, INLAND MARINE AND CRIME COVERAGES AND LIMITS OF INSURANCE |
|---|

The following Coverages and Extensions apply to all covered locations (premises) and/or buildings. Please refer to the individual location (premises) and/or building section for coverages and limits specific to such location (premises) and/or building.

| Base Coverages And Extensions | Limit Of Insurance | Deductible / Waiting Period |
|---|---|---|
| Accounts Receivables - Off-Premises | $2,500 | $500 |
| Arson Conviction Reward | $5,000 | None |
| Business Income & Extra Expense - Civil Authority | 3 Weeks | 72 Hours - BI |
| Business Income (BI) & Extra Expense (EE) | 18 Months - ALS | 72 Hours |
| BPP Seasonal Increase | 25% | |
| Drone Aircraft - Direct Damage (per occurrence) | $10,000 | $500 |
| Drone Aircraft - Direct Damage (per item) | $2,500 | $500 |
| Drone Aircraft - BI & EE | $10,000 | 72 Hours |
| Electronic Data Processing Equipment | $10,000 | $500 |
| Electronic Data Processing Media And Records | $2,500 | $500 |
| Employee Dishonesty | $5,000 | $5,000 |
| Extended Business Income | 30 Days | |
| Fire Department Service Charge | $1,000 | None |
| Fire Extinguisher Systems Recharge Expense | $2,500 | None |
| Forgery And Alteration | $2,500 | $500 |
| Limited Cov. - Fungi Wet Rot Dry Rot & Bacteria - Aggregate | $15,000 | $500 |
| Money And Securities - Inside Premises | $5,000 | $5,000 |
| Money And Securities - Outside Premises | $5,000 | $5,000 |
| Money Orders And Counterfeit Paper Currency | $1,000 | $500 |
| Newly Acquired Or Constructed Building | $250,000 | $500 |
| Outdoor Property | $2,500 | $500 |
| Outdoor Property - Trees, Shrubs & Plants (Per Item) | $500 | $500 |
| Outdoor Signs | $2,500 | $500 |
| Personal Property At Newly Acquired Premises | $100,000 | $500 |
| Personal Property Off Premises | $5,000 | $500 |
| Premises Boundary | 100 Feet | |
| Preservation Of Property | 30 days | |
| Valuable Paper And Records - Off-Premises | $2,500 | $500 |

**Policy Number:** 60548-58-54　　　　　　　　　　　　　　　　　　**Effective Date:** 09-16-2019

| LIABILITY AND MEDICAL EXPENSES |
| :---: |
| COVERAGE AND LIMITS OF INSURANCE |

Each paid claim for the following coverage reduces the amount of insurance we provide during the applicable policy period.  Please refer to the policy.

**Premium Basis:**　(A) Area;  (C) Total Cost;  (P) Payroll;  (S) Sales/Receipts; (U) Each Unit
　　　　　　　　　(M) Public Area Square Feet
　　　　　　　　　(O) Other:

**Covered Premises And Operations**

| Address | Classification /Exposure | Class Code | Prem. Basis | Annual Exposure | Rate | Advance Premium |
|---|---|---|---|---|---|---|
| 29 E Madison St Suite 400 Chicago, IL 60602 | Travel Agencies | 4724 | Incl | Included | Included | Included |

56-2407  1-15
562407-E1D

**Policy Number:** 60548-58-54                                           **Effective Date:** 09-16-2019

| LIABILITY AND MEDICAL EXPENSES COVERAGE AND LIMITS OF INSURANCE CONTINUED | |
|---|---|
| **Coverage** | **Amount /Date** |
| General Aggregate (Other Than Products & Completed Operations) | $4,000,000 |
| Products And Completed Operations Aggregate | $2,000,000 |
| Personal And Advertising Injury | Included |
| Each Occurrence | $2,000,000 |
| Tenants Liability (Each Occurrence) | $75,000 |
| Medical Expense (Each Person) | $5,000 |
| Pollution Exclusion - Hostile Fire Exception | Included |
| | |
| Per Location General Aggregate Limit | Included |

**Policy Number:** 60548-58-54                                    **Effective Date:** 09-16-2019

**Policy Forms And Endorsements Attached At Inception**

| Number | Title |
|---|---|
| 25-2110 | Work Comp Exclusion |
| 25-5635 | Dear Valued Customer-Doi Address |
| 25-9200 | Farmers Privacy Notice |
| 56-6191 | Cyber Liability & Data Breach Dec |
| 562377-ED1 | EPLI Dec |
| BP00021299 | Special Property Covg Form |
| BP00060197 | Businessowners Liab Covg Form |
| BP00090197 | Businessowners Common Policy Conditions |
| BP04170196 | Employment-Related Practices Excl |
| BP04340197 | Businessowners Computer Covg |
| BP04550197 | Business Liab Covg-Tenants Liab |
| BP05140103 | War Liability Exclusion |
| E2010-ED3 | Conditional Exclusion Of Terrorism |
| E2042-ED2 | Multiple Damages Excl |
| E3342-ED2 | Pers And Advert Injury Cov |
| E3451-ED1 | Retail Service Primary Pckg |
| E4288-ED1 | Excl-Travel Agts & Related Op |
| E6036-ED1 | Lead Poisoning & Contamination Excl |
| E6289-ED1 | Business Income & Extra Expense-18 Mos |
| J6300-ED3 | Discl Of Prem-Cert Acts Of Terror |
| J6316-ED1 | Excl Of Loss Due To Virus Or Bact |
| J6345-ED1 | Excl-Violation Of Statutes |
| J6351-ED2 | Limited Terrorism Exclusion |
| J6353-ED1 | Change To Limits Of Insurance |
| J6577-ED1 | EPLI - Standard |
| J6740-ED1 | Two Or More Coverage Forms |
| J6828-ED1 | Ltd Covg For Fungi, Wet/Dry Rot |
| J6847-ED1 | Limitation Of EPLI Covg |
| J6849-ED2 | Deductible Provisions |
| J7110-ED1 | Exclusion Confidential Info |
| J7115-ED1 | Asbestos Exclusion |
| J7122-ED1 | Loss Pay Cond-Proft Ovrhd Inc Fees |
| J7136-ED1 | Pollution Excl-Expanded Except |
| J7138-ED1 | Bus Inc And Extr Exp-Prt Slwdwn Cov |
| J7157-ED1 | Damage To Property Excl-Revised |
| J7182-ED1 | Drone Aircraft Coverage |
| J7230-ED1 | Supplementary Payments |
| S2269-ED1 | Marijuana Exclusion |
| S2274-ED4 | Mold & Microorganism Excl |
| S2294-ED3 | Illinois Amendatory Endorsement |
| S2297-ED1 | Illinois Changes-Defense Costs |

**Policy Number:**    60548-58-54                                                      **Effective Date:**   09-16-2019

**Policy Forms And Endorsements Attached At Inception**

| Number | Title |
|---|---|
| W1228-ED2 | Illinois Changes |



**FARMERS**
**INSURANCE**

# DECLARATIONS
## EMPLOYMENT PRACTICES INSURANCE COVERAGE - STANDARD

**THIS IS A CLAIMS MADE AND REPORTED POLICY. SUBJECT TO ITS TERMS, THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF APPLICABLE, PROVIDED SUCH CLAIM IS REPORTED IN WRITING TO THE INSURER AS SOON AS PRACTICABLE. WITHOUT NEGATING THE FOREGOING REQUIREMENTS, SUCH NOTICE OF CLAIM MUST ALSO BE REPORTED NO LATER THAN 30 DAYS AFTER THE END OF THE POLICY PERIOD OR, IF APPLICABLE, THE EXTENDED REPORTING PERIOD. AMOUNTS INCURRED AS DEFENSE COSTS SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY AND ARE SUBJECT TO THE RETENTIONS. THE INSURER SHALL NOT BE LIABLE FOR ANY DEFENSE COSTS OR FOR ANY JUDGMENT OR SETTLEMENT AFTER THE LIMIT OF LIABILITY HAS BEEN EXHAUSTED. PLEASE READ THIS POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT.**

Policy Number: **60548-58-54**

1. Named Insured: **TRAVEL ZAP INC**

   ☐ Individual  ☐ Partnership  ☒ Corporation  ☐ Joint Venture  ☐ Other

2. Policy Period: **09/16/19** to **09/16/20** at 12:01 A.M.
   (Standard Time at Your address shown below).

3. Address: **29 E MADISON ST.**
   **CHICAGO            IL 60602**

4. Limit Of Liability: (Includes Cost Of Defense)

   **(a)** Each Insured Event Limit           **$50,000**

   **(b)** Aggregate Limit of Liability           **$50,000**

5. Self Insured Retention (Includes Cost Of Defense):

   Any One Insured Event           **$2,500**

6. Prior Knowledge Date: **11/14/17**

7. Retroactive Date: **11/14/17**

8. Premium:           **$35.00**

9. Authorized Representatives:

   Farmers Insurance
   4450 Rosewood Drive
   Suite 400
   Pleasanton, CA 94588
   800-580-0115

10. Endorsements At Inception:
    Refer to Policy Declaration, Policy forms and Endorsements section
    for applicable Employment Practice Liability Insurance Coverage Form.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

 **FARMERS** INSURANCE

**S2294**
**ILLINOIS**
**3rd Edition**

## ILLINOIS AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY - STANDARD**

1. The term spouse is replaced by the following:

   Spouse or party to a civil union recognized under Illinois law.

2. The first sentence of paragraph J. of Clause **II. DEFINITIONS** is deleted and replaced with the following:

   **Loss** means damages, judgments, settlements, we authorize or agree to, statutory attorney fees and **Defense Costs.**

3. The first two sentences of Clause **III. WHEN COVERAGE IS PROVIDED D. Extended Reporting Period** are deleted and replaced with the following:

   If either you or we cancel or non-renew this Policy, you shall have the right to buy an Extended Reporting Period Endorsement providing an extended reporting period of up to twelve (12) months from the end of the Policy Period, or the effective date of cancellation, whichever is earlier, in exchange for your payment of an additional premium.

   The third paragraph of Clause **III. WHEN COVERAGE IS PROVIDED D. Extended Reporting Period** is deleted and replaced with the following:

4. However, if other insurance you buy covers you for any **Claim** or would cover you if its limits of coverage had not been exhausted, then the Extended Reporting Period will apply to such **Claim** only as excess coverage over such other insurance.

5. Clause **V. WHO IS AN INSURED F. Mergers and Acquisitions** is amended by deleting the phrase "nor for **Loss** covered under any other insurance" from the last sentence of the first paragraph thereof.

6. The second sentence of Clause **VIII. CONDITIONS D. Other Insurance** is deleted and replaced with the following:

   In connection with any other covered **Claim**, this Policy shall apply in excess of all indemnity rights of an **Insured** and shall share proportionately with any other valid or collectible insurance, based on the proportion the applicable LIMIT OF LIABILITY under this Policy bears to the applicable limits of liability of all such other insurance.

7. The second sentence of Clause **VIII. CONDITIONS F. Cancellation** is deleted and replaced with the following:

   If this policy has been in effect for sixty (60) days or less, we may cancel this policy for any reason by mailing written notice of cancellation to the last known mailing address of the **Named Insured** not less than thirty (30) days prior to the effective date of cancellation, except for a cancellation for non-payment of premium, in which case notice of cancellation will be mailed to the **Named Insured** at least ten (10) days prior to the effective date of cancellation.

   If this policy has been in effect more than sixty (60) days, we may cancel this policy for any of the following reasons:

   1. nonpayment of a premium;

   2. this policy was obtained through a material misrepresentation;

   3. any **Insured** violated any of the terms and conditions of this policy;

   4. the risk originally accepted has measurably increased;

   5. we certify to the Director of Insurance of the loss of reinsurance by us for all or a substantial part of the underlying risk insured; or

6. a determination is made by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of Illinois.

If we cancel this policy for the reason set forth in **1.** above, we will mail a written notice of cancellation to the last known mailing address of the **Named Insured** at least ten (10) days prior to the effective date of cancellation. If we cancel this policy for any of the reasons set forth in **2.**, **3.**, **4.**, **5.**, or **6.** above, we will mail a written notice of cancellation to the last known mailing address of the **Named Insured** at least sixty (60) days prior to the effective date of cancellation. Notice of cancellation shall also be sent to the producer of record, if applicable, provided that the producer of record is not our employee. The notice of cancellation shall include the specific reason for the cancellation. If the cancellation is for a reason other than non-payment of premium, the notice shall advise the **Named Insured** of the right to appeal the reasons for cancellation by mailing or delivering to the Director of Insurance, at least 20 days prior to the effective date of cancellation, a written request for a hearing which shall clearly state the basis for the appeal. We shall maintain proof of mailing of such notice on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

8. Paragraph **1.** of Clause **VIII. CONDITIONS G. Representations** is deleted and replaced with the following:

1. all statements in the **Application** and any attachments as well as all other information provided to us are true and complete;

9. Paragraph **4.** of Clause **VIII. CONDITIONS G. Representations** is deleted and replaced with the following:

4. in the event that any statement or representation in the **Application** is untrue, this policy in its entirety shall be void at inception and of no effect whatsoever if:

(a) the statement or representation shall have been made with the actual intent to deceive; or

(b) the statement or representation materially affects either the acceptance of the risk or the hazard assumed by us.

10. The first paragraph of Clause **VIII. CONDITIONS H. When We Do Not Renew** is deleted and replaced with the following.

If we decide not to renew this policy, if we increase the renewal premium on this policy by thirty percent (30%) or more, or if we impose changes in the Self-Insured Retention or coverage that materially alter this policy, we shall mail written notice to the last known address of the **Named Insured** at least sixty (60) days before the end of the Policy Period. A copy of such notice shall be sent to the producer of record, if applicable, provided that the producer of record is not our employee. A notice of nonrenewal shall provide a specific explanation of the reasons for nonrenewal. A notice of increase in premium shall state the specific dollar amount of the premium. If the policy is nonrenewed for a reason other than non-payment of premium, the notice shall advise the **Named Insured** of the right to appeal the reasons for nonrenewal by mailing or delivering to the Director of Insurance, at least 20 days prior to the effective date of nonrenewal, a written request for a hearing which shall clearly state the basis for the appeal.

An assignment or transfer of the policy by us to an insurer in the same holding company system, or under common control and management with us, or as a result of a merger, acquisition or restructuring, is not a nonrenewal for purposes of this section; however, notice of an assignment or transfer shall be provided at least sixty (60) days prior to the renewal date, with a copy sent to the producer of record, if applicable, provided that the producer of record is not our employee.

11. Clause **VIII. CONDITIONS K. False Or Fraudulent Claims** is deleted and replaced with the following:

If any **Insured** shall proffer any **Claim** knowing the same to be false or fraudulent as regards amount or otherwise, there will be no coverage for such **Claim** under this Policy.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

 **FARMERS** INSURANCE

J**6577**
**1st Edition**

## EMPLOYMENT PRACTICES LIABILITY INSURANCE - STANDARD

**THIS IS A CLAIMS MADE AND REPORTED POLICY. AMOUNTS INCURRED AS DEFENSE COST SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY AND ARE SUBJECT TO THE RETENTIONS. THE INSURER SHALL NOT BE LIABLE FOR ANY DEFENSE COST OR FOR ANY JUDGEMENT OR SETTLEMENT AFTER THE LIMIT OF LIABILITY HAS BEEN EXHAUSTED.**

The consideration for our issuing this policy is the payment of Premium; in issuing the policy, we have relied upon all statements made to us in the **Application** and any attachments and all other information provided to us.

Throughout this policy the words **"you"** and **"your"** refer to the **Named Insured** shown in the Declarations.

Under this policy the words **"we", "us"** and **"our"** refer to the Underwriters providing this insurance.

The word "Insured" means any person or organization qualifying as such under **WHO IS INSURED.**

**READ THIS POLICY CAREFULLY TO DETERMINE THE EXTENT OF COVERAGE. IMPORTANT: THIS IS A CLAIMS FIRST MADE AND REPORTED POLICY WHICH INCLUDES COSTS OF DEFENSE WITHIN THE LIMIT OF LIABILITY.**

## I. COVERAGE: WHAT IS COVERED

**A.** We will pay **Loss** amounts that an **Insured** is legally obligated to pay on account of a **Claim** because of an **Insured Event** to which this policy applies. However, the amount we will pay is limited as described in the **LIMIT OF LIABILITY** and **SELF INSURED RETENTION** sections of this policy.

**B.** This policy applies only if:

**(1)** A **Claim** is first made against an **Insured** in accordance with **WHEN COVERAGE IS PROVIDED**;

**(2)** The **Claim** is reported in accordance with **WHEN COVERAGE IS PROVIDED** and **CONDITIONS** section **VIII.A. Duties in the event of a Claim**;

**(3)** A **Claim** is first made against an **Insured** in accordance with **WHERE COVERAGE IS PROVIDED**; and

**(4)** A **Claim** is first made against an **Insured** based upon an **Insured Event** that first occurred after the Retroactive Date set forth in the Declarations.

**C. Defense.** We have the right and duty to defend any **Claim** for an **Insured Event** made or brought against any Insured to which this policy applies. We have the right to choose counsel to defend a **Claim** that we are covering. We have no duty to provide other services or take other actions. Our duty to defend any **Claim** ends when the **LIMIT OF LIABILITY** that applies has been exhausted, and in such event, the **Named Insured** shall, upon notice from us, promptly take over control of the defense.

We have the right to investigate and to settle any **Claim** for an **Insured Event** in the manner and to the extent that we believe is proper, contingent upon the consent of the **Named Insured** as defined in this policy. This includes the right to agree to post a notice of compliance, provided such notice does not contain an admission of liability.

You may take over control of any outstanding **Claim** previously reported to us only if we both agree that you should, if required under law or if a court orders you to do so.

If your **LIMIT OF LIABILITY** is exhausted, we will notify you of all outstanding **Claims** so that you can take over control of their defense. We will help to transfer control to you.

**D. During the transfer of control.** We agree to take whatever steps are necessary to continued the defense of any outstanding **Claim** and avoid a default judgment during the transfer of control to you. If we do so, you agree to pay reasonable expenses that we incur for taking such steps after the **LIMIT OF LIABILITY** is exhausted.

**E. Duty to pay.** We have the duty to pay any **Loss** (after you pay the applicable self-insured retention) that results from any **Claim** for an **Insured Event** made or brought against any **Insured** to which this policy applies. Our duty to pay ends when the applicable **LIMIT OF LIABILITY** has been exhausted. We will not pay more than the applicable **LIMIT OF LIABILITY** .

We have the duty to pay **Defense Costs** incurred (after you pay the applicable self-insured retention) for the defense of any **Claim** that is controlled by us. Any payment of **Defense Costs** is included in the **LIMIT OF LIABILITY**, it is not in addition to the **LIMIT OF LIABILITY.**

**F. Recommended Settlements.** As respects any **Claim** for which we recommend that a settlement offer be accepted but you do not give your consent to such settlement, and the **Claim** later results in a judgment or settlement in excess of the recommended settlement, our liability for **Loss** on account of such **Claim** shall not exceed the recommended settlement amount plus **Defense Costs** incurred as of the date we recommended the settlement. This provision shall not apply unless the total **Loss**, including the recommended settlement, would exceed the applicable Retention amount.

## II. DEFINITIONS

**A. Application** means each and every signed **Application**, any attachments to such **Applications**, other materials submitted therewith and incorporated therein and any other such documents submitted in connection with the underwriting of this policy or the underwriting of any other employment practices liability policy issued by us, or any of our affiliates, of which this policy is a renewal, replacement or which succeed it in time.

**B. Claim(s)** means a written complaint or written charge made against an **Insured** or a written demand made against an **Insured** in which damages are alleged or where specific charges of **Discrimination**, **Harassment**, **Inappropriate Employment Conduct** are brought.

**Claim** includes a civil action, suit or administrative proceeding, to which any Insured must submit or to which any **Insured** submits with our consent.

But **Claim** shall not mean any labor or grievance arbitration subject to a collective bargaining agreement; or any complaint, writ or other proceeding in which an **Insured** is alleged to have committed or engaged in a criminal offense or violation of a federal, state of local penal law.

**C. Defense Costs** means those reasonable and necessary expenses that result from the investigation, settlement or defense of a specific **Claim** including attorney fees and expenses, the cost of legal proceedings, the cost of appeal bonds, the cost of bonds to release property being used to secure a legal obligation (but only for bond amounts within the **LIMIT OF LIABILITY** that applies). We have no obligation to furnish any bonds.

The following are not **Defense Costs**: costs incurred by any Insured before notice is provided to us; salaries and expenses of your employees, including in-house and/or coverage attorneys, salaries and expenses of our employees, or our in-house or coverage attorneys or the fees and expenses of independent adjusters we hire.

**D. Discrimination** means termination of the employment relationship, a demotion, a failure or refusal to hire or promote, denial of an employment benefit or the taking of any adverse or differential employment action because of race, color, religion, age, sex, disability, pregnancy, sexual orientation, national origin, or any other basis prohibited by federal, state or local law occurring on or after the Retroactive Date as shown in the Declarations.

This policy covers retaliation claims based on unlawful discrimination occurring on or after the Retroactive Date as shown on the Declarations Page, except as excluded in **EXCLUSIONS: WHAT IS NOT COVERED** section **IX.**

**E. Employee** means an individual whose labor or service is engaged by and directed by the **Named Insured**, or any covered entity. This includes volunteers, part time, seasonal and temporary **Employees** as well as any individual employed in a supervisory, managerial or confidential position. Independent contractors and sub contractors are not **Employees** unless they are dedicated agents or representatives of an **Insured**. **Employees** who are leased to another employer are not **Employees**.

**F. Harassment** means unwelcome sexual or non-sexual advances, requests for sexual or non-sexual favors or other verbal, visual or physical conduct of a sexual or non-sexual nature, where such harassment occurs on or after the Retroactive Date as shown in the Declarations and is based on a factor or category prohibited by law (including sex, race, age, national origin, disability, etc.), that (1) explicitly or implicitly are made a condition of employment, (2) are used as a basis for employment decisions, or (3) create a work environment that interferes with performance.

**G. Inappropriate Employment Conduct** means any of the following occurring on or after the Retroactive Date as shown in the Declarations:

**1.** actual or constructive termination of an employment relationship in a manner which is alleged to have been against the law or wrongful or in breach of an implied employment contract or breach of the covenant of good faith and fair dealing in the employment contract;

**2.** allegations of wrongful demotion, or wrongful discipline;

**3.** allegations of misrepresentation made by an **Employee**, a former **Employee** or an applicant for employment which arise from an **Insured's** employment decision to hire, fire, promote or demote;

**4.** allegations of infliction of emotional distress, mental injury, mental anguish, shock, sickness, disease or disability made by an **Employee**, a former **Employee** or an applicant for employment which arise from an **Insured's** employment decision to hire, fire, promote or demote;

**5.** allegations of false imprisonment, detention or malicious prosecution made by an **Employee**, a former **Employee** or an applicant for employment which arise from the **Insured's** an employment decision to hire, fire, promote or demote;

**6.** allegations of libel, slander, defamation of character or any invasion of right of privacy made by an **Employee**, a former **Employee** or an applicant for employment which arise from an **Insured's** employment decision to hire, fire, promote or demote; or

**7.** other personal injury allegations made by an **Employee**, a former **Employee** or an applicant for employment which arise from an **Insured's** employment decision to hire, fire, promote or demote.

**Inappropriate Employment Conduct** shall not include any allegations other than those set forth above.

**H. Insured Event** means actual or alleged acts of **Discrimination**, **Harassment**, and/or **Inappropriate Employment Conduct**, by an **Insured** against an **Employee** or former **Employee** or applicant for employment with an **Insured** entity occurring on or after the Retroactive Date as shown in the Declarations. **Insured Event** shall not include **Claims** for actual or alleged violation of any federal, state or local wage and hour laws or regulations.

**I. Laundry List Notification** means any attempt by an **Insured** to report multiple matters under this policy in a summary fashion that does not comply with **CONDITIONS** section **VIII. A. or B.** By way of example, a **Laundry List Notification** may consist of a report by an **Insured** that lists purported potential claimants, either in the absence of a **Claim**, or in the absence of an oral complaint.

**J. Loss** means damages, judgments (including prejudgment and post judgment interest awarded against an **Insured** on that part of any judgment paid by us), settlements, we authorize or agree to, statutory attorney fees and **Defense Costs**.

However, **Loss** does not include anything specifically excluded in **EXCLUSIONS: WHAT IS NOT COVERED** section **IX**, or any of the following:

1. salary or wages of the **Insured**;

2. non-monetary relief (this provision does not apply to Defense Costs where non-monetary relief is sought for alleged **Harassment**, **Discrimination**, **Inappropriate Employment Conduct** ;

3. payment of insurance plan benefits by or on behalf of retired **Employees**, or that to which a claimant would have been entitled as an **Employee** had any **Insured** provided the claimant with a continuation of insurance;

4. liquidated damages where there is a finding of wilfulness;

5. costs incurred by an **Insured** to modify or adapt any building or property in order to make such building or property more accessible or accommodating to any disabled person; costs associated with eliminating non-essential duties from the job description of a disabled person; costs associated with providing a disabled person with reasonable workplace accommodations; and costs associated with lost productivity by an employer as the result of making a reasonable workplace accommodation for a disabled person;

6. matters which may be deemed uninsurable according to the law under which this policy is construed;

7. amounts owed under federal, state or local wage and hour laws;

8. amounts owed under a contract of employment;

9. commissions, bonuses, profit sharing or benefits pursuant to a contract of employment, including but not limited to vacation, holiday, and/or sick pay;

10. severance payments or obligations to make payments;

11. amounts that are sought or deemed to be owed under partnership, stock or other ownership agreements;

12. fines, penalties and taxes; or

13. punitive or exemplary damages.

**K. One Insured Event** means (1) one or more covered allegations of **Discrimination**, **Harassment** and/or **Inappropriate Employment Conduct** which are related by an unbroken chain of events or (2) class action or multiple claimant or multiple plaintiff suits arising out of related **Insured Events** .

**L. Subsidiary** means any organization more than 50% owned by the Named Insured listed in the **Application**.

## III. WHEN COVERAGE IS PROVIDED

**A.** This policy applies only to **Claims** arising out of an **Insured Event** first made or brought during the **Policy Period** and which are reported to us in accordance with the policy's notice provisions as set forth in **CONDITIONS** section **VIII. A. Duties in the Event of a Claim**. **Claims** are considered to be first made when it is first served or received by the **Insured**.

**B.** All **Claims** because of **One Insured Event** will be considered to have been made or brought on the date that the first of those **Claims** was first made or brought.

**C.** Limited Reporting Period: means the thirty (30) day period after the policy ends, during which **Claims** because of **Insured Events** which happen or commence during the **Policy Period** and are reported in accordance with section **I.** and **VIII.** of the policy can be made.

**D.** Extended Reporting Period. If you cancel this Policy or this Policy is non-renewed, you shall have the right to buy an Extended Reporting Period Endorsement providing an extended reporting period of up to twelve (12) months from the end of the Policy Period, or the effective date of cancellation, whichever is earlier, in exchange for your payment of an additional premium. You do not have this right, however, if we cancel for non payment of premium.

The Extended Reporting Period Endorsement will not be issued unless we receive a written request for it within thirty (30) days after this policy is cancelled or non-renewed, nor will it take effect unless the additional Premium is paid within thirty (30) days after this policy is cancelled or non-renewed. Once that Premium is paid the endorsement may not be cancelled and the additional Premium will be fully earned.

The additional premium for a 12 month Extended Reporting Period will be one hundred percent (100%) of the premium charged for the last Policy Period.

However, the Extended Reporting Period will not apply to any **Claim** if other insurance you buy covers you or would cover you if its limits of coverage had not been exhausted.

Coverage under the Extended Reporting Period is with respect to **Claims** first made against an **Insured** during the Policy Period or Extended Reporting Period and first reported by an **Insured** during the Extended Reporting Period, provided always that **Claims** reported during the Extended Reported Period are limited to **Insured Events** which happen or commence before the original Policy Period ends by either cancellation or non-renewal and which are otherwise covered by this policy.

The **LIMIT OF LIABILITY** that applies at the end of the Policy Period is not renewed or increased and the Limits, as shown in the Declarations, shall not be increased in any way by the Limited Reporting Period or the addition of the Extended Reporting Period.

**E.** If, during the Policy Period, any of the following changes occur:

**1.** the acquisition of an **Insured**, or of all or substantially all of its assets, by another entity, or the merger or consolidation of an **Insured** into or with another entity such that the **Insured** is not the surviving entity; or

**2.** the obtaining by any person, entity or affiliated group of persons or entities of the right to elect, appoint or designate over fifty percent (50%) of the directors of an **Insured**.

coverage under this policy with respect to such **Insured** will continue in full force and effect with respect to **Claims** for **Insured Events** committed before such change, but coverage with respect to such **Insured** will cease with respect to **Claims** for **Insured Events** committed after such change. After any such change, this policy may not be cancelled, regardless of **CONDITIONS** section **VIII.F.** Cancellation, and the entire Premium for the policy will be deemed fully earned.

## IV. WHERE COVERAGE IS PROVIDED

This policy covers **Claims** made and **Insured Events** occurring anywhere in the United States of America or its territories.

## V. WHO IS INSURED

**A. Individual.** If you are shown in the Declarations as an individual, you and your spouse are **Insureds** but only for the conduct of a business of which you are the sole owner.

**B. Corporation.** If you are shown in the Declarations as a corporation or organization other than a partnership or joint venture, you are an Insured. Your stockholders are also **Insureds**, but only with respect to their liability as your stockholders.

**C. Partnership or Joint Venture.** If you are shown in the Declarations as a partnership or joint venture, you are an **Insured**. Your partners or co-venturers and their spouses are also **Insureds**, but only for the conduct of your business.

However, no person nor organization is covered for the conduct of any current or past partnership or joint venture not named in the Declarations.

**D. Other.** If you are a Limited Liability Corporation (LLC), or a Limited Liability Partnership ('LLP') of the Named Insured and you are shown in the Declarations as 'Other' you are an **Insured**. Your members, partners and shareholders are also **Insureds** but only with respect to the conduct of your business.

**E. Employees.** Your **Employees**, executive officers, directors and your trustees are **Insureds** only for the conduct of your business within the scope of their employment. Your **Employee's** status as an **Insured** will be determined as of the date of the **Discrimination**, **Harassment**, **Inappropriate Employment Conduct**, which caused an **Insured Event**.

**F. Mergers and Acquisitions.** Any organization that you newly acquire, form or merge with while this policy is in effect that has less than 10% of the total number of your **Employees** as of the inception date of this policy shall be an **Insured** at the time of such acquisition, merger or formation if you own at least fifty one percent (51%) of it. Within thirty (30) days prior to the expiration of the policy, the **Insured** shall give us written notice as to all such organizations. If you acquire, form or merge with any organization that has more than 10% of the total number of your **Employees** as of the inception date of this policy, such organization is also an **Insured** if you own at least fifty one (51%) of it; provided, however, no such organization is covered for more than forty five (45) days or the remainder of the Policy Period, whichever is less, from the date acquired, merged or formed unless we agree to cover such acquisition or newly formed organization within such forty five (45) day period in consideration of an additional Premium to be determined by us. Notwithstanding the foregoing, any acquired or formed organization is neither covered for **Loss** that results from an **Insured Event** that happened or first commenced before the **Insured** acquired or formed it; nor for **Loss** covered under any other insurance.

This provision does not apply to a partnership or joint venture. Nor does it apply to any organization once it is shown in the Declarations of this policy.

**G. Subsidiary.** Any organization more than 50% owned by the Named **Insured** and listed in the **Application** shall be an **Insured**.

## VI. LIMIT OF LIABILITY

**A.** The amount shown at Item 4 (a) in the Declarations as the "Each Insured Event Limit" is the most we will pay for **Claims** first made or brought during the Policy Period for **Loss** that results from any **One Insured Event** regardless of the number of **Claims**.

**B.** The amount shown at Item 4 (b) in the Declarations as the "Aggregate Limit of Liability" is the most we will pay for the combined total of all **Claims** first made or brought during the Policy Period for **Loss** that result from all **Insured Events**.

If this Policy Period is extended, the Limits, as shown in the Declarations shall not in any way increase. For purposes of the **LIMIT OF LIABILITY,** any policy extension is considered to be part of and not in addition to the former Policy Period.

## VII. SELF INSURED RETENTION

Our obligation to pay under this policy applies only to covered amounts in excess of any Self Insured Retention amount that the insured must pay, as shown in the Declarations, and the **LIMIT OF LIABILITY** will not be reduced by the amount of such Self Insured Retention.

The Self Insured Retention amount will apply separately to each **Claim** made, however, it will only apply once to all **Claims** arising out of any **One Insured Event** regardless of the number of claimants who allege damages.

If, prior to terminating or demoting an **Employee** the **Insured** consults with and follows the advice of a labor law attorney approved by our Authorized Representatives, as shown in Item 9 of the Declarations, then the **Insured's** Self Insured Retention is reduced by 50% in the event the **Insured** faces a **Claim** involving such termination or demotion.

## VIII. CONDITIONS

We have no duty to provide coverage under this policy unless there has been full compliance with all the conditions contained in this policy.

## A. Duties in the event of a Claim

**1.** You must see to it that we or our Authorized Representatives, as shown in the Declarations, are notified as soon as practicable but in no event more than thirty days (30) after any **Insured** who is a principal, partner, officer, director, trustee, in house counsel, Employee(s) within the HR Risk Management department or **Employee(s)** with personnel and risk management responsibilities, becomes aware that a **Claim** has been made. Your notification should include:

**(a)** the identity of the person(s) alleging **Discrimination**, **Harassment**, **Inappropriate Employment Conduct** ;

**(b)** the identity of any Insured(s) who allegedly committed the **Discrimination**, **Harassment**, **Inappropriate Employment Conduct** ;

**(c)** the identity of any witnesses to the alleged **Discrimination**, **Harassment**, **Inappropriate Employment Conduct**; and

**(d)** the date(s) an **Insured Event** took place.

**2.** You and any other **Insured** must:

**(a)** immediately send us or our Authorized Representatives, as shown in the Declarations, copies of any demands, notices, summonses or legal papers received in connection with the **Claim**:

**(b)** authorize us or our Authorized Representatives, as shown in the Declarations, to obtain statements, records and other information;

**(c)** co-operate with us or our Authorized Representatives, as shown in the Declarations, in the investigation or defense of the **Claim**; and

**(d)** assist us or our Authorized Representatives, as shown in the Declarations, in the enforcement of any right against any person or organization which may be liable to an Insured because of **Loss** to which this policy may also apply.

**3.** No **Insured** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent. Subsequent payments that are deemed by us as having been prejudiced by any such voluntary payment will also be the sole responsibility of the **Insured**.

## B. Report of a Potential Claim

Solely at an **Insured's** option, an **Insured** may within the Policy Period report an oral complaint by an **Employee**, former **Employee** or applicant for employment alleging **Discrimination**, **Harassment** and/or **Inappropriate Employment Conduct**. If such report is received by us or our Authorized Representatives, as shown in the Declarations, within the Policy Period then any **Claim** subsequently arising from such oral complaint will be deemed to be made on the date such report was received. Such report must include the identity of the person(s) making the oral complaint. In no event, however, is an **Insured** entitled to coverage under this policy based on a Laundry List Notification.

## C. Legal Action Against Us

**1.** No person or organization has the right under this policy:

**(a)** to join us as a party or otherwise bring us into a suit asking for damages from an **Insured**; or

**(b)** to sue us on this policy unless all of its terms have been fully complied with.

**2.** A person or organization may sue us to recover on an agreed settlement or on final judgment against an **Insured** obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable **LIMIT OF LIABILITY**. An agreed settlement means a settlement and release of liability signed by us, an **Insured** and the claimant's legal representative.

### D. Other Insurance

This policy shall be deemed primary insurance in connection with covered **Claims** by **Employees** against an Insured because of an **Insured Event**. In connection with any other covered **Claim**, this Policy shall apply in excess of all indemnity rights of an **Insured** and in excess of any other valid or collectible insurance available to any **Insured**. Nothing herein is intended to make this policy subject to the terms, conditions and limitations of any other insurance, and nothing herein is intended to limit our or any Insured's right to contribution or indemnity from any other party, insurer or indemnitor.

### E. Premium

The Premium shown in the Declarations is for the Policy Period shown in the Declarations.

### F. Cancellation

You may only cancel this policy by mailing to us written notice stating when, not less than thirty (30) days thereafter such cancellation shall be effective. We may cancel this policy for any reason, including non-payment of Premium, by mailing to the Named Insured at the address shown in the Declarations, written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation as stated in the notice shall become the end of the Policy Period. Delivery of such written notice shall be equivalent to mailing.

If this policy is cancelled, we will send the first Named Insured any unearned premium refund due. If we cancel, the refund will be pro rata. Refund Premium adjustments may be made at the time cancellation becomes effective, but payment or tender of unearned Premium is not a condition of cancellation.

If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund. However, Premium shall be deemed fully earned if any **Claim** under this policy is reported to us on or before the date of cancellation.

### G. Representations

By accepting this policy you agree:

1. all statements in the **Application** and any attachments as well as all other information provided to us are true and complete and shall be deemed material to the acceptance of the risk or the hazard assumed by us under this policy;

2. those statements are based upon representations you made to us;

3. we have issued this policy in reliance upon your representations;

4. in the event that any statement or representation in the **Application** is untrue, this Policy in its entirety shall be void at inception and of no effect whatsoever; and

5. to disclose any material facts you become aware of between the time that the **Application** for this policy is signed and the policy inception date.

The truth of any statement or representation in the **Application** shall be determined without regard to whether any **Insured** knew the **Application** contained such untrue statement or representation.

### H. When We Do Not Renew

If we decide not to renew this policy, we will mail or deliver to the **Named Insured** shown in the Declarations, written notice of the non-renewal not less than sixty (60) days before the expiration date.

If notice is mailed, proof of mailing will be sufficient notice of non-renewal.

### I. Transfer Of Rights Of Recovery Against Others to Us

If any Insured has rights to recover all or part of any payments we have made under this policy, those rights are transferred to us; the **Insured** must do nothing after a Loss to impair them. At our request, any **Insured** will bring suit or transfer those rights to us and help us to enforce them.

**J. Bankruptcy**

Bankruptcy or insolvency of any **Insured** or of an **Insured's** estate will not relieve us of our obligations under this policy, except as excluded in **EXCLUSIONS: WHAT IS NOT COVERED** section **IX**.

**K. False Or Fraudulent Claims**

If any **Insured** shall proffer any **Claim** knowing the same to be false or fraudulent as regards amount or otherwise, this policy will become void in its entirety and all coverage hereunder shall be forfeited.

## IX. EXCLUSIONS: WHAT IS NOT COVERED

**A. Workers' Compensation/ERISA/FLSA/NRLA/WARN/COBRA/OSHA.** This policy does not cover any **Loss** arising out of any **Claim** alleging violation of any: i) worker's compensation, disability benefits or unemployment compensation law, social security and other employment benefits law; ii) the Employee Retirement Income Security Act of 1974 Public Law 93-406; iii) the Fair Labor Standards Act (except the Equal Pay Act); (iv) the National Labor Relations Act; (v) the Worker Adjustment and Retraining Notification Act; (vi) the Consolidated Omnibus Budget Reconciliation Act of 1985; (vii) the Occupational Safety and Health Act; (viii) any other federal, state or local statute or law similar to any statute or law described in (i) through (vii) of this exclusion; provided, however, this exclusion shall not apply to any **Claim** for any actual or alleged retaliatory treatment of the claimant on account of the claimant's exercise of rights pursuant to such statute, law, rule or regulation.

**B. Contractual Liability.** This policy does not cover any **Loss** based upon, arising out of, directly or indirectly in connection with, related to, or in any way involving any **Claim** any **Insured** is obligated to pay by reason of the assumption of another's liability for an **Insured Event** in a contract or agreement. This exclusion will not apply to liability for damages because of an **Insured Event** that any **Insured** would have without the contract or agreement.

**C. Consequential Loss.** This policy does not cover any **Loss** resulting from or attributable to any allegations made by or solely for the benefit of a claimant's domestic partner, spouse, child, parent, brother or sister.

**D. Wage and Hour Law.** This policy does not cover any **Loss** arising out of a claim based upon, arising out of, directly or indirectly in connection with, related to or in any way alleging violation of any state or local wage and hour law, however, in the event such **Claim** also alleges an **Insured Event** otherwise covered by this policy, notwithstanding the provisions of section **I.D. Defense**, and subject to all other terms, conditions and exclusion contained in this policy, we agree to pay loss solely for that portion of the claim involving such **Insured Event**.

**E. Stock Options.** This policy does not cover any **Loss** resulting from or attributable to stock options, including, without limitation, 1) the failure to grant stock options and/or 2) amounts attributable to unvested stock options which options did not vest because of the actual or alleged wrongful termination of an **Employee**.

**F. Fraud and Collusion.** This policy does not cover any **Loss** based upon, arising out of, directly or indirectly in connection with, related to, or in any way involving any **Claim** alleging fraud, collusion, dishonest, criminal or malicious acts by or at the direction of an **Insured**. Without limiting the foregoing, we will pay **Defense Costs** incurred relating to allegations of fraud, collusion, dishonest, criminal or malicious acts to defend an innocent Insured named in such **Claim** so long as such **Claim** also contains allegations against that innocent **Insured** involving an **Insured Event** otherwise covered by this policy.

**G. Prior Knowledge.** This policy does not cover any **Loss** arising out of **Insured Events** of which any **Insured** who is a principal, partner, officer, director, trustee, in-house counsel, Employee(s) within the HR or Risk Management department or Employee(s) with personnel and risk management responsibilities was aware by actual knowledge of the facts or circumstances of such **Insured Event** prior to the Prior Knowledge Date, as shown in the Declarations.

**H. Prior Notice.** This policy does not cover any **Loss** arising out of **Insured Events** that have been the subject of any notice given under any other policy prior to the inception date of this policy.

**I. Punitive Damages.** This endorsement does not cover any **Loss** arising out of any fines, penalties, punitive damages, exemplary damages or any additional damages resulting from the multiplication of compensatory damages (referred to herein collectively as "Punitive Damages"), except that if a suit is brought against the Named Insured on a **Claim** falling within the coverage hereof, seeking both compensatory and Punitive Damages, then we will afford a defense to such action, without liability, however, for such Punitive Damages; provided further, that our obligation to provide such defense for Punitive Damages shall terminate when the **Claim** for compensatory damages in such action is terminated or paid through judgment or settlement and, in no event, shall we afford a defense for Punitive Damages after the Limit of Liability for compensatory damages has been paid.

**J. Retroactive Date.** This policy does not cover any **Loss** arising out of any **Insured Events** that first occurred on or before the Retroactive Date as set forth in the Declarations. For the purposes of this exclusion, related **Insured Events** are excluded if the first related **Insured Event** took place or is alleged to have taken place prior to the Retroactive Date.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

POLICY NUMBER:  60548-58-54

 

**J6847**
**1st Edition**

## LIMITATION OF EMPLOYMENT PRACTICES LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

EMPLOYMENT PRACTICES LIABILITY INSURANCE - STANDARD
EMPLOYMENT PRACTICES LIABILITY INSURANCE - PREFERRED

### SCHEDULE

| Description And Location Of Premises: | |
|---|---|
| LOC 00001 SUB LOC 001<br><br>29 E MADISON ST<br><br>CHICAGO IL 60602 | |
| Annual Aggregate Limit | $    50,000 |

**A.** The following are added to Section **IX. EXCLUSIONS: WHAT IS NOT COVERED**, with respect to Employment Practices Liability Coverage:

This insurance does not apply to any **Insured Event** or **Third Party Insured Event** arising out of:

1. The ownership, maintenance, management, use, or any other operations of any premises not described in the Schedule above; or

2. The ownership, maintenance, management or use of any premises or operations insured under a policy number other than the one listed above and on the Declarations for Employment Practices Liability Insurance coverage.

**B.** The following is added to Section **VIII. CONDITIONS** and supersedes any provision to the contrary:

**L. Two Or More Coverage Forms**

If this Employment Practices Liability Insurance and any other Employment Practices Liability Insurance coverage form or policy issued by us or any company affiliated with us provide coverage to anyone who qualifies as an **Insured** under the policies and apply to the same **Insured Event** or **Third Party Insured Event**, the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under one Coverage Form or policy.

**C.** The annual aggregate maximum Limit of Insurance shown on the Schedule above is the most we will pay for all **Insured Events** or **Third Party Insured Events**, regardless of the number of **Insureds**, **claims** made or persons making **claims** during the Policy Period.



**FARMERS**
**INSURANCE**

Mid-Century Insurance Company (A Stock Company)
Member Of The Farmers Insurance Group Of Companies®

Home Office: 6301 Owensmouth Ave., Woodland Hills, CA 91367

# DECLARATIONS
## CYBER LIABILITY AND DATA BREACH RESPONSE COVERAGE

**THIS COVERAGE INCLUDES CLAIMS MADE AND REPORTED COVERAGES. SUBJECT TO ITS TERMS, THIS COVERAGE FORM'S CLAIMS MADE COVERAGES APPLY ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR THE OPTIONAL EXTENDED REPORTING PERIOD, IF APPLICABLE, PROVIDED SUCH CLAIM IS REPORTED IN WRITING TO THE COMPANY AS SOON AS PRACTICABLE. WITHOUT NEGATING THE FOREGOING REQUIREMENTS, SUCH NOTICE OF CLAIM MUST ALSO BE REPORTED NO LATER THAN 30 DAYS AFTER THE END OF THE POLICY PERIOD OR, IF APPLICABLE, DURING THE OPTIONAL EXTENDED REPORTING PERIOD. AMOUNTS INCURRED AS CLAIMS EXPENSES, WHICH INCLUDES DEFENSE COSTS, SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY AND ARE SUBJECT TO THE RETENTIONS. THE COMPANY SHALL NOT BE LIABLE FOR ANY CLAIMS EXPENSES OR FOR ANY JUDGMENT OR SETTLEMENT AFTER THE LIMIT OF LIABILITY HAS BEEN EXHAUSTED. PLEASE READ THE COVERAGE FORM CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT.**

**Named Insured**  TRAVEL ZAP INC

**Policy Number**  60548-58-54

**Mailing Address**
29 E MADISON ST.
SUITE 400
CHICAGO, IL 60602

**Policy Period**  From: __09-16-2019__

To: __09-16-2020__  12:01 A.M. Standard time at your mailing address shown above.

Retroactive Date: 09/16/2014

Continuity Date: 11/14/2017

**Optional Extension Period:**
Length of optional extension period: _____

If no time period is stated, optional extension period coverage is not provided.

**Cyber Extortion Hot Line:**  1-800-435-7764

**Policy Number:** 60548-58-54           **Effective Date:** 09-16-2019

| Coverage | Limit Of Insurance | Retention/Waiting Period |
|---|---|---|
| Aggregate Limit of Liability | $100,000 | |
| Insuring Agreement A - Information Security & Privacy Liability | $100,000 | $2,500 |
| Insuring Agreement B - Privacy Breach Response Services | $100,000/ <br><br> 10,000 Notified Individuals | $2,500/ <br><br> 100 Notified Individuals |
| | | |
| Insuring Agreement C - Regulatory Defense & Penalties | $50,000 | $2,500 |
| Insuring Agreement D - Website Media Content Liability | $100,000 | $2,500 |
| Insuring Agreement E - PCI Fines, Expenses And Costs | $20,000 | $2,500 |
| Insuring Agreement F - Cyber Extortion | $50,000 | $2,500 |
| Insuring Agreement G - First Party Data Protection | $50,000 | $2,500 |
| Insuring Agreement H - First Party Network Business Interruption Income Loss/Extra Expense <br> Waiting Period | $50,000 | $2,500 <br><br> 12 hours |

## Policy Forms And Endorsements Attached At Inception

| Number | Title |
|---|---|
| J7155-ED1 <br> W1234-ED1 | Cyber Liability Coverage Form <br> Cyber Liab - IL Amendatory Endor |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



# FARMERS
### INSURANCE

### w1234
**1st Edition**

## ILLINOIS AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the:

CYBER LIABILITY AND DATA BREACH RESPONSE COVERAGE FORM

**A.** Section **I. INSURING AGREEMENTS** is amended to delete Paragraph **C. Regulatory Defense and Penalties** and replace it with the following:

**C. Regulatory Defense and Penalties**

We shall pay "claims expenses" on behalf of the "insured" in excess of the retention, which the "insured" shall become legally obligated to pay because of any "claim" in the form of a "regulatory proceeding", caused by an incident described in Paragraphs **1.**, **2.**, and **3.** of Section **I. INSURING AGREEMENTS, A. Information Security And Privacy Liability** that first takes place on or after the "retroactive date" and before the end of the "policy period". We shall also pay on behalf of the insured for "penalties" that do not result from willful, intentional or criminal acts committed by an "insured", as permissible under Illinois law.

**B.** Section **IV. EXCLUSIONS** is amended to add the following:

**Q.** Any "claim" brought under Section **I. INSURING AGREEMENTS, E. PCI Fines, Expenses and Costs** arising out of or resulting from a willful, intentional or criminal act committed by an "insured".

**C.** The following paragraphs are added to **SECTION II. DEFENSE AND SETTLEMENTS OF CLAIMS:**

**D.** If we initially defend an "insured" or pay for an "insured's" defense but later determine that the "claim(s)" is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs "claims expenses" we have incurred.

**E.** The right to reimbursement for the "claims expenses" under this provision will only apply to "claims expenses" we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for "claims expenses".

**D.** Section **VII. EXTENSION PERIODS** is amended as follows:

**1.** The first sentence of Paragraph **A. Automatic Extension Period** is deleted and replaced with the following:

We will provide a 14 day "automatic extension period" in the event of termination of this Coverage Form for any reason.

**2.** The first sentence of Paragraph **B.1. Optional Extension Period** is deleted and replaced with the following:

In the event of the termination of this Coverage Form for any reason, you have the right to purchase an endorsement providing an "optional extension period" of 12 or 24 months for "claims" first made against any "insured" and reported to us during the "optional extension period".

**3.** The first sentence of Paragraph **B.4. Optional Extension Period** does not apply.

**E.** Section **IX. OTHER INSURANCE** is deleted and replaced with the following:

**IX. OTHER INSURANCE**

The insurance under this Coverage Form shall apply on a primary basis with any other valid and collectible insurance available to any "insured", including any self-insured retention or deductible portion thereof if such other insurance is written only as specific excess insurance over the Aggregate Limit of Liability or any other applicable Limit of Liability of this Coverage Form. Otherwise, we will pay our share of covered "claims". Our share is the proportion that the applicable Limit of Insurance bears to the Limits of Insurance of all insurance providing coverage on the same basis.

**F.** Section **XI. DEFINITIONS** is amended to delete the last paragraph of Definition **A.7.** and replace it with the following:

"Claims expenses" do not include any salary, overhead, or other charges by the "insured" for any time spent in cooperating in the defense and investigation of any "claim" or circumstance that might lead to a "claim" notified under this Coverage Form, costs to comply with any regulatory orders, settlements or judgments, or any of the Company's routine ongoing expenses, such as salaries for its personnel or staff attorneys.

**G.** Section **XVI. CANCELLATION** is amended as follows:

**1.** Paragraph **B.** is deleted and replaced with the following:

**B.** This policy may be canceled by us or on our behalf:

**1.** Ten (10) days after the mailing to the last mailing address of the "named insured" known to us written notice of cancellation for nonpayment of premium;

**2.** 30 days after the mailing to the last mailing address of the "named insured" known to us written notice of cancellation for any other reason provided the policy has been in effect for less than 60 days; or

**3.** 60 days after the mailing to the last mailing address of the "named insured" known to us written notice of cancellation, however, such written notice shall contain an explanation of the reason for cancellation and such reason must be one of the following:

**a.** The policy was obtained through a material misrepresentation;

**b.** The "named insured" violated any of the terms and conditions of the policy;

**c.** The original risk has measurably increased;

**d.** The Company has certified to the Illinois Director of Insurance that the Company has lost reinsurance which provided coverage for a substantial part of the underlying risk assumed; or

**e.** The Illinois Director of Insurance has determined that the continuation of the policy could place us in violation of the insurance laws of Illinois.

The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the "Policy Period".

**H.** The unnumbered paragraphs in Section **XVII. NONRENEWAL** are deleted and replaced with the following:

**A.** In the event we intend not to renew this policy upon expiration of the "Policy Period", we shall mail written notice of nonrenewal to the "named insured" at the last mailing address known to us at least 60 days prior to the expiration of the "Policy Period". Such nonrenewal notice shall contain an explanation of the reason(s) for nonrenewal.

**B.** Proof of mailing of any such notice of cancellation or nonrenewal will be maintained by us on a recognized U.S Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service. A copy of any notice of cancellation or nonrenewal mailed to the "named "insured" by us shall also be mailed to the "named insured's" agent of record at the address last known to us.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.



**FARMERS**
**INSURANCE**

**J7155**
**1st Edition**

## CYBER LIABILITY AND DATA BREACH RESPONSE COVERAGE FORM

**THIS COVERAGE FORM INCLUDES CLAIMS MADE AND REPORTED COVERAGES. SUBJECT TO ITS TERMS, THIS COVERAGE FORM'S CLAIMS MADE COVERAGES APPLY ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR THE OPTIONAL EXTENDED REPORTING PERIOD, IF APPLICABLE, PROVIDED SUCH CLAIM IS REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD OR THE OPTIONAL EXTENDED REPORTING PERIOD, IF APPLICABLE. AMOUNTS INCURRED AS CLAIMS EXPENSES, WHICH INCLUDES DEFENSE COSTS, SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY AND ARE SUBJECT TO THE RETENTIONS. THE COMPANY SHALL NOT BE LIABLE FOR ANY CLAIMS EXPENSES OR FOR ANY JUDGMENT OR SETTLEMENT AFTER THE LIMIT OF LIABILITY HAS BEEN EXHAUSTED. READ THIS COVERAGE FORM CAREFULLY TO DETERMINE THE EXTENT OF COVERAGE.**

Except as specifically set forth herein, the provisions of the policy to which this coverage form is attached shall not apply to this Coverage Form. Throughout this Coverage Form, the words "you" and "your" refer to the "named insured(s)" shown in the Declarations of this Coverage Form and any other person(s) or organization(s) qualifying as a "named insured" under this Coverage Form. The words "we", "us", and "our" refer to the company providing this insurance.

Any words or phrases that appear in "quotations" have special meaning applicable to this Coverage Form only. Refer to Section **XI. DEFINITIONS**.

Paragraphs **A.**, **C.**, **D.**, and **E.** of Section **I. INSURING AGREEMENTS** provide coverage on a claims made and reported basis and apply only to "claims" first made against the "insured" and reported to us during the policy period, the "automatic extension period", or the "optional extension period" (if applicable)

Paragraphs **B.**, **F., G.**, and **H.** of Section **I. INSURING AGREEMENTS** provide first party coverage on an incident discovered and reported basis and apply only to incidents first discovered and reported to us during the policy period.

The Company agrees with the "Named Insured":

## I. INSURING AGREEMENTS

### A. Information Security And Privacy Liability

We shall pay on behalf of the "insured", "damages" and "claims expenses", in excess of the retention, which the "insured" shall become legally obligated to pay because of any "claim", including a "claim" for violation of a "privacy law", for:

**1.** Theft, loss, or "unauthorized disclosure" of "personally identifiable information" or "third party information" that is in the care, custody or control of the "insured organization", or a third party for whose theft, loss or "unauthorized disclosure" of "personally identifiable information" or "third party information" the "insured organization" is legally liable;

**2.** One or more of the following acts or incidents that directly result from a failure of "computer security" to prevent a "security breach":

**a.** The alteration, corruption, destruction, deletion, or damage to data stored on "computer systems";

**b.** The failure to prevent transmission of malicious code from "computer systems" to computer or network systems that are not owned, operated or controlled by an "insured"; or

**c.** The participation by the "insured organization's" "computer system" in a denial of service attack directed against computer or network systems that are not owned, operated or controlled by an "insured";

3. The "insured organization's" failure to timely disclose an incident described in paragraphs **A.1.** or **A.2.** in violation of any "breach notice law";

4. Failure by the "insured" to comply with that part of a "privacy policy" that specifically:

   **a.** Prohibits or restricts the "insured organization's" disclosure, sharing or selling of a person's "personally identifiable information";

   **b.** Requires the "insured organization" to provide access to "personally identifiable information" or to correct incomplete or inaccurate "personally identifiable information" after a request is made by a person; or

   **c.** Mandates procedures and requirements to prevent the loss of "personally identifiable information";

   Provided the "insured organization" must, at the time of such acts, errors or omissions have in force a "privacy policy" that addresses subsections **4.a. – 4.c.** above that are relevant to such "claim"; or

5. Failure by the "insured" to administer:

   **a.** An identity theft prevention program required by regulations and guidelines promulgated pursuant to 15 U.S.C. §1681m(e), as amended; or

   **b.** An information disposal program required by regulations and guidelines promulgated pursuant to 15 U.S.C §1681W, as amended.

All acts, incidents, failures to timely disclose, failures to comply, thefts, losses, errors or omissions described in Section **I. INSURING AGREEMENTS, A. Information Security And Privacy Liability** must first take place on or after the "retroactive date" and before the end of the "policy period" to be eligible for coverage under Section **I. INSURING AGREEMENTS, A. Information Security And Privacy Liability.**

**B. Privacy Breach Response Services**

We shall provide to the "insured organization" "privacy breach response services" in excess of the retention because of an incident described in Paragraphs **1.** and **2.** of Section **I. INSURING AGREEMENTS, A. Information Security And Privacy Liability.**

"Privacy breach response services" means:

1. "Computer expert services";

2. "Legal services";

3. "Public relations and crisis management expenses";

4. "Notification services" to provide notification to:

   **a.** Individuals residing in the United States who are required to be notified by the "insured organization" under the applicable "breach notice law". However, we may also provide "notification services" to individuals, who at our discretion, have been affected by an incident in which their "personally identifiable information" has been subject to theft, loss, or "unauthorized disclosure" in a manner which compromises the security or privacy of such individual by posing a significant risk of financial, reputational or other harm to the individual.

   **b.** For incidents involving more than 100 "notified individuals" **"Privacy Breach Response"** Services also means:

      **(1)** "Call center services" to "notified individuals"; and

**(2)** To be covered, such offer must be provided in a mailed notification provided pursuant to Insuring Agreement **I.B.4.** above. However, if the Insured uses an attorney and other service providers recommended by the Company for all "Privacy Breach Response Services", then the threshold of 100 "notified individuals" set forth above shall not apply to the "call center services", but the self-insured retention shall continue to apply as set forth in the Declarations.

**5.** "Call center services"; and

**6.** "Breach resolution and mitigation services".

"Privacy breach response services" also includes assistance from the breach response services team and access to education and loss control information at no charge.

"Privacy breach response services" will be provided subject to the terms and conditions of this Coverage Form and shall not include any internal salary or overhead expenses of the "insured organization".

## C. Regulatory Defense And Penalties

We shall pay on behalf of the "insured", "claims expenses" and "penalties" in excess of the retention, which the "insured" shall become legally obligated to pay because of any "claim" in the form of a "regulatory proceeding", caused by an incident described in Paragraphs **1.**, **2.**, and **3.** of Section **I. INSURING AGREEMENTS, A. Information Security And Privacy Liability** that first takes place on or after the "retroactive date" and before the end of the "policy period".

## D. Website Media Content Liability

We shall pay on behalf of the "insured", "damages" and "claims expenses", in excess of the retention, which the "insured" becomes legally obligated to pay for one or more of the following acts first committed on or after the "retroactive date" and before the end of the "policy period" in the course of the "insured organization's" display of "media material" on its web site or on social media web pages created and maintained by or on behalf of the "insured organization":

**1.** Invasion or interference with an individual's right of publicity, including commercial appropriation of name, persona, voice or likeness;

**2.** Misappropriation of ideas under implied contract;

**3.** Plagiarism and piracy;

**4.** Infringement of copyright;

**5.** Infringement of domain name, trademark, trade name, logo, title, metatags, or service mark, or service name; or

**6.** Improper deep-linking or framing within electronic content.

## E. PCI Fines, Expenses And Costs

We shall indemnify the "insured" for "PCI Fines, Expenses, and Costs", in excess of the retention, which the "insured" shall become legally obligated to pay on or after the "retroactive date" and before the end of the "policy period". Coverage under Section **I. INSURING AGREEMENTS, E. PCI Fines, Expenses And Costs** is sublimited to the amount set forth in the Declarations. We have no duty to defend any "claim" or to pay any "claims expenses" associated with a "claim" brought under Section **I. INSURING AGREEMENTS, E. PCI Fines, Expenses And Costs**.

### F. Cyber Extortion

We shall reimburse the "insured" for "cyber extortion loss", in excess of the retention, which the "insured" pays as a direct result of an "extortion threat" first made against the "insured" on or after the "retroactive date" and before the end of the "policy period" by a person, other than the "insured's" employees, directors, officers, principals, trustees, governors, managers, members, management committee members, members of the management board, partners, contractors, outsourcers, or any person in collusion with any of the foregoing. Coverage under this Insuring Agreement is subject to the applicable conditions and reporting requirements, including those set forth in Section **XV. OBLIGATIONS IN THE EVENT OF AN EXTORTION THREAT**.

### G. First Party Data Protection

We shall indemnify the "insured" for "data protection loss" in excess of the retention, which the "insured" becomes obligated to pay as a direct result of one or more of the following that first takes place on or after the "retroactive date" and before the end of the "policy period":

**1.** alteration, corruption, destruction, deletion or damage to a "data asset"; or

**2.** inability to access a "data asset";

and is directly caused by a failure of "computer security" to prevent a "security breach"; provided that such "security breach" must take place on or after the "retroactive date" and before the end of the "policy period".

### H. First Party Network Business Interruption

We shall indemnify the "insured", for "business interruption loss", in excess of the retention, incurred by the "insured" during the "period of restoration" or the "extended interruption period" (if applicable) as a direct result of the actual and necessary interruption or suspension of "computer systems" that first takes place during the "policy period" and is directly caused by a failure of "computer security" to prevent a "security breach"; provided that such "security breach" must first take place on or after the "retroactive date" and before the end of the "policy period".

## II. DEFENSE AND SETTLEMENT OF CLAIMS

**A.** We shall have the right and duty to defend:

**1.** Any "claim" against the "insured" seeking "damages" even if any of the allegations of the "claim" are groundless, false or fraudulent; or

**2.** Under Section **I. INSURING AGREEMENTS, C. Regulatory Defense And Penalties**, any "claim" in the form of a "regulatory proceeding".

Selection of defense counsel shall be mutually agreed upon between us and the "named insured", but in the absence of such agreement, our decision shall be final.

**B.** We will pay "claims expenses" incurred. The Aggregate Limit of Liability available to pay "damages" and "penalties" shall be reduced and may be completely exhausted by payment of "claims expenses". "Damages", "penalties", and "claims expenses" shall be applied against the each claim retention payable by the "insured".

**C.** If the "insured" refuses to consent to any settlement or compromise recommended by us and acceptable to the claimant and elects to contest the "claim", our liability for any "damages", "penalties", and "claims expenses" shall not exceed the lesser of:

**1.** The amount for which the "claim" could have been settled, less the remaining retention, plus the "claims expenses" incurred up to the time of such refusal; or

**2.** The applicable Limit of Liability whichever is less, and we have the right to withdraw from further defense by tendering control of said defense to the "insured". The portion of any proposed settlement or compromise that requires the "insured" to cease, limit or refrain from actual or alleged infringing or otherwise injurious activity or is attributable to future royalties or other amounts that are not "damages" (or "penalties" for "claims" covered under Section **I. INSURING AGREEMENTS, C. Regulatory Defense And Penalties**) shall not be considered in determining the amount for which a "claim" could have been settled.

## III. WHO IS AN INSURED

**A.** Whether expressed in singular or plural, "insured" shall mean:

**1.** The "named insured" and any "subsidiaries" of the "named insured" (together the "insured organization");

**2.** A director, manager of a limited liability company or officer of the "insured organization", but only with respect to the performance of their duties as such on behalf of the "insured organization";

**3.** An employee of the "insured organization", but only for work done while acting within the scope of their employment and related to the conduct of the "insured organization's" business;

**4.** A principal if the "named insured" is a sole proprietorship, or a partner if the "named insured" is a partnership, but only with respect to the performance of their duties as such on behalf of the "insured organization";

**5.** Any person previously qualified as an "insured" under Paragraphs **A2.**, **A3.**, or **A4.** of Section **III. WHO IS AN INSURED** prior to the termination of the required relationship with the "insured organization", but only with respect to the performance of their duties as such on behalf of the "insured organization".

**B.** "Named insured" means the entity or individual shown in the Declarations of this Coverage Form.

## IV. EXCLUSIONS

This insurance does not apply to any "claim" or "loss":

**A.** Arising out of or resulting from any contractual liability or obligation, or arising out of or resulting from breach of contract or agreement either oral or written. However, this exclusion will not apply:

**1.** Only with respect to the coverage provided pursuant to Paragraph **1.** of Section **I. INSURING AGREEMENTS, A. Information Security And Privacy Liability**, to any obligation of the "insured organization" to maintain the confidentiality or security of "personally identifiable information" or of "third party information";

**2.** Only with respect to Paragraph **4.** of Section **I. INSURING AGREEMENTS, D. Website Media Content Liability**, for misappropriation of ideas under implied contract; or

**3.** To the extent the "insured" would have been liable in the absence of such contract or agreement.

**B.** Arising out of or resulting from any liability or obligation under a "merchant services agreement" except this exclusion does not apply to "PCI Fines, Expenses, and Costs" covered under Section **I. INSURING AGREEMENTS, E. PCI Fines, Expenses, and Costs**, or to "computer expert services" or "legal services" covered under Section **I. INSURING AGREEMENTS, B. Privacy Breach Response Services**.

**C.** Arising out of or resulting from any actual or alleged false, deceptive or unfair trade practices; however, this exclusion does not apply to:

    **1.** Any "claim" covered under Paragraphs **1.**, **2.**, or **3.** of Section **I. INSURING AGREEMENTS, A. Information Security And Privacy Liability** or Section **I. INSURING AGREEMENTS, C. Regulatory Defense and Penalties**; or

    **2.** The providing of "privacy breach response services" covered under Section **I. INSURING AGREEMENTS, B. Privacy Breach Response Services**.

**D.** Arising out of or resulting from the actual or alleged unlawful collection, acquisition or retention of "personally identifiable information" (except as otherwise covered under Paragraph **5.** of Section **I. INSURING AGREEMENTS, A. Information Security And Privacy Liability**) or other personal information by, on behalf of, or with the consent or cooperation of the "insured organization"; or the failure to comply with a legal requirement to provide individuals with the ability to assent to or withhold assent (e.g. opt-in or opt-out) from the collection, disclosure or use of "personally identifiable information". This exclusion shall not apply to the actual or alleged unlawful collection, acquisition or retention of "personally identifiable information" by a person or entity that is not a "related party" and without the knowledge of the "insured organization".

**E.** Arising out of or resulting from any act, error, omission, incident, failure of "computer security", or "security breach" committed or occurring prior to the "continuity date" of this Coverage Form:

    **1.** If any member of the "control group" on or before the "continuity date" knew or could have reasonably foreseen that such act, error or omission, incident, failure of "computer security", or "security breach" might be expected to be the basis of a "claim" or "loss"; or

    **2.** In respect of which any "insured" has given notice of a circumstance, which might lead to a "claim" or "loss", to the insurer of any other policy in force prior to the inception date of this Coverage Form.

**F.** Arising out of or resulting from any related or continuing acts, errors, omissions, incidents or events, where the first such act, error, omission, incident or event was committed or occurred prior to the "retroactive date."

**G.** For, arising out of or resulting from any actual or alleged:

    **1.** Infringement of patent or patent rights or misuse or abuse of patent;

    **2.** Infringement of copyright arising from or related to software code or software products other than infringement resulting from a theft or "unauthorized access or use" of software code by a person who is not a "related party";

    **3.** Use or misappropriation of any ideas, trade secrets or "third party corporate information" (i) by, or on behalf of, the "insured organization", or (ii) by any other person or entity if such use or misappropriation is done with the knowledge, consent or acquiescence of a member of the Control Group;

    **4.** Disclosure, misuse or misappropriation of any ideas, trade secrets or confidential information that came into the possession of any person or entity prior to the date the person or entity became an employee, officer, director, manager of a limited liability company, principal, partner or "subsidiary" of the "insured"; or

    **5.** Under Paragraph **2.** of Section **I. INSURING AGREEMENTS, A. Information Security And Privacy Liability**, theft of or "unauthorized disclosure" of a "data asset."

**H.** In connection with or resulting from a "claim" brought by or on behalf of the Federal Trade Commission, the Federal Communications Commission, or any other state, federal, local or foreign governmental entity, in such entity's regulatory or official capacity; provided, this exclusion shall not apply to an otherwise covered "claim" under Section **I. INSURING AGREEMENTS, C. Regulatory Defense and Penalties** or to the providing of "privacy breach response services" under Section **I. INSURING AGREEMENTS, B. Privacy Breach Response Services** to the extent such services are legally required to comply with a "breach notice law";

**I.** Arising out of or resulting from a "claim" by or on behalf of one or more "insureds" under this coverage against any other "insured" or "insureds" under this coverage; provided this exclusion shall not apply to an otherwise covered "claim" under Paragraphs **1.**, **2.**, or **3.** of Section **I. INSURING AGREEMENTS, A. Information Security And Privacy Liability** made by a current or former employee of the "insured organization";

**J.** Arising out of or resulting from:

    **1.** Any "claim" made by any business enterprise in which any "insured" has greater than a 15 percent (15%) ownership interest or made by any parent company or other entity which owns more than 15 percent (15%) of the "named insured"; or

    **2.** The "insured's" activities as a trustee, partner, member, manager of a limited liability company, officer, director or employee of any employee trust, charitable organization, corporation, company or business other than that of the "insured organization";

**K.** Arising out of or resulting from:

    **1.** The actual or alleged obligation to make licensing fee or royalty payments;

    **2.** Any costs or expenses incurred or to be incurred by the "insured" or others for the reprinting, reposting, recall, removal or disposal of any "media material" or any other information, content or media, including any media or products containing such "media material", information, content or media;

    **3.** Any "claim" brought by or on behalf of any intellectual property licensing bodies or organizations;

    **4.** The actual or alleged inaccurate, inadequate or incomplete description of the price of goods, products or services, cost guarantees, cost representations, or contract price estimates, the authenticity of any goods, products or services, or the failure of any goods or services to conform with any represented quality or performance;

    **5.** Any actual or alleged gambling, contest, lottery, promotional game or other game of chance; or

    **6.** Any "claim" made by or on behalf of any independent contractor, joint venture or venture partner arising out of or resulting from disputes over ownership of rights in "media material" or services provided by such independent contractor, joint venture or venture partner;

**L.** With respect to Section **I. INSURING AGREEMENTS F. Cyber Extortion, G. Data Protection Loss and H. Business Interruption Loss** arising out of or resulting from any criminal, dishonest, fraudulent, or malicious act, error or omission, any "security breach", "extortion threat", or intentional or knowing violation of the law, if committed by any member of the "control group" or any person in participation or collusion with any member of the "control group";

**M.** With respect to Section **I. INSURING AGREEMENTS G. Data Protection Loss and H. Business Interruption Loss** arising out of or resulting from:

    **1.** Any failure or malfunction of electrical or telecommunications infrastructure or services, provided that this exclusion shall not apply to any otherwise covered "claim" or "loss" arising out of failure of "computer security" to prevent a "security breach" that was solely caused by a failure or malfunction of telecommunications infrastructure or services under the "insured's" direct operational control;

**2.** Fire, flood, earthquake, volcanic eruption, explosion, lighting, wind, hail, tidal wave, landslide, act of God or other physical event; or

**3.** Any satellite failures.

**N.** With respect to Section **I. INSURING AGREEMENTS F. Cyber Extortion** arising out of or resulting from:

**1.** Any threat to physically harm or kidnap any person; or

**2.** Any threat to harm, take, or transfer property other than any "data asset", even if such threat is made in conjunction with a threat to a "data asset" or by carrying out such threat to, harm, theft, or transfer, a "data asset" may be damaged, corrupted, altered, taken, disseminated or transferred;

**O.** Arising out of or resulting from any seizure, nationalization, confiscation, or destruction of "computer systems" or "data assets" by order of any governmental or public authority;

**P.** Arising out of or resulting from, directly or indirectly occasioned by, happening through or in consequence of: war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

## V. LIMIT OF LIABILITY AND COVERAGE

**A.** The Aggregate Limit of Liability set forth in the Declarations is our combined total limit of liability for all "damages", "penalties", "PCI Fines, Expenses, and Costs", "public relations and crisis management expenses", "cyber extortion loss", "data protection loss", "business interruption loss" and "claims expenses" payable under this Coverage Form.

Neither the inclusion of more than one "insured" under this Coverage Form, nor the making of "claims" by more than one person or entity, shall increase the Limit of Liability.

**B.** The Limit of Liability for the "automatic extension period" and the "optional extension period" shall be part of and not in addition to the Aggregate Limit of Liability.

**C.** The "Notified Individuals" limit stated in the Declarations is the maximum total number of "notified individuals" to whom notification will be provided or attempted for all incidents or series of related incidents giving rise to an obligation to provide "notification services", "call center services" or "breach resolution and mitigation services".

**D.** We shall not be obligated to pay any "damages", "penalties", or "claims expenses", or to undertake or continue defense of any suit or proceeding after the Aggregate Limit of Liability has been exhausted by payment of "damages", "penalties" or "claims expenses", or after deposit of the Aggregate Limit of Liability in a court of competent jurisdiction. Upon such payment, we shall have the right to withdraw from further defense of any "claim" under this Coverage Form by tendering control of said defense to the "insured".

**E.** Unless otherwise specified in this Coverage Form, "privacy breach response services" will be provided by a service provider selected by us from the service providers listed in the "information packet".

**F.** To the extent that costs to provide "privacy breach response services" are covered pursuant to a "claim" described in Paragraph **D.4.** of Section **XI. DEFINITIONS**, such costs shall be covered solely under Section **I. INSURING AGREEMENTS, A. Information Security and Privacy Liability.**

**G.** In the event that this Coverage Form is accompanied by an application, then only Paragraphs **B. - E.,** of this Section **V. LIMIT OF LIABILITY AND COVERAGE** apply and limits of liability shall be as follows:

1. The Aggregate Limit of Liability shall include all items as set forth in the Declarations and Paragraph **A.** except "public relations and crisis management expenses".

2. The Regulatory Defense and Penalties sublimit of liability stated in the Declarations is the aggregate sublimit of liability payable under Section **I. INSURING AGREEMENTS, C. Regulatory Defense and Penalties** of this Coverage Form and is part of and not in addition to the Aggregate Limit of Liability.

3. The PCI Fines, Expenses, and Costs sublimit of liability stated in the Declarations is the aggregate sublimit of liability payable under Section **I. INSURING AGREEMENTS, E. PCI Fines, Expenses, and Costs** of this Coverage Form and is part of and not in addition to the Aggregate Limit of Liability.

4. The Cyber Extortion sublimit of liability stated in the Declarations is the sublimit of liability payable under Section **I. INSURING AGREEMENTS, F. Cyber Extortion** of this Coverage Form and is part of and not in addition to the Aggregate Limit of Liability.

5. The First Party Data Protection sublimit of liability stated in the Declarations is the sublimit of liability payable under Section **I. INSURING AGREEMENTS, G. First Party Data Protection** of this Coverage Form and is part of and not in addition to the Aggregate Limit of Liability.

6. The First Party Network Business Interruption sublimit of liability stated in the Declarations is the sublimit of liability payable under Section **I. INSURING AGREEMENTS, H. First Party Network Business Interruption** of this Coverage Form and is part of and not in addition to the Aggregate Limit of Liability.

7. There shall be a separate aggregate limit of coverage as stated in the Declarations for "computer expert services", "legal services, and "public relations and crisis management expenses". The aggregate limit stated in the Declarations is the aggregate limit of coverage for all "computer expert services", "legal services" and "public relations and crisis management expenses" combined.

## VI. RETENTION

**A.** The retention(s) set forth in the Declarations apply(ies) separately to each incident, event or related incidents or events, giving rise to a "claim". The retention(s) shall be satisfied by monetary payments by the "named insured" of "damages", "claims expenses", "penalties" "public relations and crisis management", "cyber extortion loss", "data protection loss", "business interruption loss", or "PCI Fines, Expenses and Costs".

**B.** For all "notification services", "call center services" and "breach resolution and mitigation services" for each incident, the notified individuals sublimit set forth in the Declarations applies separately to each incident, event or related incidents or events, giving rise to an obligation to provide such services.

**C.** With respect to Section **I. INSURING AGREEMENTS H. First Party Network Business Interruption**, the retention set forth in the Declarations applies separately to each "security breach". The "retention" shall be satisfied by covered "business interruption loss" retained by the "insured organization". The "retention" for Section **I. INSURING AGREEMENTS H. First Party Network Business Interruption**, shall be as follows:

1. with respect to covered "business interruption loss", the "retention" shall be the greater of:

   a. the "retention" amount set forth in the Declarations; or

   b. the amount of "business interruption loss" during the "waiting period";

**D.** Satisfaction of the applicable retention is a condition precedent to our payment of any amounts hereunder, and we shall be liable only for the amounts in excess of such retention subject to our total liability not exceeding the Aggregate Limit of Liability. The "named insured" shall be responsible for all payments within the retention and shall make all such payments directly to the other parties designated by us.

## VII. EXTENSION PERIODS

### A. Automatic Extension Period

We will provide a 14 day "automatic extension period" in the event of termination of this Coverage Form for any reason except the non-payment of premium. The "automatic extension period" does not apply to Section **I. INSURING AGREEMENTS, B. Privacy Breach Response Services, F. Cyber Extortion, G. First Party Data Protection** and **H. First Party Network Business Interruption.**

### B. Optional Extension Period

**1.** In the event of the termination of this Coverage Form for any reason except the non-payment of premium, you have the right to purchase an endorsement providing an "optional extension period" of 12 or 24 months for "claims" first made against any "insured" and reported to us during the "optional extension period". You must submit a written request for the "optional extension period" to us within 30 days of the termination of this Coverage Form. Payment of the full additional premium for the "optional extension period" endorsement is due within 30 days of the termination of this Coverage Form. If notice of election and payment for the "optional extension period" is not given to us within such 30 day period, there shall be no right to purchase the "optional extension period".

**2.** The Limit of Liability for the "optional extension period" shall be part of, and not in addition to, the applicable Limit of Liability for the "policy period". The purchase of the "optional extension period" does not in any way increase the Aggregate Limit of Liability or any sublimit of liability. The "optional extension period" does not extend the "policy period" or change the scope of the coverage provided. The "optional extension period" only extends the "claims" reporting period. A "claim" first made against any "insured" and reported to us during the "optional extension period" will be deemed to have been made on the last day of the "policy period" provided that the "claim" is for any act, error, or omission committed on or after the "retroactive date" and before the end of the "policy period".

**3.** The additional premium for a 12 month "optional extension period" will be 100% of the premium charged for the last "policy period". The additional premium for a 24 month "optional extension period" will be 200% of the premium charged for the last "policy period". At the commencement of the "optional extension period" the entire premium shall be deemed earned, and in the event the "named insured" terminates the "optional extension period" for any reason prior to its natural expiration; we will not be liable to return any premium paid for the "optional extension period".

**4.** The right to purchase an "optional extension period" shall not be available to you if the premium for the policy to which this coverage form is attached has not been paid in full, or if we have cancelled or not renewed it due to non-payment of premium or your failure to pay amounts in excess of the applicable limit of liability or within the amount of the retention. The "optional extension period" does not apply to Section **I. INSURING AGREEMENTS, B. Privacy Breach Response Services, F. Cyber Extortion, G. First Party Data Protection** and **H. First Party Network Business Interruption.**

## VIII. NOTICE OF CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM

**A.** If any "claim" is made against the "insured" the "insured" shall forward as soon as practicable to us written notice of such "claim" in the form of a facsimile, email, through our web or mobile app portals, or express or certified mail together with every demand, notice, summons or other process received by the "insured" or the "insured's" representative.

**B.** With respect to Section **I. INSURING AGREEMENTS, B. Privacy Breach Response Services**, for a legal obligation to comply with a "breach notice law" because of an incident described in Paragraph **1.** or **2.** of Section **I. INSURING AGREEMENTS, A. Information Security And Privacy Liability**, such incident or reasonably suspected incident must be reported as soon as practicable during the "policy period" after discovery by the "insured".

**C.** If during the "policy period", the "insured" becomes aware of any circumstance that could reasonably be the basis for a "claim" it may give written notice to us in the form of a facsimile, through our web or mobile app portals, email or express or certified mail as soon as practicable during the "policy period". Such a notice must include:

    **1.** The specific details of the act, error, omission, or "security breach" that could reasonably be the basis for a "claim";

    **2.** The injury or damage which may result or has resulted from the circumstance; and

    **3.** The facts by which the "insured" first became aware of the act, error, omission or "security breach".

    Any subsequent "claim" made against the "insured" arising out of such circumstance which is the subject of the written notice will be deemed to have been made at the time written notice complying with the above requirements was first given to us.

    An incident or reasonably suspected incident reported to us during the "policy period" and in conformance with Paragraph **B.** of Section **VIII. NOTICE OF CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM** shall also constitute notice of a circumstance under this Paragraph **C.**

**D.** A "claim" or legal obligation under Paragraphs **A.** or **B.** of Section **VIII. NOTICE OF CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM** shall be considered to be reported to us when written notice is first received by us in the form of a facsimile, email, through our web or mobile app portals, or express or certified mail or email of the "claim" or legal obligation, or of an act, error, or omission, which could reasonably be expected to give rise to a "claim" if provided in compliance with Paragraph **C.** of Section **VIII. NOTICE OF CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM**.

**E.** With respect to Section **I. INSURING AGREEMENTS, H. Business Interruption Loss**, the "insured" shall forward immediately to us, written notice of the interruption or suspension of "computer systems" to which this Coverage Form applies in the form of a facsimile, email, through our web or mobile app portals or express mail. Such notice must be provided during the "policy period", or no later than ten days after the end of the "policy period" for interruptions or suspensions occurring within ten days of the end of the "policy period"; provided, all covered "business interruption loss" must be reported to us (in accordance with Section **XIII. Proof of Loss and Appraisal**) no later than six (6) months after the end of the "policy period".

## IX. OTHER INSURANCE

The insurance under this Coverage Form shall apply in excess of any other valid and collectible insurance available to any "insured", including any self-insured retention or deductible portion thereof unless such other insurance is written only as specific excess insurance over the Aggregate Limit of Liability or any other applicable Limit of Liability of this Coverage Form.

## X. NAMED INSURED AS AGENT

The "named insured" shall be considered the agent of all "insureds" and shall act on behalf of all "insureds" with respect to the giving of or receipt of all notices pertaining to this Coverage Form and the acceptance of any endorsements to this Coverage Form. With respect to Section **I. INSURING AGREEMENT F. Cyber Extortion**, in the event of an "extortion threat" to which this insurance applies, the "insured" shall notify us by calling the phone number for the Cyber Extortion Threat hotline shown in the Declarations immediately upon receipt of any "extortion threat", and shall thereafter also provide written notice by facsimile, email, through our web or mobile app portals, or express mail within five days following the "extortion threat".

## XI. DEFINITIONS

**A.** The following definitions apply to the provisions of this coverage form:

**1.** "Automatic extension period" means the period described in Section **VII. EXTENSION PERIODS**, Paragraph **A. Automatic Extension Period**, wherein this Coverage Form provides extra days after the end of this "policy period" for an "insured" to report a "claim" that occurred during the "policy period".

**2.** "Breach notice law" means any statute or regulation that requires notice to persons whose "personally identifiable information" was accessed or reasonably may have been accessed by an unauthorized person.

**3.** "Breach resolution and mitigation services" means a credit monitoring, identity monitoring or other solution selected from the products listed in "information pack" and offered to "notified individuals". The product offered to "notified individuals" will be selected by us in consultation with the "insured organization" and in accordance with the "information pack".

The product offer will be included in the communication provided pursuant to Paragraph **3.** of Section **I. INSURING AGREEMENTS, B. Privacy Breach Response Services**.

**4.** "Business interruption loss" means the total of:

**a.** "Income loss" and "extra expense" during the "period of restoration"; and

**b.** "Extended income loss" if the "income loss" during the "period of restoration" is in excess of the applicable retention.

Provided that "business interruption loss" shall not mean and Section **I. INSURING AGREEMENTS, H. Business Interruption Loss** shall not cover any of the following: "loss" arising out of any liability to any third party for whatever reason; legal costs or legal expenses of any type; "loss" incurred as a result of unfavorable business conditions, loss of market or any other consequential loss; or costs or expenses the "insured organization" incurs to identify and remove software program errors or vulnerabilities.

All "business interruption loss" resulting from multiple covered interruptions or suspensions of "computer systems" that arise out of the same or a continuing "security breach", from related or repeated "security breaches", or from multiple "security breaches" resulting from a failure of "computer security" shall be deemed to be a single "business interruption loss"; provided, however, that a separate "waiting period" shall apply to each "period of restoration".

**5.** "Call center services" means the provision of a call center to answer calls during standard business hours for a period of 90 days following notification (or longer if required by applicable law or regulation) of an incident for which notice is provided pursuant to Paragraph **3.** of Section **I. INSURING AGREEMENTS, B. Privacy Breach Response Services** (Notification Services).

"Call center services" will be provided by a service provider selected by us in consultation with the "insured organization" from the list of service providers in the "information packet".

**6.** "Claim" means:

**a.** A written demand received by any "insured" for money or services; including service of a suit or institution of regulatory or arbitration proceedings;

**b.** With respect to coverage provided under Section **I. INSURING AGREEMENTS, C. Regulatory Defense And Penalties** only, institution of a "regulatory proceeding" against any "insured";

**c.** A written request or agreement to toll or waive a statute of limitations relating to a potential "claim" described in Paragraph **1.** above; and

**d.** With respect to coverage provided under Paragraph **1.** of Section **I. INSURING AGREEMENTS, A. Information Security And Privacy Liability** only, a demand received by any "insured" to fulfill the "insured organization's" contractual obligation to provide notice of an incident (or reasonably suspected incident) described in Paragraph **1.** of Section **I. INSURING AGREEMENTS, A. Information Security And Privacy Liability** pursuant to a "breach notice law".

Multiple "claims" arising from the same or a series of related or repeated acts, errors, or omissions, or from any continuing acts, errors, omissions, or from multiple "security breaches" arising from a failure of "computer security", shall be considered a single "claim" for the purposes of this Coverage Form, irrespective of the number of claimants or "insureds" involved in the "claim". All such "claims" shall be deemed to have been made at the time of the first such "claim".

**7.** "Claim expenses" means:

**a.** Reasonable and necessary fees charged by an attorney designated pursuant to Paragraph **A.** of Section **II. DEFENSE AND SETTLEMENT OF CLAIMS**;

**b.** All other legal costs and expenses resulting from the investigation, adjustment, defense and appeal of a "claim", suit, or proceeding arising in connection therewith, or circumstance which might lead to a "claim", if incurred by us, or by the "insured" with the prior written consent of us; and

**c.** The premium cost for appeal bonds for covered judgments or bonds to release property used to secure a legal obligation, if required in any "claim" against an "insured" provided that we shall have no obligation to appeal or to obtain bonds.

"Claims expenses" do not include any salary, overhead, or other charges by the "insured" for any time spent in cooperating in the defense and investigation of any "claim" or circumstance that might lead to a "claim" notified under this Coverage Form, or costs to comply with any regulatory orders, settlements or judgments.

**8.** "Computer expert services" means costs for:

**a.** A computer security expert to determine the existence and cause of an actual or suspected electronic data breach which may require the "insured organization" to comply with a "breach notice law" and to determine the extent to which such information was accessed by an unauthorized person or persons;

**b.** A Payment Card Industry (PCI) Forensic Investigator that is approved by the PCI Security Standards Council and is retained by the "insured organization" in order to comply with the terms of a "merchant services agreement" to investigate the existence and extent of an actual or suspect compromise or credit card data; and within our discretion, where a computer security expert described in Paragraph **8.a.** above has not been retained, for a computer security expert to provide advice and oversight in connection with the investigation conducted by the PCI Forensic Investigator; and

**c.** A computer security expert which amount is part of and not in addition to the combined aggregate limit of coverage for all "computer expert services", "legal services", and "public relations and crisis management expenses" stated in the Declarations to demonstrate the "insureds" ability to prevent a future electronic data breach as required by a "merchant services agreement".

"Computer expert services" will be provided in accordance with the terms and conditions set forth in this Coverage Form and will be provided by a service provider selected by the "insured organization" in consultation with us from the list of service providers in the "information packet".

9. "Computer security" means software, computer or network hardware devices, as well as the "insured organization's" written information security policies and procedures, the function or purpose of which is to prevent "unauthorized access or use", a denial of service attack against "computer systems", infection of "computer systems" by malicious code or transmission of malicious code from "computer systems". "Computer security" includes anti-virus and intrusion detection software, firewalls and electronic systems that provide access control to "computer systems" through the use of passwords, biometric or similar identification of authorized users.

10. "Computer systems" means computers and associated input and output devices, data storage devices, networking equipment, and back up facilities:

   **a.** Operated by and either owned by or leased to the "insured organization"; or

   **b.** With respect to Section **I. INSURING AGREEMENTS A. - G.**, systems operated by a third party service provider and used for the purpose of providing hosted computer application services to the "insured organization" or for processing, maintaining, hosting or storing the "insured organization's" electronic data, pursuant to written contract with the "insured organization" for such services.

11. "Continuity date" means the date stated in the Declarations that coverage was first written with respect to the "named insured" and any "subsidiaries" acquired before such date. Any litigation initiated before this date is not subject to coverage under this Coverage Form even if the allegations were not part of a potentially covered claim.

12. "Control group" means the individuals holding the following positions in the "insured organization":

   **a.** President;

   **b.** Members of the Board of Directors;

   **c.** Executive Officers, including the Chief Executive Office, Chief Operating Officer, and Chief Financial Officer; General Counsel, Chief Information Officer, Chief Security Officer, Chief Privacy Officer;

   **d.** Staff attorneys employed by the "insured organization";

   **e.** Manager of a limited liability company; and

   **f.** Any individual in a substantially similar position or which substantially similar responsibilities as those referenced above.

13. "Cyber extortion loss" means:

   **a.** Any "extortion payment" that has been made under duress by or on behalf of the "insured" with our prior written consent, but solely to prevent or terminate an "extortion threat" and in an amount that does not exceed the covered "damages" and "claims expenses" that would have been incurred had the "extortion payment not been paid";

   **b.** An otherwise covered "extortion payment" that is lost in transit by actual destruction, disappearance or wrongful abstraction while being conveyed by any person authorized by or on behalf of the "insured" to make such conveyance; and

   **c.** Fees and expenses paid by or on behalf of the "insured" for security consultants retained with our prior written approval, but solely to prevent or terminate an "extortion threat".

14. "Damages" means a monetary judgment, award or settlement; provided that the term "damages" shall not include or mean:

   **a.** Future profits, restitution, disgorgement of unjust enrichment or profits by an "insured", or the costs of complying with orders granting injunctive or equitable relief;

**b.** Return or offset of fees, charges, or commissions charged by or owed to an "insured" for goods or services already provided or contracted to be provided;

**c.** Any damages which are a multiple of compensatory damages, fines, taxes or loss of tax benefits, sanctions or penalties;

**d.** Punitive or exemplary damages, unless insurable by law in any applicable venue that most favors coverage for such punitive or exemplary damages;

**e.** Discounts, coupons, prizes, awards or other incentives offered to the "insured's" customers or clients;

**f.** Liquidated damages to the extent that such damages exceed the amount for which the "insured" would have been liable in the absence of such liquidated damages agreement; or

**g.** Any amounts for which the "insured" is not liable, or for which there is no legal recourse against the "insured".

**15.** "Data asset" means any software or electronic data that exists in "computer systems" and that is subject to regular back up procedures, including computer programs, applications, account information, customer information, private or personal information, marketing information, financial information and any other information maintained by the "insured organization" in its ordinary course of business.

**16.** "Data protection loss" means:

**a.** With respect to any "data asset" that is altered, corrupted, destroyed, deleted or damaged the actual, reasonable and necessary costs and expenses incurred by the "insured" to restore a "data asset" from back-ups or from originals or to gather, assemble and recollect such "data asset" from other sources to the level or condition in which it existed immediately prior to its alteration, corruption, destruction, deletion or damage; or

**b.** With respect to any "data asset" that the "insured" is unable to access, the lesser of the actual, reasonable and necessary costs and expenses incurred by the "insured organization" to:

   **(1)** Regain access to such "data asset"; or

   **(2)** Restore such "data asset" from back-ups or originals or gather, assemble and recollect such "data asset" from other sources, to the level or condition in which it existed immediately prior to the "insureds" inability to access it.

Provided that if such "data asset" cannot reasonably be accessed, restored, gathered, assembled or recollected, then "data protection loss" means the actual, reasonable and necessary costs and expenses incurred by the "insured" to reach this determination.

Provided further that "data protection loss" shall not exceed, and shall not mean, any amount in excess of the amount by which the net profit before income taxes of the "insured" would have decreased had the "insured" failed to restore, gather, assemble or recollect as set forth in sub-paragraphs **16.a.** and **16.b.** above.

A "data protection loss" will be deemed to occur at the time such alteration, corruption, destruction, deletion or damage to or inability to access a "data asset" is first discovered by the "insured". All "data protection loss" that arises out of the same or a continuing "security breach", from related or repeated "security breaches", or from multiple "security breaches" resulting from a failure of "computer security" shall be deemed to be a single "data protection loss".

"Data protection loss" shall not mean, and there shall be no coverage under Section **I. INSURING AGREEMENTS, G. First Party Data Protection** for:

a. Costs or expenses incurred by the "insured" to identify or remediate software program errors or vulnerabilities or update, replace, restore, gather, assemble, reproduce, recollect or enhance a "data asset" or "computer systems" to a level beyond that which existed prior to the alteration, corruption, destruction, deletion or damage of such "data asset";

b. Costs or expenses to research or develop any "data asset", including but not limited to trade secrets or other proprietary information;

c. The monetary value of profits, royalties, or lost market share related to a "data asset", including but not limited to trade secrets or other proprietary information or any other amount pertaining to the value of the "data asset";

d. Loss arising out of any liability to any third party for whatever reason; or

e. Legal costs or legal expenses of any type.

17. "Denial of service attack" means an attack intended by the perpetrator to overwhelm the capacity of a "computer system" by sending an excessive volume of electronic data to such "computer system" in order to prevent authorized access to such "computer system".

18. "Extended income loss" means the "income loss" during the "extended interruption period".

19. "Extended interruption period" means the period of time that:

a. Begins on the date and time that the "period of restoration" ends; and

b. Terminates on the date and time the "insured" restores, or would have restored if the "insured" had exercised due diligence and dispatch, the net profit before income taxes that would have been earned by the "insured" directly through its business operations had the actual and necessary interruption or suspension of "computer systems" not occurred;

Provided that in no event shall the "extended interruption period" mean more than or exceed 30 days.

20. "Extortion payment" means cash, marketable goods or services demanded to prevent or terminate an "extortion threat".

21. "Extortion threat" means a threat to breach "computer security" in order to:

a. Alter, destroy, damage, delete or corrupt any "data asset";

b. Prevent access to "computer systems" or a "data asset", including a "denial of service attack" or encrypting a "data asset" and withholding the decryption key for such "data asset";

c. Perpetrate a theft or misuse of a "data asset" on "computer systems" through external access;

d. Introduce "malicious code" into "computer systems" or to third party computers and systems from "computer systems"; or

e. Interrupt or suspend "computer systems";

unless an "extortion payment" is received from or on behalf of the "insured".

Multiple related or continuing "extortion threats" shall be considered a single "extortion threat" for purposes of this insurance and shall be deemed to have occurred at the time of the first such "extortion threat".

22. "Extra expense" means:

a. Reasonable and necessary expenses that are incurred by the "insured" during the "period of restoration" to minimize, reduce or avoid an "income loss", provided that such expenses:

**(1)** Are over and above those the "insured" would have incurred had no interruption or suspension of the "computer systems" occurred; and

**(2)** Do not exceed the amount by which the "income loss" in excess of the retention and covered under this insurance is thereby reduced; and

**b.** "Forensic expenses";

provided that "extra expense" shall not mean, and there shall be no coverage under Section **I. INSURING AGREEMENTS, H. Business Interruption Loss** for expenses incurred by the "insured" to update, upgrade, enhance or replace "computer systems" to a level beyond that which existed prior to the actual and necessary interruption or suspension of "computer systems"; or the costs and expenses incurred by the "insured" to restore, reproduce, or regain access to any "data asset" that was altered, corrupted, destroyed, deleted, damaged or rendered inaccessible as a result of the failure of "computer security" to prevent a "security breach".

**23** "Forensic expenses" means reasonable and necessary expenses incurred by the "insured" to investigate the source or cause of the failure of "computer security" to prevent a "security breach".

**24.** "Income loss" means:

**a.** The net profit before income taxes that the "insured" is prevented from earning through its business operations or the net loss before income taxes that the "insured" is unable to avoid through its business operations as a direct result of the actual and necessary interruption or suspension of "computer systems"; and

**b.** Fixed operating expenses incurred by the "insured" (including payroll), but only to the extent that a. such operating expenses must necessarily continue during the "period of restoration" (or Extended Interruption Period, if applicable); and b. such expenses would have been incurred by the "insured" had such interruption or suspension not occurred.

"Income loss" shall be reduced to the extent the "insured" (if applicable) is able, with reasonable dispatch and due diligence, to reduce or limit such interruption or suspension of "computer systems" or conduct its business operations by other means.

In determining "income loss", due consideration shall be given to the prior experience of the "insured's" business operations before the beginning of the "period of restoration" and to the probable business operations the "insured organization" could have performed had no actual and necessary interruption or suspension occurred as result of a failure of "computer security" to prevent a "security breach".

"Income loss" will be calculated on an hourly basis based on the "insured's" net profit (or loss) and fixed operating expenses as set forth above.

**25.** "Information packet" means the information packet that includes a list of service providers who provide "privacy breach response services."

**26.** "Insured organization" means the "named insured" and any "subsidiaries" of the "named insured".

**27.** "Legal services" means fees charged by an attorney:

**a.** To determine the applicability of and actions necessary for the "insured organization" to comply with "breach notice laws" due to an actual or reasonably suspected theft, loss or "unauthorized disclosure" of "personally identifiable information";

**b.** To provide necessary legal advice to the "insured organization" in responding to actual or suspected theft, loss or "unauthorized disclosure" of "personally identifiable information"; and

**c.** To advise the "insured organization" in responding to credit card system operating regulation requirements for any actual or suspected compromise of credit card data that is required to be reported to the "insured organization's" merchant bank under the terms of a "merchant services agreement", but "legal services" does not include fees incurred in any actual or threatened legal proceeding, arbitration or mediation, or any advice in responding to credit card system operating regulation in connection with an assessment of "PCI Fines, Expenses, and Costs".

"Legal services" will be provided in accordance with the terms and conditions set forth in this Coverage Form and will be provided by an attorney selected by the "insured organization" in consultation with us, from the list of attorneys in the "information packet".

**28.** "Loss" means:

**a.** "Business Interruption Loss";

**b.** "Damages";

**c.** "Claims Expenses";

**d.** "Cyber Extortion Loss";

**e.** "Data Protection Loss";

**f.** "Public Relations and Crisis Management Expenses";

**g.** "Penalties";

**h.** "PCI Fines, Expenses and Costs"; and

**i.** "Privacy Breach Response Services".

**29.** "Malicious code" means any virus, Trojan horse, worm or any other similar software program, code or script intentionally designed to insert itself into computer memory or onto a computer disk and spread itself from one computer to another.

**30.** "Management control" means:

**a.** Owning, directly or indirectly, more than fifty percent (50%) of the outstanding securities, representing the present right to vote for the election of an entity's directors, members of the board of managers, management committee members or persons serving in a functionally equivalent role for such an entity operating or organization outside of the United States; or

**b.** Having the right, pursuant to a written contract or the bylaws, charter, operating agreement or similar documents of an entity to elect, appoint or designate a majority of:

**(1)** The Board of Directors of a corporation;

**(2)** The Management Committee of a joint venture or partnership;

**(3)** The Management Board of a Limited Liability Company; or

**(4)** Persons serving in a functionally equivalent role for such an entity operating or organized outside of the United States.

**31.** "Media material" means any information in electronic form, including words, sounds, numbers, images, or graphics and shall include advertising, video, streaming content, web-casting, online forum, bulletin board and chat room content, but does not mean computer software or the actual goods, products or services described, illustrated or displayed in such "media material".

**32.** "Merchant services agreement" means any agreement between an "insured" and a financial institution, credit/debit company, credit/debit card processor or independent service operator enabling an "insured" to accept credit card, debit card, prepaid card, or other payment cards for payments or donations.

**33.** "Notification services" means:

    **1.** Notification by first class mail or e-mail to United States or Canadian residents; and

    **2.** Notification by first class mail or e-mail to individuals residing outside the United States or Canada, but only to the extent reasonably practicable.

"Notification services" will be provided by a service provider selected by us in consultation with the "insured organization" from the list of service providers in the "information packet".

**34.** "Notified individual" means an individual person to whom notice is given or attempted to be given under Paragraph **3.** of Section **I.B. Privacy Breach Response Services** pursuant to a "breach notice law" as defined in Paragraph **A.2.** of Section **XI. DEFINITIONS**.

**35.** "Optional extension period" means period of time described in Section **VII. EXTENSION PERIODS**, Paragraph **B. Optional Extension Period**, wherein this Coverage Form provides extra days after the end of the "policy period" for an "insured" to report a "claim" that occurred during the "policy period".

**36.** "PCI Fines, Expenses and Costs" means the direct monetary fines, penalties, reimbursements, fraud recoveries or assessments owed by the "insured organization" under the terms of a "merchant services agreement", but only where such fines, penalties, reimbursements, fraud recoveries or assessments result both from the "insured organization's" actual or alleged noncompliance with published Payment Card Industry (PCI) Data Security Standards and from a data breach caused by an incident (or reasonably suspected incident) described in Paragraphs **1.** and **2.** of Section **I.A. Information Security And Privacy Liability**; provided, that the term "PCI Fines, Expenses and Costs" shall not include, or mean any charge backs, interchangeable fees, discount fees or prospective service fees.

**37.** "Penalties" means:

    **a.** Any civil fine or punitive sum of money payable to a governmental entity that was imposed in a "regulatory proceeding" by the Federal Trade Commission, Federal Communications Commission, or any other federal, state, local or foreign governmental entity, in such entity's regulatory or official capacity; the insurability of "penalties" shall be in accordance with the law in the applicable venue that most favors coverage for such "penalties"; and

    **b.** Amounts which the "insured" is legally obligated to deposit in a fund as equitable relief for the payment of consumer claims due to an adverse judgment or settlement of a "regulatory proceeding"; but shall not include payments to charitable organizations or disposition of such funds other than for payment of consumer claims for losses caused by an event covered pursuant to Paragraphs **1.**, **2.**, or **3.** of Section **I.A. Information Security And Privacy Liability**;

"Penalties" does not mean:

    **a.** Costs to remediate or improve "computer systems";

    **b.** Costs to establish, implement, maintain, improve or remediate security or privacy practices, procedures, programs or policies;

    **c.** Audit, assessment, compliance or reporting costs; or

    **d.** Costs to protect the confidentiality, integrity and/or security of "personally identifiable information" from theft, loss or disclosure.

**38.** "Period of restoration" means the time period that:

    **a.** Begins on the specific date and time that the actual and necessary interruption or suspension of "computer systems" first occurred; and

    **b.** Ends on the specific date and time that the actual and necessary interruption or suspension of "computer systems" ends, or would have ended had the "insured" acted with due diligence and dispatch;

Provided that in no event shall the "period of restoration" mean more than or exceed 30 days; and provided further that restoration of "computer systems" will not end the "period of restoration" if such systems are actually and necessarily interrupted or suspended again within one hour of such restoration due to the same cause as the original interruption or suspension.

**39.** "Personally identifiable information" means:

    **a.** Information concerning the individual that constitutes nonpublic personal information as defined in the Gramm-Leach Bliley Act of 1999, as amended, and regulations issued pursuant the Act;

    **b.** Medical or health care information concerning the individual, including protected health information as defined in the Health Insurance Portability and Accountability Act of 1996, as amended, and regulations issued pursuant to the Act;

    **c.** Information concerning the individual that is defined as private personal information under statutes enacted to protect such information in foreign countries, for "claims" subject to the law of such jurisdiction;

    **d.** Information concerning the individual that is defined as private personal information under a "breach notice law";

    **e.** Education records as defined by the Family Educational Rights and Privacy Act (FERPA), which are directly related to an individual's attendance as a student; or

    **f.** The individuals drivers' license or state identification number, social security number, unpublished telephone number, and credit, debit, or other financial account numbers in combination with associated security codes, access codes, passwords or pins;

if such individual allows an individual to be uniquely and reliably identified or contacted or allows access to the individuals financial account or medial record information.

"Personally identifiable information" does not include publicly available information that is lawfully made available to the general public from government records

**40.** "Policy period" means the period of time between the inception date shown in the "declarations" and the effective date of termination, expiration or cancellation of this insurance and specifically excludes any "optional extension period" or any prior policy period or renewal period.

**41.** "Privacy breach response services" means the services and coverage provided by Section **I.B. Privacy Breach Response Services**.

**42.** "Privacy law" means a federal, state or foreign statute or regulation requiring the "insured organization" to protect the confidentiality and/or security of "personally identifiable information".

**43.** "Privacy policy" means the "insured organization's" public declaration of its policy for collection, use, disclosure, sharing, dissemination and correction or supplementation of, and access to "personally identifiable information".

**44.** "Public relations and crisis management expense" shall mean the following costs approved in advance by us, and which are directly related to mitigating harm to the "insured organization's" reputation or potential "loss" covered by this Coverage Form resulting from an incident described in Paragraphs **1.** and **2.** of Section **I.A. Information Security And Privacy Liability** or from a "public relations event":

**a.** Costs incurred by a public relations or crisis management consultant;

**b.** Costs for media purchasing or for printing or mailing materials intended to inform the general public about the incident, such costs to be limited to the amount noted in the Schedule or Declarations Page for Section **I.B. Privacy Breach Response Services**;

**c.** For incidents or events in which notifications services are not otherwise provided pursuant to Section **I.A. Information Security And Privacy Liability** and **B. Privacy Breach Response Services**, costs to provide notifications and notices via e-mail or first class mail to customers where such notifications are not required by law (voluntary notifications), including non-affected customers of the "insured organization";

**d.** Costs to provide government mandated public notices related to breach events (including such notifications required under HITECH);

**e.** Costs to provide services to restore healthcare records of "notified individuals" residing in the United States whose "personally identifiable information" was compromised as a result of theft, loss or "unauthorized disclosure"; and

**f.** Other costs approved in advance by us.

"Public relations and crisis management expenses" must be incurred no later than 12 months following the reporting of such "claim" or breach event to us and, with respect to Paragraphs **a.** and **b.** above, within 90 days following the first publication of such "claim" or incident. If voluntary notifications are provided, e-mail notification will be provided in lieu of first class mail to the extent practicable.

**45.** "Public relations event" means the publication or imminent publication in a newspaper (or other general circulation print publication) or on radio, television or a publically accessible website of a covered "claim" under this Coverage Form.

**46.** "Regulatory proceeding" means a request for information, civil investigative demand or civil proceeding commenced by service of a complaint or similar proceeding brought by or on behalf of the Federal Trade Commission, Federal Communications Commission, or any federal, state, local or foreign governmental entity in such entity's regulatory or official capacity in connection with such proceeding.

**47.** "Related party" means the "insured organization" and any past, present or future employees, directors, officers, managers of a limited liability company, partners or natural person independent contractors of the "insured organization".

**48.** "Retroactive date" means the date set forth in the Declarations.

**49.** "Security breach" means:

**a.** "Unauthorized access or use" of "computer systems", including "unauthorized access or use" resulting from the theft of a password from a "computer system" or from any "insured";

**b.** A denial or service attack against "computer systems" or "computer systems" that are not owned, operated or controlled by an "insured"; or

**c.** Infection of "computer systems" by malicious code or transmission of malicious code from "computer systems".

A series of continuing "security breaches", related or repeated "security breaches", or multiple "security breaches" resulting from a continuing failure of "computer security" shall be considered a single "security breach" and be deemed to have occurred at the time of the first such "security breach".

50. "Subsidiary" means any corporation, limited liability company, joint venture or partnership while the "named insured" has "management control" over such entity, if the "named insured":

   a. had "management control" over such entity on the inception date of this Coverage Form or such entity was an "insured" under a policy issued by the Underwriters of which this Coverage Form is a renewal; or

   b. acquires "management control" after the inception date of this Coverage Form:

   provided that this Coverage Form only provides coverage for acts, errors, omissions, incidents or events that take place while the "named insured" has "management control" over such entity.

51. "Third party information" means any trade secret, data, design, interpretation, forecast, formula, method, practice, credit or debit card magnetic strip information, process, record, report or other item of information of a third party not insured under this Coverage Form which is not available to the general public and is provided to the "insured" subject to a mutually executed written confidentiality agreement or which the "insured organization" is legally required to maintain in confidence; however, "third party information" shall not include "personally identifiable information".

52. "Unauthorized access or use" means the gaining of access to or use of "computer systems" by an unauthorized person or persons or the use of "computer systems" in an unauthorized manner".

53. "Unauthorized disclosure" means the disclosure of (including disclosure resulting from phishing) or access to information in a manner that is not authorized by the "insured organization" and is without knowledge of, consent, or acquiescence of any member of the "control group".

54. "Waiting period" means the period of time beginning when the "period of restoration" begins and expiring after the lapse of the number of hours set forth in the Declarations. A "waiting period" shall apply to each "period of restoration".

## XII. CONDITIONS APPLICABLE TO PRIVACY BREACH RESPONSE SERVICES AND COVERAGE

A. With respect to Section **I.H. First Party Network Business Interruption**, the "insured" must forward written notice by express mail, email, through our web or mobile app portals, or facsimile to us immediately upon discovery of alteration, corruption, destruction, deletion or damage to or inability to access a "data asset" to which this insurance applies. All covered "data protection loss" must be discovered and reported (in accordance with Section **XIII. PROOF AND APPRAISAL OF LOSS** below) to us no later than six months after the end of the "policy period".

B. **Insuring Agreements A., C., D., G.** and **H.** only apply if:

   1. The "insured organization" initiates the notification services described in Paragraph **3.** Section **I.B. Privacy Breach Response Services** as soon as practicable after the "insured's" discovery of the "claim";

   2. The "claim" is made against the "insured" no later than two years after the "insured organization" initiates the notification services described in Paragraph **3.** Section **I.B. Privacy Breach Response Services**; and

   3. The "insured" reports the "claim" to us in writing as soon as practicable.

**XIII. PROOF AND APPRAISAL OF LOSS**

    **A. Proof of Loss.** With respect to Section **I.G. First Party Data Protection** and **I.H. First Party Network Business Interruption**, before coverage will apply, the "named insured" must:

        **1.** Prepare and submit to us a written and detailed proof of loss sworn by an officer of the "named insured" within 90 days after the "insured" discovers a "data protection loss" or the "insured organization" sustains a "business interruption loss" (as applicable), but in no event later than six months following the end of the "policy period" (unless such period has been extended by our written consent). Such proof of loss shall include a narrative with full particulars of such "data protection loss" or "business interruption loss", including, the time, place and cause of the "data protection loss" or "business interruption loss", a detailed calculation of any "data protection loss" or "business interruption loss", the "insured organization's" interest and the interest of all others in the property, the sound value thereof and the amount of "data protection loss" or "business interruption loss" or damage thereto and all other insurance thereon; and

        **2.** Upon our request, submit to an examination under oath and provide copies of the underlying documents, data and materials that reasonably relate to or are part of the basis of the claim for such "data protection loss" or "business interruption loss".

    The costs and expenses of preparing and submitting a proof of loss, and establishing or proving "data protection loss", "business interruption loss" or any other "loss" under this insurance shall be the "insured's" obligation, and are not covered under this insurance.

    **B. Appraisal of Loss.** If we do not agree with the "named insured" on the amount of a "loss", each party shall select and pay a qualified and disinterested appraiser or other qualified expert (the "Appraiser") to state the amount of the "loss" or reasonable expenses, and the Appraisers shall choose an umpire. If the Appraisers cannot agree on an umpire, the "named insured" or we may request a judge of a court having jurisdiction to make the selection. Each Appraiser shall submit the amount of the "loss" or reasonable expenses to the umpire, and agreement by the umpire and at least one of the Appraisers as to the amount of a "loss" shall be binding on all Insureds and us. The "named insured" and we will equally share the costs of the umpire and any other costs other than the cost of the Appraisers. This provision shall govern only the appraisal of the amount of a "loss", and shall not control the determination of whether such "loss" is otherwise covered by this insurance. We will still retain and do not waive our rights to deny coverage or enforce any obligation under this insurance.

**XIV. RECOVERED PROPERTY**

    If the "insured" or we recover any property, money or "data assets" after a loss payment is made, the party making the recovery must give prompt notice of the recovery to the other party. If the recovered property is money or other funds, the recovery shall be applied first to any costs incurred by us in recovering the property, second to loss payments made by us, and third to any retention payment made by the "named insured". If property other than money or funds is recovered, then the "named insured" may keep the recovered property and return the loss payment, plus any costs of recovery incurred by us, or keep the loss payment less the costs of recovery incurred by us and transfer all rights in the property to us.

**XV. OBLIGATIONS IN THE EVENT OF AN EXTORTION THREAT**

    **A. Insured's Duty of Confidentiality**

    The "insured" shall use its best efforts at all times to ensure that knowledge regarding the existence of this insurance for "cyber extortion loss" afforded by this insurance is kept confidential. We may terminate the insurance provided by this Coverage Form for "cyber extortion loss" upon ten days written notice to the "named insured" if the existence of insurance for "cyber extortion loss" provided by this insurance becomes public knowledge or is revealed to a person making an "extortion threat" through no fault of ours.

### B. Insured Organization's Obligation to Investigate Extortion Threat and Avoid or Limit Extortion Payment

Prior to the payment of any "extortion payment", the "insured" shall make every reasonable effort to determine that the "extortion threat" is not a hoax, or otherwise not credible. The "insured" shall take all steps reasonable and practical to avoid or limit the payment of an "extortion payment".

### C. Conditions Precedent

As conditions precedent to this insurance for "cyber extortion loss" under the terms of this insurance:

#### 1. Named Insured's Obligation to Demonstrate Duress

The "insured" must be able to demonstrate that the "extortion payment" was surrendered under duress.

#### 2. Notification of Police

The "insured" shall allow us or their representative to notify the police or other responsible law enforcement authorities of any "extortion threat".

## XVI. CANCELLATION

**A.** The "named insured" may only cancel this Coverage Form by mailing to the Company written notice stating when, not less than 30 days thereafter, such cancellation shall be effective.

**B.** The Company may cancel this Coverage Form for any reason, except non-payment of premium, by mailing or delivering to "named insured" at the address shown in the Declarations, written notice stating when, not less than 30 days thereafter, such cancellation shall be effective. The Company may cancel this Coverage Form for non-payment of premium, by mailing or delivering to the "named insured" at the address shown in the Declarations, written notice stating when, not less than ten days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation as stated in the notice shall become the end of the "Policy Period". Delivery of such written notice shall be equivalent to mailing.

**C.** If this Coverage Form is cancelled, the Company will send the "named insured" any unearned premium refund due. If the Company cancels, the refund will be pro rata. Refund premium adjustments may be made at the time cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

If the "named insured" cancels, the refund may be less than pro rata. The cancellation will be effective even if the Company has not made or offered a refund. However, premium shall be deemed fully earned if any "claim" under this Coverage Form is reported to the Company on or before the date of cancellation.

## XVII. NONRENEWAL

If the Company decides not to renew this Coverage Form, the Company will mail or deliver to the first "named insured" shown in the Declarations, written notice of the non-renewal not less than 60 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient notice of non-renewal.

# BUSINESSOWNERS SPECIAL
# PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H** - Property Definitions.

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property, as used in this policy, means the type of property as described in this section, **A.1.,** and limited in **A.2.,** Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Your personal property in apartments or rooms furnished by you as landlord;

**(5)** Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

**(a)** Fire extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(6)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the buildings or structures;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

**b.** Business Personal Property located in or on the buildings at the described premises or in the open (or in a vehicle) within 100 feet of the described premises, including:

**(1)** Property you own that is used in your business;

**(2)** Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition **E.6.d.(3)(b);**

**(3)** Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove; and

**(4)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph **A.1.b.(2).**

2. **Property Not Covered**

Covered Property does not include:

a. Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

b. "Money" or "securities" except as provided in the:

   (1) Money and Securities Optional Coverage; or

   (2) Employee Dishonesty Optional Coverage;

c. Contraband, or property in the course of illegal transportation or trade;

d. Land (including land on which the property is located), water, growing crops or lawns;

e. Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants, all except as provided in the:

   (1) Outdoor Property Coverage Extension; or

   (2) Outdoor Signs Optional Coverage;

f. Watercraft (including motors, equipment and accessories) while afloat.

3. **Covered Causes Of Loss**

Risks Of Direct Physical Loss unless the loss is:

a. Excluded in Section **B.,** Exclusions; or

b. Limited in Paragraph **A.4.,** Limitations;

that follow.

4. **Limitations**

a. We will not pay for loss of or damage to:

   (1) Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   (2) Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   (3) Property that is missing, but there is no physical evidence to show what happened to it, such as shortage disclosed on taking inventory. This limitation does not apply to the Optional Coverage for Money and Securities.

   (4) Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

b. With respect to glass (other than glass building blocks) that is part of the interior of a building or structure, or part of an outdoor sign, we will not pay more than $500 for the total of all loss or damage in any one occurrence. Subject to the $500 limit on all loss or damage, we will not pay more than $100 for each plate, pane, multiple plate insulating unit, radiant or solar heating panel, jalousie, louver or shutter.

This Limitation does not apply to loss or damage by the "specified causes of loss", except vandalism.

c. We will not pay for loss of or damage to fragile articles such as glassware, statuary, marbles, chinaware and porcelains, if broken, unless caused by the "specified causes of loss" or building glass breakage. This restriction does not apply to:

   (1) Glass that is part of the interior of a building or structure;

   (2) Containers of property held for sale; or

   (3) Photographic or scientific instrument lenses.

d. For loss or damage by theft, the following types of property are covered only up to the limits shown:

   (1) $2,500 for furs, fur garments and garments trimmed with fur.

**(2)** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**(3)** $2,500 for patterns, dies, molds and forms.

**5. Additional Coverages**

**a. Debris Removal**

**(1)** We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

**(a)** The date of direct physical loss or damage; or

**(b)** The end of the policy period.

**(2)** The most we will pay under this Additional Coverage is 25% of:

**(a)** The amount we pay for the direct physical loss of or damage to Covered Property; plus

**(b)** The deductible in this policy applicable to that loss or damage.

But this limitation does not apply to any additional debris removal limit provided in Paragraph **(4)** below.

**(3)** This Additional Coverage does not apply to costs to:

**(a)** Extract "pollutants" from land or water; or

**(b)** Remove, restore or replace polluted land or water.

**(4)** If:

**(a)** The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

**(b)** The debris removal expense exceeds the amount payable under the 25% Debris Removal Coverage limitation in Paragraph **(2)** above;

we will pay up to an additional $10,000 for each location in any one occurrence under the Debris Removal Additional Coverage.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

**d. Collapse**

**(1)** We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building insured under this policy, if the collapse is caused by one or more of the following:

**(a)** The "specified cause of loss" or breakage of building glass, all only as insured against in this policy;

**(b)** Hidden decay;

**(c)** Hidden insect or vermin damage;

**(d)** Weight of people or personal property;

**(e)** Weight of rain that collects on a roof;

**(f)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in **d.(1)(a)** through **d.(1)(e)**, we will pay for the loss or damage even if use of defective material or methods in construction, remodeling or renovation, contributes to the collapse.

**(2)** If the direct physical loss or damage does not involve collapse of a building or any part of a building, we will pay for loss or damage to Covered Property caused by the collapse of personal property only if:

    **(a)** The personal property which collapses is inside a building insured under this policy; and

    **(b)** The collapse was caused by a cause of loss listed in **d.(1)(a)** through **d.(1)(f)** above.

**(3)** With respect to the following property:

    **(a)** Awnings;

    **(b)** Gutters and downspouts;

    **(c)** Yard fixtures;

    **(d)** Outdoor swimming pools;

    **(e)** Piers, wharves and docks;

    **(f)** Beach or diving platforms or appurtenances;

    **(g)** Retaining walls; and

    **(h)** Walks, roadways and other paved surfaces;

if the collapse is caused by a cause of loss listed in **d.(1)(b)** through **d.(1)(f),** we will pay for loss or damage to that property only if such loss or damage is a direct result of the collapse of a building insured under this policy and the property is Covered Property under this policy.

**(4)** Collapse does not include settling, cracking, shrinkage, bulging or expansion.

**e. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

**f. Business Income**

**(1) Business Income**

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**(a)** The portion of the building which you rent, lease or occupy; and

**(b)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage.

Business Income means the:

    **(i)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

    **(ii)** Continuing normal operating expenses incurred, including payroll.

Ordinary payroll expenses mean payroll expenses for all your employees except:

**(a)** Officers;

**(b)** Executives;

**(c)** Department Managers;

**(d)** Employees under contract; and

**(e)** Additional Exemptions shown in the Declarations as:

    **(i)** Job Classifications; or

    **(ii)** Employees.

Ordinary payroll expenses include:

**(a)** Payroll;

**(b)** Employee benefits, if directly related to payroll;

**(c)** FICA payments you pay;

**(d)** Union dues you pay; and

**(e)** Workers' compensation premiums.

**(2) Extended Business Income**

If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(a)** Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(b)** Ends on the earlier of:

    **(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

    **(ii)** 30 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

This Additional Coverage is not subject to the Limits of Insurance.

**g. Extra Expense**

**(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**(a)** The portion of the building which you rent, lease or occupy; and

**(b)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

**(2)** Extra Expense means expense incurred:

**(a)** To avoid or minimize the suspension of business and to continue "operations":

    **(i)** At the described premises; or

    **(ii)** At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

**(b)** To minimize the suspension of business if you cannot continue "operations".

Copyright, Insurance Services Office, Inc., 1999

**(c)** To:

**(i)** Repair or replace any property; or

**(ii)** Research, replace or restore the lost information on damaged "valuable papers and records":

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **f.** Business Income.

We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance.

**h. Pollutant Clean Up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

**(1)** The date of direct physical loss or damage; or

**(2)** The end of the policy period.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

**i. Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for necessary Extra Expense will begin immediately after the time of that action and ends:

**(1)** 3 consecutive weeks after the time of that action; or

**(2)** When your Business Income coverage ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance.

**j. Money Orders And Counterfeit Paper Currency**

We will pay for loss due to the good faith acceptance of:

**(1)** Any U.S. or Canadian post office, express company, or national or state (or Canadian) chartered bank money order that is not paid upon presentation to the issuer; or

**(2)** Counterfeit United States or Canadian paper currency;

in exchange for merchandise, "money" or services or as part of a normal business transaction.

The most we will pay for any loss under this Additional Coverage is $1,000.

**k. Forgery And Alteration**

**(1)** We will pay for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in "money", that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

**(2)** If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

**(3)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500.

**l. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings insured on a replacement cost basis.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **I.(3)** through **I.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **I.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $5,000.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, of if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment Property Loss Condition in this Coverage Form do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in **I.(6)** of this Additional Coverage, is not subject to such limitation.

**m. Exterior Building Glass**

**(1)** We will pay for direct physical loss of or damage to glass, including lettering or ornamentation, that is part of the exterior of a covered building or structure at the described premises. The glass must be owned by you, or owned by others but in your care, custody or control. We will also pay for necessary:

**(a)** Expenses incurred to put up temporary plates or board up openings;

**(b)** Repair or replacement of encasing frames; and

**(c)** Expenses incurred to remove or replace obstructions.

**(2)** Paragraph **A.3., Covered Causes Of Loss** and Section **B., Exclusions** do not apply to this Additional Coverage, except for:

**(a)** Paragraph **B.1.b.,** Earth Movement;

**(b)** Paragraph **B.1.c.,** Governmental Action;

**(c)** Paragraph **B.1.d.,** Nuclear Hazard;

**(d)** Paragraph **B.1.f.,** War And Military Action; and

**(e)** Paragraph **B.1.g.,** Water.

 Copyright, Insurance Services Office, Inc., 1999 ☐

**(3)** We will not pay for loss or damage caused by or resulting from:

    **(a)** Wear and tear;

    **(b)** Hidden or latent defect;

    **(c)** Corrosion; or

    **(d)** Rust.

**(4)** The most we pay under this Additional Coverage is the Building Limit of Insurance shown in the Declarations.

However, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property, the most we will pay under this Additional Coverage is the Tenant's Exterior Building Glass Limit of Insurance shown in the Declarations.

**6. Coverage Extensions**

In addition to the Limits of Insurance, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, unless a higher Limit of Insurance is shown in the Declarations.

**a. Personal Property At Newly Acquired Premises**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to that property at any premises you acquire.

The most we will pay for loss or damage under this Extension is $100,000 at each premises.

**(2)** Insurance under this Extension for each newly acquired premises will end when any of the following first occurs:

    **(a)** This policy expires;

    **(b)** 30 days expire after you acquire or begin construction at the new premises; or

    **(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the premises.

**b. Personal Property Off Premises**

You may extend the insurance that applies to Business Personal Property to apply to covered Business Personal Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or temporarily at a premises you do not own, lease or operate.The most we will pay for loss or damage under this Extension is $5,000.

**c. Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants, including debris removal expense, caused by or resulting from any of the following causes of loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $2,500, but not more than $500 for any one tree, shrub or plant.

**d. Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or your employees. This extension does not apply to:

**(1)** Tools or equipment used in your business; or

**(2)** Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises.

**e. "Valuable Papers And Records"**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research lost information on "valuable papers and records" for which duplicates do not exist.

 Copyright, Insurance Services Office, Inc., 1999 □

**(2)** This Coverage Extension does not apply to:

**(a)** Property held as samples or for delivery after sale;

**(b)** Property in storage away from the premises shown in the Declarations.

**(3)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $5,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $2,500.

**(4)** Section **B. Exclusions** of this Coverage Form does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

**(d)** Paragraph **B.2.f.,** Dishonesty;

**(e)** Paragraph **B.2.g.,** False Pretense;

**(f)** Paragraph **B.3.;** and

**(g)** The Accounts Receivable and "Valuable Papers And Records" Exclusions.

**f. Accounts Receivable**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

**(a)** All amounts due from your customers that you are unable to collect;

**(b)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**(c)** Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

**(d)** Other reasonable expenses that you incur to re-establish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

**(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $5,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $2,500.

**(3)** Section **B. Exclusions** of this Coverage Form does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

**(d)** Paragraph **B.2.f.,** Dishonesty;

**(e)** Paragraph **B.2.g.,** False Pretense;

**(f)** Paragraph **B.3.;** and

**(g)** The Accounts Receivable and "Valuable Papers And Records" Exclusions.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance Or Law**

The enforcement of any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(1)** An ordinance or law that is enforced even if the property has not been damaged; or

**(2)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

 Copyright, Insurance Services Office, Inc., 1999 □

**b. Earth Movement**

**(1)** Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But if earth movement results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(2)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust, or particulate matter; or

**(c)** Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Power Failure**

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

But if failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows from a sewer, drain or sump; or

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings.

But if Water, as described in **B.1.g.(1)** through **B.1.g.(4),** results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a. Electrical Apparatus**

Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by fire.

**b. Consequential Losses**

Delay, loss of use or loss of market.

**c. Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**d. Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**e. Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**f. Dishonesty**

Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

**(1)** Acting alone or in collusion with others;

**(2)** Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

**g. False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**h. Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

**i. Collapse**

Collapse, except as provided in the Additional Coverage for Collapse. But if collapse results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**j. Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

**k. Other Types Of Loss**

**(1)** Wear and tear;

**(2)** Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

Copyright, Insurance Services Office, Inc., 1999

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force; or

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if an excluded cause of loss that is listed in **B.2.k.(1)** through **B.2.k.(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

3. We will not pay for loss or damage caused by or resulting from any of the following **B.3.a.** through **B.3.c.** But if an excluded cause of loss that is listed in **B.3.a.** through **B.3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

a. **Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

b. **Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. **Negligent Work**

Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

4. **Business Income And Extra Expense Exclusions**

We will not pay for:

a. Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

(1) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(2) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration".

b. Any other consequential loss.

5. **Accounts Receivable And "Valuable Papers And Records" Exclusions**

The following additional exclusions apply to the Accounts Receivable and "Valuable Papers And Records" Coverage Extensions:

a. We will not pay for loss or damage caused by or resulting from electrical or magnetic injury, disturbance or erasure of electronic recordings that is caused by or results from:

(a) Programming errors or faulty machine instructions;

(b) Faulty installation or maintenance of data processing equipment or component parts;

But we will pay for direct loss or damage caused by lightning.

b. Applicable to "Valuable Papers and Records" only:

We will not pay for loss or damage caused by or resulting from any of the following:

(1) Errors or omissions in processing or copying. But if errors or omissions in processing or copying result in fire or explosion, we will pay for the direct loss or damage caused by the fire or explosion.

(2) Wear and tear, gradual deterioration or latent defect.

   Copyright, Insurance Services Office, Inc., 1999   **BP 00 02 12 99**   □

c. Applicable to Accounts Receivable only:

We will not pay for:

(1) Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

(2) Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

(3) Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

## C. Limits Of Insurance

1. The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

2. The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

3. The limits applicable to the Coverage Extensions and the Fire Department Service Charge and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance.

4. **Building Limit - Automatic Increase**

   a. The Limit of Insurance for Buildings will automatically increase by the annual percentage shown in the Declarations.

   b. The amount of increase will be:

      (1) The Building limit that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Building limit, times

      (2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Building limit, divided by 365.

Example:

If: The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last policy change) is 146.

The amount of increase is $100,000 x .08 x 146 ÷ 365 = $3,200.

5. **Business Personal Property Limit - Seasonal Increase**

   a. The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations.

   b. This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

      (1) The 12 months immediately preceding the date the loss or damage occurs; or

      (2) The period of time you have been in business as of the date the loss or damage occurs.

## D. Deductibles

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

2. Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under all of the following Optional Coverages and the Additional Coverage - Exterior Building Glass in any one occurrence is the Optional Coverage/Exterior Building Glass Deductible shown in the Declarations:

   a. Money and Securities;

   b. Employee Dishonesty;

**c.** Interior Glass; and

**d.** Outdoor Signs.

But this Optional Coverage/Exterior Building Glass Deductible will not increase the Deductible shown in the Declarations. This Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

**3.** No deductible applies to the following Additional Coverages:

**a.** Fire Department Service Charge;

**b.** Business Income;

**c.** Extra Expense; and

**d.** Civil Authority.

**E. Property Loss Conditions**

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**(9)** Resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**5. Limitation - Electronic Media And Records**

We will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the longer of:

**a.** 60 consecutive days from the date of direct physical loss or damage; or

**b.** The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace with reasonable speed and similar quality, other property at the described premises due to loss or damage caused by the same occurrence.

Electronic Media and Records are:

**(1)** Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

**(2)** Data stored on such media; or

**(3)** Programming records used for electronic data processing or electronically controlled equipment.

Example No. 1:

A Covered Cause of Loss damages a computer on June 1. It takes until September 1 to replace the computer, and until October 1 to restore the data that was lost when the damage occurred. We will only pay for the Business Income loss sustained during the period June 1 - September 1. Loss during the period September 2 - October 1 is not covered.

Example No. 2:

A Covered Cause of Loss results in the loss of data processing programming records on August 1. The records are replaced on October 15. We will only pay for the Business Income loss sustained during the period August 1 - September 29 (60 consecutive days). Loss during the period September 30 - October 15 is not covered.

**6. Loss Payment**

In the event of loss or damage covered by this policy:

**a.** At our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **d.(1)(e)** below.

**b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**c.** We will not pay you more than your financial interest in the Covered Property.

**d.** Except as provided in **(2)** through **(8)** below, we will determine the value of Covered Property as follows:

**(1)** At replacement cost without deduction for depreciation, subject to the following:

**(a)** If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

**(i)** The Limit of Insurance under this policy that applies to the lost or damaged property;

**(ii)** The cost to replace, on the same premises, the lost or damaged property with other property:

**i.** Of comparable material and quality; and

**ii.** Used for the same purpose; or

**(iii)** The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

**(b)** If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

   **(i)** The actual cash value of the lost or damaged property; or

   **(ii)** A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the cost of repair or replacement.

**(c)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

**(d)** We will not pay on a replacement cost basis for any loss or damage:

   **(i)** Until the lost or damaged property is actually repaired or replaced; and

   **(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

**(e)** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**(2)** If the "Actual Cash Value - Buildings" option applies, as shown in the Declarations, Paragraph **(1)** above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

**(3)** The following property at actual cash value:

   **(a)** Used or second-hand merchandise held in storage or for sale;

   **(b)** Property of others, but this property is not covered for more than the amount for which you are liable, plus the cost of labor, materials or services furnished or arranged by you on personal property of others;

   **(c)** Household contents, except personal property in apartments or rooms furnished by you as landlord;

   **(d)** Manuscripts;

   **(e)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

**(4)** Glass at the cost of replacement with safety glazing material if required by law.

**(5)** Tenants' Improvements and Betterments at:

   **(a)** Replacement cost if you make repairs promptly.

   **(b)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

      **(i)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

      **(ii)** Divide the amount determined in **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

      If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

   **(c)** Nothing if others pay for repairs or replacement.

**(6)** "Valuable papers and records", including those which exist on electronic or magnetic media (other than prepackaged software programs), at the cost of:

**(a)** Blank materials for reproducing the records; and

**(b)** Labor to transcribe or copy the records.

This condition does not apply to "valuable papers and records" that are actually replaced or restored.

**(7)** Applicable only to the Optional Coverages:

**(a)** "Money" at its face value; and

**(b)** "Securities" at their value at the close of business on the day the loss is discovered.

**(8)** Applicable only to Accounts Receivable:

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

**(i)** We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

**(ii)** We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**(i)** The amount of the accounts for which there is no loss or damage;

**(ii)** The amount of the accounts that you are able to re-establish or collect;

**(iii)** An amount to allow for probable bad debts that you are normally unable to collect; and

**(iv)** All unearned interest and service charges.

**e.** Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy, and

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**7. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**8. Resumption Of Operations**

We will reduce the amount of your:

**a.** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**b.** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

 Copyright, Insurance Services Office, Inc., 1999 □

**9. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner of a building, building means the entire building. Such building is vacant when 70% or more of its total square footage:

**(i)** Is not rented; or

**(ii)** Is not used to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**F. Property General Conditions**

**1. Control Of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**2. Mortgageholders**

**a.** The term "mortgageholder" includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

Copyright, Insurance Services Office, Inc., 1999

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**3. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**4. Policy Period, Coverage Territory**

Under this form:

a. We cover loss or damage commencing:

(1) During the policy period shown in the Declarations; and

(2) Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

b. The coverage territory is:

(1) The United States of America (including its territories and possessions);

(2) Puerto Rico; and

(3) Canada.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below.

**1. Outdoor Signs**

a. We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

(1) Owned by you; or

(2) Owned by others but in your care, custody or control.

b. Paragraph **A.3., Covered Causes Of Loss,** and Section **B., Exclusions,** do not apply to this Optional Coverage, except for:

(1) Paragraph **B.1.c.,** Governmental Action;

(2) Paragraph **B.1.d.,** Nuclear Hazard; and

(3) Paragraph **B.1.f.,** War And Military Action.

c. We will not pay for loss or damage caused by or resulting from:

(1) Wear and tear;

(2) Hidden or latent defect;

(3) Rust;

(4) Corrosion; or

(5) Mechanical breakdown.

d. The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Outdoor Signs shown in the Declarations.

e. The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

**2. Interior Glass**

a. We will pay for direct physical loss of or damage to items of glass that are permanently affixed to the interior walls, floors or ceilings of a covered building or structure at the described premises, provided each item is:

(1) Described in the Declarations as covered under this Optional Coverage; and

(2) Located in the basement or ground floor level of the building or structure, unless the Declarations show that this Optional Coverage is applicable to interior glass at all floors; and

(3) Owned by you, or owned by others but in your care, custody or control.

**b.** We will also pay for necessary:

    **(1)** Expenses incurred to put up temporary plates or board up openings;

    **(2)** Repair or replacement of encasing frames; and

    **(3)** Expenses incurred to remove or replace obstructions.

**c.** Paragraph **A.3., Covered Causes Of Loss,** and Section **B., Exclusions,** do not apply to this Optional Coverage, except for:

    **(1)** Paragraph **B.1.c.,** Governmental Action;

    **(2)** Paragraph **B.1.d.,** Nuclear Hazard; and

    **(3)** Paragraph **B.1.f.,** War And Military Action.

**d.** We will not pay for loss or damage caused by or resulting from:

    **(1)** Wear and tear;

    **(2)** Hidden or latent defect;

    **(3)** Corrosion; or

    **(4)** Rust.

**e.** This Optional Coverage supersedes all limitations in this policy that apply to interior glass.

**3. Money And Securities**

**a.** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

    **(1)** Theft, meaning any act of stealing;

    **(2)** Disappearance; or

    **(3)** Destruction.

**b.** In addition to the Limitations and Exclusions applicable to property coverage, we will not pay for loss:

    **(1)** Resulting from accounting or arithmetical errors or omissions;

    **(2)** Due to the giving or surrendering of property in any exchange or purchase; or

**(3)** Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**c.** The most we will pay for loss in any one occurrence is:

    **(1)** The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

        **(a)** In or on the described premises; or

        **(b)** Within a bank or savings institution; and

    **(2)** The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

**d.** All loss:

    **(1)** Caused by one or more persons; or

    **(2)** Involving a single act or series of related acts;

    is considered one occurrence.

**e.** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**4. Employee Dishonesty**

**a.** We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

    **(1)** Cause you to sustain loss or damage; and also

    **(2)** Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

        **(a)** Any employee; or

        **(b)** Any other person or organization.

**b.** We will not pay for loss or damage:

    **(1)** Resulting from any dishonest or criminal act that you or any of your partners commit whether acting alone or in collusion with other persons.

**(2)** The only proof of which as to its existence or amount is:

**(a)** An inventory computation; or

**(b)** A profit and loss computation.

**c.** The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Employee Dishonesty shown in the Declarations.

**d.** All loss or damage:

**(1)** Caused by one or more persons; or

**(2)** Involving a single act or series of related acts;

is considered one occurrence.

**e.** We will pay only for loss or damage you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**f.** This Optional Coverage does not apply to any employee immediately upon discovery by:

**(1)** You; or

**(2)** Any of your partners, officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

**g.** We will pay only for covered loss or damage discovered no later than one year from the end of the Policy Period.

**h.** If you (or any predecessor in interest) sustained loss or damage during the period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

**(1)** This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

**(2)** The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**i.** The insurance under Paragraph **h.** above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

**(1)** This Optional Coverage as of its effective date; or

**(2)** The prior insurance had it remained in effect.

**5. Mechanical Breakdown**

**a.** We will pay for direct damage to Covered Property caused by an Accident to an Object. The Object must be:

**(1)** Owned by you or in your care, custody or control; and

**(2)** At the described premises.

**b.** Accident means a sudden and accidental breakdown of the Object or a part of the Object. At the time the breakdown occurs, it must manifest itself by physical damage to the Object that necessitates repair or replacement.

**c.** None of the following is an Accident:

**(1)** Depletion, deterioration, corrosion or erosion;

**(2)** Wear and tear;

**(3)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

**(4)** Breakdown of any vacuum tube, gas tube or brush;

**(5)** Breakdown of any electronic computer or electronic data processing equipment;

**(6)** Breakdown of any structure or foundation supporting the Object or any of its parts;

**(7)** The functioning of any safety or protective device; or

**(8)** The explosion of gases or fuel within the furnace of any Object or within the flues or passages through which the gases of combustion pass.

**d.** Object means any of the following equipment:

**(1)** Boiler and Pressure Vessels:

**(a)** Steam heating boilers and condensate return tanks used with them;

**(b)** Hot water heating boilers and expansion tanks used with them;

**(c)** Hot water supply boilers;

**(d)** Other fired or unfired vessels used for maintenance or service of the described premises but not used for processing or manufacturing;

**(e)** Steam boiler piping, valves, fittings, traps and separators, but only if they:

**(i)** Are on your premises or between parts of your premises;

**(ii)** Contain steam or condensate of steam; and

**(iii)** Are not part of any other vessel or apparatus;

**(f)** Feed water piping between any steam boiler and a feed pump or injector.

**(2)** Air Conditioning Units - Any air conditioning unit that has a capacity of 60,000 Btu or more, including:

**(a)** Inductors, convectors and coils that make use of a refrigerant and form part of a cooling, humidity control or space heating system;

**(b)** Interconnecting piping, valves and fittings containing only a refrigerant, water, brine or other solution;

**(c)** Vessels heated directly or indirectly that:

**(i)** Form part of an absorption type system; and

**(ii)** Function as a generator, regenerator or concentrator;

**(d)** Compressors, pumps, fans and blowers used solely with the system together with their driving electric motors; and

**(e)** Control equipment used solely with the system.

**e.** Object does not mean:

**(1)** As Boiler and Pressure Vessels:

**(a)** Equipment that is not under internal vacuum or internal pressure other than weight of contents;

**(b)** Boiler settings;

**(c)** Insulating or refractory material; or

**(d)** Electrical, reciprocating or rotating apparatus within or forming a part of the boiler or vessel.

**(2)** As Air Conditioning Units, any:

**(a)** Vessel, cooling tower, reservoir or other source of cooling water for a condenser or compressor, or any water piping leading to or from that source; or

**(b)** Wiring or piping leading to or from the unit.

**f.** We will not pay for an Accident to any Object while being tested.

**g. Suspension**

Whenever an Object is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an Accident to that Object. This can be done by delivering or mailing a written notice of suspension to:

**(1)** Your last known address; or

**(2)** The address where the Object is located.

If we suspend your insurance, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

**H. Property Definitions**

**1.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value; and

**b.** Travelers checks, register checks and money orders held for sale to the public.

**2.** "Operations" means your business activities occurring at the described premises.

**3.** "Period of restoration" means the period of time that:

**a.** Begins:

**(1)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

**(2)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and
d

**b.** Ends on the earlier of:

   **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

   **(2)** The date when business is resumed at a new permanent location.

″Period of restoration″ does not include any increased period required due to the enforcement of any ordinance or law that:

   **(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

   **(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of ″pollutants″.

The expiration date of this policy will not cut short the ″period of restoration″.

**4.** ″Pollutants″ means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**5.** ″Securities″ means negotiable and non-negotiable instruments or contracts representing either ″money″ or other property and includes:

  **a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

  **b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include ″money″.

**6.** ″Specified Causes of Loss″ means the following:

Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

  **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

   **(1)** The cost of filling sinkholes; or

   **(2)** Sinking or collapse of land into man-made underground cavities.

  **b.** Falling objects does not include loss of or damage to:

   **(1)** Personal property in the open; or

   **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

  **c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

**7.** ″Valuable papers and records″ means inscribed, printed, or written:

  **a.** Documents;

  **b.** Manuscripts; and

  **c.** Records;

including abstracts, books, deeds, drawings, films, maps or mortgages.

But ″valuable papers and records″ does not mean:

  **d.** ″Money″ or ″Securities″;

  **e.** Converted Data;

  **f.** Programs or instructions used in your data processing operations, including the materials on which the data is recorded.

Case: 1:22-cv-00099 Document #: 1-2 Filed: 01/06/22 Page 95 of 157 PageID #:182

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

 **FARMERS** INSURANCE

J**6353**
**1st Edition**

## CHANGE TO LIMITS OF INSURANCE

This endorsement modifies insurance provided under the following:

    BUSINESSOWNERS LIABILITY COVERAGE FORM
    APARTMENT OWNERS LIABILITY COVERAGE FORM
    CONDOMINIUM LIABILITY COVERAGE FORM

The following provision replaces **D.1.**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    **a.** Insureds;
    **b.** Claims made or "suits" brought;
    **c.** Persons or organizations making "claims" or bringing "suits"; or
    **d.** Policies involved.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

**S2297**
**Illinois**
**1st Edition**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES   DEFENSE COSTS

This endorsement modifies insurance provided under the following:

   BUSINESSOWNERS LIABILITY COVERAGE FORM
   CONDOMINIUM LIABILITY COVERAGE FORM
   APARTMENT OWNERS LIABILITY COVERAGE FORM

The following is added to paragraph **A. Coverages:**

If we initially defend an insured or pay for an insured's defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

BUSINESSOWNERS
BP 05 14 01 03

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Liability Coverage Form **BP 00 06** and **Section II Liability** of the Businessowners Coverage Form **BP 00 03:**

**A.** Exclusion **i.** under Paragraph **B.1., Exclusions Applicable To Business Liability Coverage** is replaced by the following:

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

**i. War**

"Bodily injury", "property damage", "personal injury", "advertising injury" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** Exclusion **h.** under Paragraph **B.2. Exclusions Applicable To Medical Expenses Coverage** does not apply. Medical Expenses due to war are now subject to Exclusion **g.** of Paragraph **B.2.** since "bodily injury" arising out of war is now excluded under Paragraph **B.1., Exclusions Applicable To Business Liability Coverage.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



**FARMERS**
**INSURANCE**

ₛ**2269**
**1st Edition**

# ILLINOIS MARIJUANA EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM
BUSINESSOWNERS POLICY

**A.** The Businessowners Special Property Coverage Form and **Section I - Property** of the Businessowners Coverage Form are amended as follows:

    **1.** The following is added to Paragraph **A.2. Property Not Covered:**

        **a.** "Marijuana".

    **2.** Coverage under this Policy does not apply to that part of Business Income loss or Extra Expense incurred due to a suspension of your "operations" which involve the design, cultivation, manufacture, distribution, sale, serving, furnishing, use or possession of "marijuana".

    **3.** Paragraphs **A.1.** and **A.2.** above do not apply to any "marijuana" that is not designed, manufactured, distributed, sold, served or furnished for bodily:

        **a.** Ingestion;

        **b.** Inhalation;

        **c.** Absorption; or

        **d.** Consumption.

**B.** The following exclusion is added to the Businessowners Liability Coverage Form and **Section II - Liability** of the Businessowners Coverage Form**:**

This insurance does not apply to:

    **1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

        **a.** The design, cultivation, manufacture, distribution, sale, serving, furnishing, use or possession of "marijuana";

        **b.** The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "marijuana"; or

    **2.** "Property damage" to "marijuana".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others.

However, this exclusion does not apply to:

    **a.** Any "marijuana" that is not designed, manufactured, distributed, sold, served or furnished for bodily:

        **(1)** Ingestion;

        **(2)** Inhalation;

        **(3)** Absorption; or

        **(4)** Consumption; or

    **b.** The legitimate use of prescription drugs by a person following the orders of a licensed physician.

**C.** For the purposes of this endorsement, the following definition is added:

"Marijuana":

**1.** Means:

Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC), Cannabidiol (CBD) or any other cannabinoid, regardless of whether any such cannabinoid is natural or synthetic.

**2.** Paragraph **C.1.** above includes, but is not limited to, any of the following containing such cannabinoid:

**a.** Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

**b.** Any compound, byproduct, extract, derivative, mixture or combination, such as, but not limited to:

**(1)** Resin, oil or wax;

**(2)** Hash or hemp; or

**(3)** Infused liquid or edible marijuana;

whether derived from any plant or part of any plant set forth in Paragraph **C.2.a.** above or not.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

Includes Copyright material of Insurance Services Office, Inc., with its permission

POLICY NUMBER:  **60548-58-54**                                          BUSINESSOWNERS

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESSOWNERS SPECIAL FORM COMPUTER COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

**SCHEDULE\***

| Electronic Data Processing Equipment | | LIMITS OF INSURANCE |
|---|---|---|
| **Prem.** | **Bldg.** | |
| **No.** | **No.** | |
| **001** | **001** | $  **10,000/OCCURRENCE** |
| | | $ |
| | | $ |

The Limit of Insurance for Electronic Media and Records is 25% of the Limit of Insurance shown for Electronic Data Processing Equipment unless a higher Limit of Insurance for Electronic Media and Records is shown below.

| Electronic Data Processing Media And Records | | LIMITS OF INSURANCE |
|---|---|---|
| **Prem.** | **Bldg.** | |
| **No.** | **No.** | |
| **001** | **001** | $  **2,500/OCCURRENCE** |
| | | $ |
| | | $ |

\*Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

The coverage provided by this endorsement is subject to the provisions applicable to the Businessowners Special Property Coverage Form attached to this policy, including the deductible provisions, except as otherwise provided within this endorsement.

The following provisions (**A.** through **H.** inclusive) apply only to the coverage provided by this endorsement:

**A.** Paragraph **A.1.b. Business Personal Property** is replaced by the following:

  **b. Business Personal Property**

  Covered Property as used in this endorsement includes the following types of property that you own that are used in your business; and property of others as defined below; that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition **E.6.d.(3)(b).**

**(1) Electronic Data Processing Equipment (Hardware)**

  As used in this endorsement, Electronic Data Processing Equipment includes:

  **(a)** Programmable electronic equipment that is used to store, retrieve and process data; and

  **(b)** Associated peripheral equipment that provides communication including input and output functions such as printing, or auxiliary functions such as data transmission;

  except as described in **(2)** below.

BP 04 34 01 97          Copyright, Insurance Services Office, Inc., 1997          Page 1 of 3          □

POLICY NUMBER:  **6 0 5 4 8 – 5 8 – 5 4**                                        BUSINESSOWNERS

(2) **Electronic Media And Records (Including Software)**

As used in this endorsement, Electronic Media and Records includes:

(a) Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

(b) Data stored on such media; and

(c) Programming records used for electronic data processing or electronically controlled equipment.

**B.** The following is added to Paragraph **A.2. Property Not Covered:**

g. Property held as samples, held for rental or sale or that you rent to others;

h. Property in storage away from the premises shown in the Declarations or in the Schedule, except as provided in the Coverage Extensions of this endorsement;

i. Electronic data processing equipment which is permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration; or

j. Accounts, bills, evidences of debt and valuable papers and records. However, such property is Covered Property in its "converted data" form.

**C.** Under **A.4. Limitations,** Paragraphs **a.(1)** and **(2)** do not apply.

**D.** Under **A.6.** Coverage Extensions in the Businessowners Special Property Coverage Form:

**1.** Under the Personal Property at Newly Acquired Premises Coverage Extension **6.a.,** insurance under this Extension for Covered Property will end when any of the following first occurs:

a. This policy expires;

b. 30 days expire after you acquire new premises or begin construction at the new premises;

c. Specific insurance for the Covered Property at the newly acquired premises is obtained; or

d. You report values to us.

We will charge you additional premium for values reported from the date you acquire the premises.

**2.** Coverage Extension **6.b. Personal Property Off Premises** applies to Covered Property:

(a) While such property is in the course of transit or is located at a premises you do not own, lease or operate for not more than 90 days.

(b) Including duplicate or back-up electronic media and records that are stored at a separate location which is at least 100 feet from the premises described in the Schedule or Declarations as applying to electronic media and records.

**3.** The following are added to **A.6. Coverage Extensions:**

e. **Mechanical Breakdown Of Electronic Data Processing Equipment**

We will pay for loss or damage to Covered Property due to mechanical breakdown if such loss or damage exceeds in any one occurrence the applicable deductible shown in the Declarations.

We will then pay the amount of loss or damage in excess of the deductible up to the applicable Limit of Insurance for the Covered Property.

This Coverage Extension is included within the Limit of Insurance applying to Electronic Data Processing Equipment at the described premises.

f. **Artificially Generated Electrical Current**

We will pay for loss or damage to Electronic Data Processing Equipment due to artificially generated electrical current if such loss or damage is caused by or results from:

(1) An occurrence that took place within 100 feet of the described premises; or

(2) Interruption of electric power supply, power surge, blackout or brownout if the cause of such occurrence took place within 100 feet of the described premises.

          Copyright, Insurance Services Office, Inc., 1997          BP 04 34 01 97          □

POLICY NUMBER:  6 0 5 4 8 - 5 8 - 5 4                                    BUSINESSOWNERS

If such loss or damage as specified above, exceeds in any one occurrence the applicable deductible shown in the Declarations, we will then pay the amount of loss or damage in excess of the deductible up to the applicable Limit of Insurance for the Equipment.

This Coverage Extension is included within the Limit of Insurance applying to Electronic Data Processing Equipment at the described Location.

The Electrical Apparatus Exclusion **B.2.a.** in the Businessowners Special Property Coverage Form does not apply to this Coverage Extension.

**E.** The following is added to Paragraph **B. Exclusions** in the Businessowners Special Property Coverage Form:

   **1.** The following exclusions do not apply to coverage provided under this endorsement:

   **B.1.e.** Power Failure, **B.2.c.** Smoke, **B.2.d.** Steam Apparatus, **B.2.i.** Collapse, **B.2.k.(3), (4)** and **(5)** Other Types Of Loss exclusions and **B.3.b.** Acts Or Decisions.

   **2.** Exclusion **B.2.k.(7)** is replaced by the following:

      **(a)** Dampness or dryness of atmosphere, or changes in or extremes of temperature, unless such conditions result from physical damage caused by a covered cause of loss to an air conditioning unit or system, including equipment and parts, which is part of, or used with the electronic data processing equipment.

      **(b)** Marring or scratching:

         But if an excluded cause of loss that is listed in **B.2.k.(1), (2), (6)** or **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**F.** **Additional Exclusions**

   The following exclusions apply in addition to the exclusions listed under **B. Exclusions** in the Businessowners Special Property Coverage Form.

   We will not pay for loss or damage caused by or resulting from any of the following:

   **1.** Human errors or omissions in processing, recording or storing information on electronic media and records and electronic data processing equipment.

      But we will pay for direct loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this endorsement.

   **2.** Electrical or magnetic injury, disturbance or erasure of electronic recordings, except as provided for under the Coverage Extensions of this endorsement.

      But we will pay for direct loss or damage caused by lightning.

   **3.** Failure, breakdown or malfunction of electronic media and records and electronic data processing equipment, including parts, while the media is being run through the equipment.

      But, we will pay for direct loss or damage caused by resulting fire or explosion if these causes of loss are covered by this endorsement.

   **4.** Installation, testing, repair or other similar service performed upon the electronic data processing media and records or electronic data processing equipment, including parts.

**G.** **Property Loss Conditions**

   Paragraph **d.(6)** of the **Loss Payment** Property Loss Condition does not apply to electronic media and records that are actually replaced or restored.

**H.** The following is added to **H. Property Definitions:**

   **7.** "Converted data" means information that is stored on electronic media, that is capable of being communicated, processed or interpreted by electronic data processing equipment.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

 **FARMERS** INSURANCE

**E3451**
**1st Edition**

## RETAIL/SERVICE PRIMARY PACKAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM BP 00 02

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**A.** The following coverages are added to **5. Additional Coverages** under **A. Coverage:**

**n. Arson Conviction Reward**

**(1)** We will pay an arson conviction reward to a person or persons (not to include the Named Insured or any person responsible in any way for the subject fire) providing information which leads to an arson conviction in connection with a fire loss or damage covered by this policy.

**(2)** The amount of the reward will be equal to the amount of the covered loss; however, in no event will the amount of the reward exceed $5,000 for any one fire occurrence.

**(3)** The reward applies per fire occurrence regardless of the number of persons providing information

No deductible applies to this Additional Coverage.

**o. Fire Extinguisher Recharge Expense**

We will pay up to $2,500 per occurrence for the necessary costs to recharge or replace (whichever is less) fire extinguishers owned by you that are discharged as a result of extinguishing a covered fire which occurs at the premises described in the Declarations.

No deductible applies to this **Additional Coverage.**

**B.** The following Extension is added to **A. Coverage, 6. Coverage Extensions:**

**g. Newly Acquired Or Constructed Property**

**(1)** You may extend the insurance that applies to Building(s) to apply to:

**(a)** Your new building(s) while being constructed on the described premises; and

**(b)** Building(s) you acquire at locations, other than at the described premises, intended for:

**(i)** Similar use as a building described in the Declarations;

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is the lesser of the amount of covered loss under the terms of the policy, or $250,000 for each covered building.

**(2)** Coverage under this Extension for each newly acquired or constructed building will end upon the first to occur of the following:

**(a)** This policy expires or is terminated;

**(b)** The thirtieth day after you acquire or begin to construct the building; or

**(c)** You request that the subject building be covered under the policy.

We will charge you an additional premium from the date construction begins or you acquire the property.

The deductible applicable to and shown in the Declarations for Building(s) applies to each loss under this Extension.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

Includes Copyrighted Material Insurance Services Office, Inc., with its permission.

E3451101  PAGE 1 OF 1

Case: 1:22-cv-00089 Document #: 1-2 Filed: 01/06/22 Page 104 of 157 PageID #:191

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

 **FARMERS** INSURANCE

E**6289**
**1st Edition**

Policy Number: 60548-58-54        Effective Date: 09/16/19

## BUSINESS INCOME AND EXTRA EXPENSE - 18 MONTHS

This endorsement modifies insurance provided under the following:

APARTMENT OWNERS PROPERTY COVERAGE FORM
BUSINESSOWNERS COVERAGE FORM
BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The provisions of the applicable Coverage Form apply unless modified by this endorsement.

**A.** The Businessowners Special Property Coverage Form **BP 00 02**, or Section I - Property of the Businessowners Coverage Form **BP 00 03** is amended as follows:

1. Item **A.5.f.(1) Business Income** is amended as follows:

   The maximum period for which we will pay for loss of Business Income that you sustain during the "period of restoration" is **18** consecutive months after the date of direct physical loss or damage.

2. Item **A.5.g.(2) Extra Expense**, is amended as follows:

   We will only pay for Extra Expense that occurs within **18** consecutive months after the date of direct physical loss or damage.

**B.** The Apartment Owners Property Coverage Form **E3424** is amended as follows:

1. Item **A.5.e.(1) Business Income** is amended as follows:

   The maximum period for which we will pay for loss of Business Income that you sustain during the "period of restoration" is **18** consecutive months after the date of direct physical loss or damage.

2. Item **A.5.f.(2) Extra Expense**, is amended as follows:

   We will only pay for Extra Expense that occurs within **18** consecutive months after the date of direct physical loss or damage.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

91-6289 1ST EDITION  12-07        E6289101  Page 1 of 1
E6289-ED1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.



# FARMERS
### INSURANCE

**J7138**
**1st Edition**

## BUSINESS INCOME AND EXTRA EXPENSE - PARTIAL SLOWDOWN COVERAGE

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS COVERAGE FORM**
**BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM**

**A.** Paragraph **A.5. Additional Coverages** in SECTION I - PROPERTY of the Businessowners Coverage Form is amended as follows:

Item **(3)** in Paragraphs **5.f. Business Income** and **5.g. Extra Expense** is replaced by the following:

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**B.** Section **A.5. Additional Coverages** of the Businessowners Special Property Coverage Form is amended as follows:

**1.** The following is added to Paragraphs **5.f. Business Income** and **5.g. Extra Expense**:

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**2.** The last sentence of Paragraph **5.f. Business Income** is replaced by the following:

**(4)** This Additional Coverage is not subject to the Limits of Insurance.

**3.** The last two sentences of Paragraph **5.g. Extra Expense** are replaced by the following:

**(4)** We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance.

**C.** Paragraph **B.4. Business Income And Extra Expense Exclusions** in SECTION I  PROPERTY of the Businessowners Coverage Form is amended as follows:

Sub-paragraph **b.** is replaced by the following:

**b.** With respect to this exclusion, suspension means:

**(1)** The partial slowdown or complete cessation of your business activities; or

**(2)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**D.** The following is added to Paragraph **B.4. Business Income And Extra Expense Exclusions** of the Businessowners Special Property Coverage Form:

With respect to this exclusion, suspension means:

**a.** The partial slowdown or complete cessation of your business activities; or

**b.** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



**j7182**
**1st Edition**

## DRONE AIRCRAFT COVERAGE

This endorsement modifies insurance provided under the:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

**A.** The following items are added to Paragraph **5. Additional Coverages** under Section **A. Coverage:**

  **1. Drones Direct Damage Coverage**

    **a.** We will pay for direct physical loss of or damage to drone aircraft that is used in your business caused by or resulting from a Covered Cause of Loss located anywhere in the coverage territory.

    **b.** The reference to aircraft in Paragraph **a.** under Section **A.2. Property Not Covered** does not apply to the extent that coverage is provided in this Additional Coverage.

    **c.** To the extent that coverage is provided in this Additional Coverage, Section **B. Exclusions** is amended as follows:

      **(1)** Exclusion **B.2.a.** Electrical Apparatus does not apply.

      **(2)** Exclusion **B.2.k.(5)** does not apply to drone aircraft while aloft.

      **(3)** Exclusion **B.2.k.(6)** Mechanical Breakdown does not apply. However, we will not pay for mechanical breakdown caused by or resulting from:

        **(a)** Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;

        **(b)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection; or

        **(c)** Damage to drone aircraft undergoing a pressure or electrical test.

      **(4)** We will not pay for loss or damage caused by or resulting from installation, testing, repair or other similar services performed upon drone aircraft, including its electronic equipment or components.

      **(5)** We will not pay for loss or damage to drone aircraft when such loss or damage occurs while drone aircraft is being used to convey merchandise or goods for delivery to others.

      **(6)** We will not pay for loss or damage to drone aircraft when such loss or damage is caused by or results from drone aircraft being used in any professional or organized racing or demolition contest or stunting activity. We will also not pay for loss or damage that occurs while drone aircraft is being prepared for such contest or activity.

    **d.** The most we will pay under this Additional Coverage in any one occurrence is $10,000, unless a higher limit is shown on the Declarations, but not more than $2,500 for any one item, unless a higher per item limit is shown on the Declarations. This Additional Coverage will not increase the Business Personal Property Limit of Insurance provided in this policy.

  **2. Drones Business Income and Extra Expense Coverage**

    **a.** We will pay for the actual loss of Business Income you sustain due to the suspension of your business activities requiring the use of drone aircraft. The suspension must be caused by direct physical damage to drone aircraft used in your business located anywhere in the coverage territory. The loss or damage must be caused by or result from a Covered Cause of Loss.

      **(1)** The coverage period for Business Income under this Additional Coverage:

        **(a)** Begins 72 hours after the time of direct physical loss or damage to drone aircraft used in your business caused by or resulting from any Covered Cause of Loss; and

        **(b)** Ends on the date when the drone aircraft should be repaired, rebuilt or replaced with reasonable speed and similar quality.

      **(2)** The definition of Business Income contained in Paragraph **A.5.f. Business Income** also applies to this Additional Coverage.

J7182-ED1  3-19
93-7182

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 1 of 2
j7182101

   **b.** We will pay necessary Extra Expense you incur during the period of restoration that you would not have incurred if there had been no direct physical loss or damage to drone aircraft used in your business located anywhere in the coverage territory.

      **(1)** The coverage period for Extra Expense under this Additional Coverage:

         **(a)** Begins immediately after the time of direct physical loss or damage to drone aircraft used in your business caused by or resulting from any Covered Cause of Loss; and

         **(b)** Ends on the date when the drone aircraft should be repaired, rebuilt or replaced with reasonable speed and similar quality.

      **(2)** The definition of Extra Expense contained in Paragraph **A.5.g. Extra Expense** also applies to this Additional Coverage.

   **c.** The most we will pay under this Additional Coverage is $10,000 unless a higher limit is shown on the Declarations.

**B. Definition**

For the purposes of this endorsement drone aircraft means unmanned aircraft and all associated support equipment, including its remote control station, communication and navigation equipment, necessary to operate the unmanned aircraft.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



W**1228**
ILLINOIS
**2nd Edition**

## ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

**A.** The BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM or **SECTION I - PROPERTY** of the BUSINESSOWNERS COVERAGE FORM is amended as follows:

**1.** The following exclusion is added to Paragraph **B.2. Exclusions**:

**a.** We will not pay for loss or damage arising out of any act committed:

(1) By or at the direction of any insured; and

(2) With the intent to cause a loss.

**b.** However, this exclusion will not apply to deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of the loss if:

(1) The loss arose out of a pattern of criminal domestic violence; and

(2) The perpetrator of the loss is criminally prosecuted for the act causing the loss.

**c.** If we pay a claim pursuant to Paragraph **B.2.b.**, our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**2.** The following is added to **E.4. Legal Action Against Us** Property Loss Condition:

The two year period for legal action against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part.

**B.** The BUSINESSOWNERS LIABILITY COVERAGE FORM or **SECTION II - LIABILITY** of the BUSINESSOWNERS COVERAGE FORM is amended as follows:

The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Illinois law.

**C.** The BUSINESSOWNERS COMMON POLICY CONDITIONS form, or **SECTION III - COMMON POLICY CONDITIONS** of THE BUSINESSOWNERS COVERAGE FORM is amended as follows:

**1.** Paragraph **A. Cancellation** is replaced by the following:

**A. Cancellation**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

**2.** If this policy has been in effect for 60 days or less, except as provided in Paragraphs **8.** and **9.** below, we may cancel this policy by mailing written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** If this policy has been in effect for more than 60 days, except as provided in Paragraphs **8.** and **9.** below, we may cancel this policy only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** The policy was obtained through a material misrepresentation;

**c.** You have violated any of the terms and conditions of the policy;

**d.** The risk originally accepted has measurably increased;

    **e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured; or

    **f.** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

    If we cancel this policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 60 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

**4.** We will mail our notice to you, any mortgagee or lienholder known to us, and to the agent or broker.

**5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**6.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**7.** Our notice of cancellation will state the reason for cancellation.

**8. Real Property Other Than Residential Properties Occupied By Four Families Or Less**

    The following applies only if this policy covers real property other than residential property occupied by four families or less:

    If any one or more of the following conditions exists at any building that is Covered Property in this policy, we may cancel this policy by mailing to you written notice of cancellation, by both certified and regular mail, if:

    **a.** After a fire loss, permanent repairs to the building have not started within 60 days of satisfactory adjustment of loss, unless the delay is due to a labor dispute or weather conditions.

    **b.** The building has been unoccupied 60 or more consecutive days. This does not apply to:

      **(1)** Seasonal unoccupancy; or

      **(2)** Buildings under repair, construction or reconstruction, if properly secured against unauthorized entry.

    **c.** The building has:

      **(1)** An outstanding order to vacate;

      **(2)** An outstanding demolition order; or

      **(3)** Been declared unsafe in accordance with the law.

    **d.** Heat, water, sewer service or public lighting have not been connected to the building for 30 consecutive days or more.

    The policy will terminate 10 days following receipt of the written notice by the named insured(s).

**2.** Paragraph **H.1. Other Insurance** is replaced by the following:

**H. Other Insurance**

**1.** You may have other insurance subject to the same plan, terms, conditions, and provisions as the insurance under this Coverage Form. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Form bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in **1.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of the BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM or **SECTION I - PROPERTY** of the BUSINESSOWNERS COVERAGE FORM.

4. The following paragraphs are added to the Common Policy Conditions:

**M. Nonrenewal**

1. If we decide not to renew or continue this policy, we will mail you, your agent or broker, and any mortgagee or lien holder known to us written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

   If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

2. The following provision applies only if this policy covers residential properties occupied by four families or less:

   **a.** If this policy has been issued to you and in effect with us for five or more years, we may not fail to renew this policy unless:

   (1) The policy was obtained by misrepresentation or fraud;

   (2) The risk originally accepted has measurably increased; or

   (3) You received 60 days' notice of our intent not to renew as provided in **1.** above.

   **b.** If this policy has been issued to you and in effect with us for less than five years, we may not fail to renew this policy unless you received 30 days' notice as provided in **1.** above.

**N. Mailing Of Notices**

We will mail cancellation and nonrenewal notices to the last addresses known to us. Proof of mailing will be sufficient proof of notice.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

# BUSINESSOWNERS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we","us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **C** - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F** - Liability And Medical Expenses Definitions.

**A. Coverages**

  **1. Business Liability**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Section **D** - Liability And Medical Expenses Limits Of Insurance; and

      **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension - Supplementary Payments.

    **b.** This insurance applies:

      **(1)** To "bodily injury" and "property damage" only if:

        **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        **(b)** The "bodily injury" or "property damage" occurs during the policy period.

      **(2)** To:

        **(a)** "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

        **(b)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

      but only if the offense was committed in the "coverage territory" during the policy period.

    **c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

    **d. Coverage Extension - Supplementary Payments**

    In addition to the Limit of Insurance we will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

      **(1)** All expenses we incur.

      **(2)** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

      **(3)** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

 Copyright, Insurance Services Office, Inc., 1997 ☐

**(4)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the insured in the "suit".

**(6)** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**(7)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee:

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **B.1.b.(2)** of Exclusions, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above are no longer met.

Copyright, Insurance Services Office, Inc., 1997

**2. Medical Expenses**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the Limit of Insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**B. Exclusions**

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily Injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

    **(a)** Employment by the insured; or

    **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

    **(a)** Whether the insured may be liable as an employer or in any other capacity; and

    **(b)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

    **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

        **(i)** If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

        **(ii)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph **(d)(i)** does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

 Copyright, Insurance Services Office, Inc., 1997

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the following equipment:

**(a)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(b)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Professional Services**

"Bodily injury", "property damage", "personal injury" or "advertising injury" due to rendering or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Supervisory, inspection or engineering services;

**(4)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(5)** Any health or therapeutic service treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8) Body piercing services; and

(9) Services in the practice of pharmacy; but this exclusion does not apply to an insured whose operations include those of a retail druggist or drugstore.

**k. Damage To Property**

"Property damage" to:

(1) Property you own, rent or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products - completed operations hazard".

**l. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products - completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Personal Or Advertising Injury**

"Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(3)** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

**(5)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**(6)** With respect to any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of pollutants; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**q. Advertising Injury**

"Advertising injury" arising out of:

**(1)** Breach of contract, other than misappropriation of advertising ideas under an implied contract;

**(2)** The failure of goods, products or services to conform with advertised quality or performance;

**(3)** The wrong description of the price of goods, products or services; or

**(4)** An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

Exclusions **c., d., e., f., g., h., i., k., l., m., n.** and **o.** do not apply to damage by fire or explosion to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Limit of Insurance applies to this coverage as described in Section **D.,** Limits of Insurance.

**2. Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products - completed operations hazard".

**g.** Excluded under Business Liability Coverage.

**h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**3. Applicable To Both Business Liability Coverage And Medical Expenses Coverage - Nuclear Energy Liability Exclusion**

This insurance does not apply:

**a.** Under Business Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

---

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

   **(a)** Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

   **(b)** The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**b.** Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**c.** Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

  **(1)** The "nuclear material":

   **(a)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

   **(b)** Has been discharged or dispersed therefrom;

  **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

  **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

"Byproduct material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for:

  **(1)** Separating the isotopes of uranium or plutonium;

  **(2)** Processing or utilizing "spent fuel"; or

  **(3)** Handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear material" means "source material", "special nuclear material" or "byproduct material";

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

"Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material:

**(a)** Containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

**(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(a)** and **(b)** of the definition of "nuclear facility".

**C. Who Is An Insured**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

**(1)** "Bodily injury" or "personal injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages of the injury described in Paragraphs **(1)(a)** or **(1)(b)**; or

**(d)** Arising out of his or her providing or failing to provide professional health care services. However, if you have "employees" who are pharmacists in your retail druggist or drugstore operation, they are insured with respect to their providing or failing to provide professional health care services; or

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

 Copyright, Insurance Services Office, Inc., 1997

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability And Medical Expenses Limits Of Insurance**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The most we will pay for the sum of all damages because of all:

**a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

**b.** "Personal injury" and "advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

**3.** The most we will pay under Business Liability Coverage for damages because of "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire or explosion is the Fire Legal Liability limit shown in the Declarations.

**4. Aggregate Limits**

The most we will pay for:

**a.** Injury or damage under the "products - completed operations hazard" arising from all "occurrences" during the policy period is the Liability and Medical Expenses limit; and

**b.** All other injury or damage, including medical expenses, arising from all "occurrences" during the policy period is twice the Liability and Medical Expenses limit. This limitation does not apply to "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of fire or explosion.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Liability And Medical Expenses General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

Copyright, Insurance Services Office, Inc., 1997
**BP 00 06 01 97** ☐

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation, or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Financial Responsibility Laws**

**a.** When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the policy for "bodily injury" liability and "property damage" liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by that law.

**b.** With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverage required by any motor vehicle law. We will provide the required limits for those coverages.

**4. Legal Action Against Us**

No person or organization has a right under this policy:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**5. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**F. Liability And Medical Expenses Definitions**

**1.** "Advertising injury" means injury arising out of one or more of the following offenses:

**a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**b.** Oral or written publication of material that violates a person's right of privacy;

**c.** Misappropriation of advertising ideas or style of doing business; or

**d.** Infringement of copyright, title or slogan.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

**c.** All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in **a.** above; or

(b) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

(1) The repair, replacement, adjustment or removal of "your product" or "your work"; or

(2) Your fulfilling the terms of the contract or agreement.

**8.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection or engineering services.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    **e.** Oral or written publication of material that violates a person's right of privacy.

**14.** "Products - completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** Products that are still in your physical possession; or

        **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)** When all of the work called for in your contract has been completed.

            **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

    **b.** Does not include "bodily injury" or "property damage" arising out of:

        **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

        **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**15.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**16.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**17.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**18.** "Your product" means:

    **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(1)** You;

        **(2)** Others trading under your name; or

        **(3)** A person or organization whose business or assets you have acquired; and

    **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    "Your product" includes:

    **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **b.** The providing of or failure to provide warnings or instructions.

    "Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

 Copyright, Insurance Services Office, Inc., 1997 □

**19.** "Your work" means:

   **a.** Work or operations performed by you or on your behalf; and

   **b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

   **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   **b.** The providing of or failure to provide warnings or instructions.

POLICY NUMBER:  60548-58-54                                    BUSINESSOWNERS

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESS LIABILITY COVERAGE -
# TENANTS LIABILITY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

### SCHEDULE*

**Premises: ALL DESCRIBED LOCATIONS**

**Tenants Liability Limit Of Insurance (Per Occurrence):**

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

With respect to the coverage provided under this endorsement, the Businessowners Liability Coverage Form is amended as follows:

**A.** The final paragraph of **B.1. Exclusions - Applicable To Business Liability Coverage** of the Businessowners Liability Coverage Form is deleted and replaced by the following:

With respect to the premises shown in the Schedule of this endorsement which are rented to you or temporarily occupied by you with the permission of the owner, Exclusions **c., d., e., g., h., k., l., m., n.** and **o.** do not apply to "property damage".

**B.** Paragraph **D.2. Liability And Medical Expenses Limits Of Insurance** is deleted and replaced by the following:

The most we will pay under this endorsement for the sum of all damages because of all "property damage" arising out of any one "occurrence" to premises rented to you or temporarily occupied by you with the permission of the owner is the Tenants Liability Limit of Insurance shown in the Schedule.

**C.** With respect to the premises shown in the Schedule of this endorsement, Paragraph **D.3.** and Paragraph **D.4.b.** are deleted.

                Copyright, Insurance Services Office, Inc., 1997                  □

**S2274**
Illinois
4th Edition

This endorsement changes the policy. Please Read it carefully.

# MOLD AND MICROORGANISM EXCLUSION

This endorsement modifies insurance provided under the following

BUSINESSO WNERS COVERAGE FORM
BUSINESSO WNERS LIABILITY COVERAGE FORM
COMMERCIAL GENERAL L IABILITY COVERAGE PART
APARTMEN T O WNERS L IABILITY COVERAGE FORM
CONDOMINIUM LIABILITY COVERAGE FORM
DIRECTORS AND OFFICERS LIABILITY COVERAGE FORM

The following provisions apply to your policy.

**A** . Definition:

    **1.**  "Mold" means any type or form of fungus including b ut not limited to mildew, mycotox ins, spores, scents or by -products produced or released by "mold".

    **2.**  "Microorganism" means any organism (an imal or plant) of microscopic size, including but not limited to any type or form of bacteria, bacterium, germ, intestinal flora, microbe, pathogen or virus or any part or by-product of any of the above.

**B** . This insurance does not apply to any:

    **1.**  "Bodily injury" Property Damage" or "personal and advertising injury" arising out of, resulting from, caused or contributed to, whether directly or ind irectly by "mold" or "microorganism" and would not have occurred in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of , contac t with, exposure to, ex istence of or presence of any "mold" or "microorganism";

    **2.**  Any loss, cost or expense arising out of the abating, testing for, mon itoring, cleaning up, removing, containing, treating, detoxifying, neut ralizing, remediating or disposing of, or in any way responding to or assessing the effect of "mold" or "microorganism", by any insured or by any other person or entity;

    **3.**  Any supervision, instruction, recommendation, warning or adv ice given or which should have been given in connection with 1 or 2 above; and

    **4.**  Any obligation to share with or repay someone else who must pay damages because of such injury or damage.

However th is exclusion does not apply to any "mold" or "microorganism" that is on, or contained in, a good or product intended for consumption.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



**E3342**
**2nd Edition**

## PERSONAL AND ADVERTISING INJURY COVERAGE
## AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS LIABILITY COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Businessowners Liability Coverage Form apply unless modified by the endorsement.

**A.** Paragraph **1. Business Liability** is amended as follows:

  **a.** Subparagraph **1.a.** is deleted and replaced with the following:

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

  **b.** Subparagraphs **1.b. (2)(a)** and **(b)** are deleted and replaced with the following:

   **(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

**B.** The Subparagraph below Paragraph **B.1.j** of **Exclusions** is deleted and replaced with the following:

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

**C.** Paragraphs **B.1.p** and **q.** of **Exclusions** are deleted and replaced with the following:

  **p.** **Personal And Advertising Injury**

  "Personal and advertising injury":

   **(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

   **(2)** Arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity;

   **(3)** Arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period, whether or not any publication made prior to the inception of the policy:

    **(a)** Violated or infringed upon another's rights; or

    **(b)** Was or is actionable;

   **(4)** Arising out of a criminal act committed by or at the direction of the insured;

   **(5)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

   **(6)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

   **(7)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

   **(8)** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

   **(9)** Committed by an insured whose business is:

    **(a)** Advertising, broadcasting, publishing or telecasting;

    **(b)** Designing or determining content of web sites for others; or

**(c)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **13. a.**, **b.** and **c.** of "personal and advertising injury" under **F. Liability And Medical Expenses Definitions**.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting;

**(10)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time;

**(11)** With respect to any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, pollutants;

**(12)** Arising out of an electronic chatroom or bulletin board, blog or any other virtual forum the insured hosts, owns or over which the insured exercises control;

**(13)** Arising out of the infringement of copyright, patent, trademark, trade dress, slogan, service mark, trade secret or other intellectual property rights. However this exclusion does not apply if the sole and exclusive basis for the claim is infringement, in your "advertisement", of:

**(a)** Copyright;

**(b)** Trade dress; or

**(c)** Slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity;

**(14)** Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**D.** Subparagraph **C.2.a.(1)** of **Who Is An Insured** is deleted and replaced with:

**(1)** "Bodily injury" or "personal and advertising injury":

**E.** Subparagraph **D.2.b.** of **Liability And Medical Expenses Limits Of Insurance** is deleted and replaced with:

**b.** "Personal and advertising injury" sustained by any one person or organization;

**F.** Definitions **1.** "Advertising Injury", **13.** "Personal Injury" and **16.** "Suit" in Section **F. Liability And Medical Expenses Definitions** is amended as follows:

**1.** Subparagraph **1.** is deleted and replaced with:

**1.** "Advertisement" means widespread dissemination of information or images to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. "Advertisement" includes:

**a.** Material placed on the Internet or on similar electronic means of communication about your goods, products or services for the purpose of attracting customers or supporters; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

However, "advertisement" does not include any:

**a.** Design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products; or

    **b.** Display of goods, products or services at your physical place of business or at any other physical location such as in showrooms or at trade shows.

**2.** Subparagraph **13.** is deleted and replaced with:

**13.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

Damages because of "personal and advertising injury" do not include disgorgement, restitution or any other similar monetary amount based, in whole or in part, on an insured's unlawful gain or profit, alleged or otherwise.

**3.** Subparagraph **16.** is deleted and replaced with:

**16.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



**j7157**

**1st Edition**

## DAMAGE TO PROPERTY EXCLUSION
## REVISED

This endorsement modifies insurance provided under the:

BUSINESSOWNERS LIABILITY COVERAGE FORM

**A.** Paragraph **B.1.k.** of **Exclusions** is replaced by the following:

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

**Damage To Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Paragraph **D. Liability And Medical Expenses Limits Of Insurance**.
Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products completed operations hazard".

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



**ȷ7136**
**1st Edition**

## POLLUTION EXCLUSION - EXPANDED EXCEPTION

This endorsement modifies insurance provided under the:

APARTMENT OWNERS LIABILITY COVERAGE FORM
BUSINESSOWNERS COVERAGE FORM
CONDOMINIUM LIABILITY COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** Section **B. Exclusions** is amended as follows:

**1.** Subparagraph **(1)(a)** of **f. Pollution** is deleted and replaced with the following:

   **a.** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

     **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

     **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

     **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire;

**2.** The second paragraph following paragraph **f.(1) Pollution** is deleted and replaced with the following:

   Subparagraph **(d)(i)** does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

 **FARMERS** INSURANCE

J6316
**1st Edition**

## EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
APARTMENT OWNERS PROPERTY COVERAGE FORM
CONDOMINIUM PROPERTY COVERAGE FORM

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under **Section A - Coverage** in all applicable coverage forms and endorsements that comprise this policy, except as provided in Paragraph **C.** This includes but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**C.** However, the exclusion in Paragraph **B.** does not apply to the following:

　**1.** Loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage may be addressed in a separate exclusion in this policy; or

　**2.** Coverage otherwise provided under Food Borne Illness Business Interruption Coverage **E3032** (if that endorsement is attached to this policy); or

　**3.** Coverage otherwise provided under the Restaurant Food Contamination Shutdown Coverage **E3419** (if that endorsement is attached to this policy).

**D.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**E.** If the following provisions are part of this policy, they are hereby amended to remove reference to bacteria:

　**1.** Exclusion of "Fungi", Wet Rot, Dry Rot And Bacteria; and

　**2.** Additional Coverage - Limited Coverage For "Fungi", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**F.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this policy.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

**BUSINESSOWNERS**
**BP 04 17 01 96**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

The following exclusion is added to Section **B. EXCLUSIONS** of the Businessowners Liability Coverage Form:

This insurance does not apply to:

1. "Bodily injury" or "personal injury" to:

    a. A person arising out of any:

    (1) Refusal to employ that person;

    (2) Termination of that person's employment; or

    (3) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    b. The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal injury" to that person at whom any of the employment-related practices described in paragraphs **(1), (2)** or **(3)** above is directed.

This exclusion applies:

a. Whether the insured may be liable as an employer or in any other capacity; and

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 Copyright, Insurance Services Office, Inc., 1996 □

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



**E6036**
1st Edition

## LEAD POISONING AND CONTAMINATION EXCLUSION

When this endorsement is attached to your policy the following provisions apply to the Property and Liability Coverages of your policy:

1.  This insurance does not apply to any **bodily injury**, **personal injury** or **property damage** or property loss arising out of, resulting from, caused by or contributed to by lead, or any hazardous properties of lead, including but not limited to Lead Poisoning and Lead Contamination and the threat or fear of Lead Poisoning or Lead Contamination.

    Lead Poisoning includes, but is not limited to, actual **bodily injury** or **personal injury** resulting from exposure or ingestation, of any nature, cause or duration, to or of lead, or products, objects or substances comprised of or containing lead.

    Lead Contamination includes, but is not limited to, the presence of lead in paint, soil, plants, animals, water pipes, buildings or other structures.

    For purposes of this exclusion, the definition of **bodily injury** is amended to include mental injury, anguish, distress or fear of Lead Poisoning or Lead Contamination.

    For purposes of this exclusion, the definitions of **property damage** and property loss are amended to include actual or threatened loss of property value, loss of equity, loss of use, loss of rents or other economic injury caused by Lead Poisoning or Lead Contamination .

2.  We will not pay for any loss, cost or expense arising out of, resulting from, caused by or contributed to by:

    a.  The testing or monitoring for, or, abatement, mitigation, neutralization, removal or disposal of lead, lead compounds or materials containing lead;

    b.  The testing or monitoring for or treatment of Lead Poisoning or Lead Contamination in humans or animals.

    c.  Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with Lead Poisoning or Lead Contamination;

    d.  Any obligation to share damages with or repay someone else who must pay damages in connection with Lead Poisoning or Lead Contamination.

This endorsement is part of your policy.  It supersedes and controls anything to the contrary.  It is otherwise subject to all the terms of the policy.

Case: 1:22-cv-00089 Document #: 1-2 Filed: 01/06/22 Page 136 of 157 PageID #:223

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**


**FARMERS** INSURANCE

J**6828**
**1st Edition**

## LIMITED COVERAGE FOR FUNGI, WET ROT, DRY ROT AND BACTERIA

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
BUSINESSOWNERS COVERAGE FORM

**A.** The following is added under **B.1. Exclusions** as item **h.** in the BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM and item **i.** in Section I - PROPERTY of the BUSINESSOWNERS COVERAGE FORM:

**"Fungi", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria.

But if "fungi", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

(1) When "fungi", wet or dry rot or bacteria results from fire or lightning; or

(2) To the extent that coverage is provided in the Additional Coverage - Limited Coverage For "Fungi", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

**B.** Paragraph **B.2.k.(2)** in the BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM and paragraph **B.2.l.(2)** in Section I - PROPERTY of the BUSINESSOWNERS COVERAGE FORM is replaced by the following:

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

**C.** The following is added under **B.2.k.** in the BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM and paragraph **B.2.l.** in Section I - PROPERTY of the BUSINESSOWNERS COVERAGE FORM:

(8) Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**D.** Paragraph **A.5.l.(5)** in the BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM and paragraph **A.5.l.(5)** in Section I - PROPERTY of the BUSINESSOWNERS COVERAGE FORM is replaced by the following:

(5) Under this Additional Coverage, we will not pay any costs associated with:

(a) The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria; or

(b) The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

**E.** The following is added under Section **A.5. Additional Coverages** as item **n.** in the BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM and item **p.** in Section I - PROPERTY of the BUSINESSOWNERS COVERAGE FORM:

93-6828 1ST EDITION 3-10
J6828-ED1

Includes Copyrighted Material of Insurance Services Office, Inc. with its permission.

J6828I01 Page 1 of 2

**Limited Coverage For "Fungi", Wet Rot, Dry Rot And Bacteria**

If "fungi", wet or dry rot or bacteria results from a "specified cause of loss" (other than fire or lightning) that occurs during the policy period, and if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

(1) We will pay for loss or damage by "fungi", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

    (a) Direct physical loss or damage to Covered Property caused by "fungi", wet or dry rot or bacteria, including the cost of removal of the "fungi", wet or dry rot or bacteria;

    (b) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet or dry rot or bacteria; and

    (c) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided it is reasonable to believe that "fungi", wet or dry rot or bacteria are present.

(2) The most we will pay under this Limited Coverage for the sum of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in each 12 month period (beginning with the effective date of this policy), is $15,000. The $15,000 aggregate limit is subject to and not in addition to the applicable Limit of Insurance on the affected property and is applied regardless of the number of premises involved in such occurrence(s).

(3) We will not pay more than the total of $15,000 under this Limited Coverage even if the "fungi", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

(4) Payments under this Limited Coverage are subject to and not in addition to the applicable Limit of Insurance on any Covered Property.

(5) If there is covered loss or damage to Covered Property, not caused by "fungi", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

(6) The terms of this Limited Coverage do not increase or reduce the coverage provided under the Additional Coverages **5.d. Collapse** or **5.e. Water Damage, Other Liquids, Powder or Molten Material Damage**.

(7) This Limited Coverage applies if a Limit of Insurance is shown in the Declarations for Building or Personal Property.

(8) The following applies only if Business Income and Extra Expense coverage applies to the described premises and only if the suspension of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense coverage.

    (a) If the loss which resulted in "fungi", wet or dry rot or bacteria does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet or dry rot or bacteria, we will pay for the actual loss of business income and extra expense you sustain. However, we will only pay for loss of business income and extra expense sustained in a period of not more than 30 days. The days need not be consecutive.

    (b) If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet or dry rot or bacteria, but remediation of "fungi", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for the actual loss of business income and extra expense you sustain during the delay (regardless of when such a delay occurs during the "period of restoration") but such coverage is limited to 30 days. The days need not be consecutive.

**G.** The following is added under Section **H. Property Definitions** as item **8.** in the BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM and item **14.** in Section I - PROPERTY of the BUSINESSOWNERS COVERAGE FORM:

"Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



**J6849**
**2nd Edition**

# DEDUCTIBLE PROVISIONS

This endorsement modifies insurance provided under the following:

APARTMENT OWNERS PROPERTY COVERAGE FORM
BUSINESSOWNERS COVERAGE FORM
BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
CONDOMINIUM PROPERTY COVERAGE FORM

The Deductible provisions in the applicable coverage form are amended as follows.

Section **D. Deductibles** in the applicable Property Coverage Form, and Paragraph **D. Deductibles** in **SECTION I - PROPERTY** of the Businessowners Coverage Form is deleted and replaced by the following:

## D. DEDUCTIBLES

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

2. If more than one Deductible applies in any one occurrence we will apply each Deductible separately per location. But the total of all Deductible amounts applied in that occurrence will not exceed the highest applicable Deductible per location.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

BUSINESSOWNERS
BP 00 09 01 97

# BUSINESSOWNERS COMMON POLICY CONDITIONS

All coverages of this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 5 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy.

      **(1)** The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

         **(a)** Seasonal unoccupancy; or

         **(b)** Buildings in the course of construction, renovation or addition.

         Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

      **(2)** After damage by a covered cause of loss, permanent repairs to the building:

         **(a)** Have not started, and

         **(b)** Have not been contracted for,

         within 30 days of initial payment of loss.

      **(3)** The building has:

         **(a)** An outstanding order to vacate;

         **(b)** An outstanding demolition order; or

         **(c)** Been declared unsafe by governmental authority.

      **(4)** Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

      **(5)** Failure to:

         **(a)** Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

         **(b)** Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   **b.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   **c.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

 Copyright, Insurance Services Office, Inc., 1997 ☐

## C. Concealment, Misrepresentation Or Fraud

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This policy;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this policy.

## D. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## E. Inspections And Surveys

We have the right but are not obligated to:

**1.** Make inspections and surveys at any time;

**2.** Give you reports on the conditions we find; and

**3.** Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**1.** Are safe or healthful; or

**2.** Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## F. Insurance Under Two Or More Coverages

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## G. Liberalization

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

## H. Other Insurance

**1.** If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**2.** Business Liability Coverage is excess over any other insurance that insures for direct physical loss or damage.

**3.** When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers.

## I. Premiums

**1.** The first Named Insured shown in the Declarations:

   **a.** Is responsible for the payment of all premiums; and

   **b.** Will be the payee for any return premiums we pay.

**2.** The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**3.** With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

   **a.** Paid to us prior to the anniversary date; and

Copyright, Insurance Services Office, Inc., 1997
**BP 00 09 01 97**  ☐

**b.** Determined in accordance with Paragraph **2.** above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

**4.** Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**J. Premium Audit**

**1.** This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

**2.** Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**3.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**K. Transfer Of Rights Of Recovery Against Others To Us**

**1.** Applicable to Businessowners Property Coverage:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**a.** Prior to a loss to your Covered Property.

**b.** After a loss to your Covered Property only if, at time of loss, that party is one of the following:

**(1)** Someone insured by this insurance;

**(2)** A business firm:

**(a)** Owned or controlled by you; or

**(b)** That owns or controls you; or

**(3)** Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

**2.** Applicable to Businessowners Liability Coverage:

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**L. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1997 □

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

 **FARMERS** INSURANCE

J**6740**

**1st Edition**

## TWO OR MORE COVERAGE FORMS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

**1.** The following paragraph is added to the BUSINESSOWNERS COMMON POLICY CONDITIONS of the BP 00 09 and SECTION III - COMMON POLICY CONDITIONS of the BP 00 03 and supersedes any provision to the contrary:

**A. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued by us or any company affiliated with us provide coverage to anyone who qualifies as an insured under the policies and apply to the same accident, claim, damage, loss, "occurrence", offense, or "suit", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over the Coverage Form.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

93-6740  1ST EDITION  4-09
J6740-ED1

Includes Copyrighted Material of Insurance Services Office, Inc with its permission.

J6740101 PAGE 1 OF 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



**FARMERS**
**INSURANCE**

**J7115**
**1st Edition**

## EXCLUSION - ASBESTOS, SILICA
## OR SILICA-RELATED DUST

This endorsement modifies insurance provided under the:

**BUSINESSOWNERS COVERAGE FORM**
**BUSINESSOWNERS LIABILITY COVERAGE FORM**

**A.** The following exclusion is added to Section **B. Exclusions** of the **Businessowners Liability Coverage Form** or to **Section II - Liability** of the **Businessowners Coverage Form**:

   **1. Applicable To Business Liability Coverage**

   This insurance does not apply to:

   **Asbestos, Silica Or Silica-Related Dust**

   **(1)** "Bodily injury", "property damage", or "personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, asbestos, "silica" or "silica-related dust";

   **(2)** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, asbestos, "silica" or "silica-related dust", by any insured or by any other person or entity;

   **(3)** Any loss, cost or expense arising, in whole or in part, out of any supervision, instructions, recommendations, warnings or advice given, or which should have been given, in connection with asbestos, "silica" or "silica-related dust"; or

   **(4)** Any loss, cost or expense arising, in whole or in part, out of any obligation to share damages with or repay someone else who must pay damages in connection with asbestos, "silica" or "silica-related dust".

**B.** For the purposes of this endorsement, Section **F. - Liability And Medical Expenses Definitions** is amended as follows:

   **1.** The following definitions are added:

   **a.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

   **b.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

   **2.** The following definitions are amended:

   **a.** "Bodily injury" is amended to include mental injury, anguish, distress or fear of cancer or other injury, illness or disease caused by or related to asbestos, "silica" or "silica-related dust", or exposure to asbestos, "silica" or "silica-related dust".

   **b.** "Property damage" is amended to include actual or threatened loss of property value, loss of equity, loss of use, loss of rents or other economic injury caused by asbestos, "silica" or "silica-related dust" or exposure to asbestos, "silica" or "silica-related dust".

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.



Dear Valued Customer,

Have the growth of your business and rising labor costs reduced the accuracy of the payroll or revenue shown on your policy? Have increased costs and inflationary trends reduced the protection provided by your policy? Building and Business Personal Property insurance limits, once adequate, may no longer meet today's repair or replacement costs.

To help compensate for these inflationary trends, the limits of insurance for Building and/or Business Personal Property coverages have been increased by a modest percentage. To keep your policy current with rising labor costs and normal business growth, the payroll and/or revenue have also been increased by a modest percentage.

This renewal offer includes the adjusted limits of insurance, payroll, revenue, and premium for your policy. The adjustments are relatively small, and they're based on estimated increases in the past year's construction and repair costs, as well as other inflationary factors, such as rising labor costs and normal business growth.

These increases do not guarantee adequate coverage for any loss; they are based on estimates. It is possible, for example, that updates or improvements to your property or increased sales might cause your individual needs for coverage to be greater than the amount provided by these adjustments. If you have not reviewed your policy recently, the effects of inflationary changes over time create the likelihood that the increases we made are less than the increases you need for optimal coverage.

These changes are made to better serve your insurance needs, and we encourage you to contact your Farmers® agent, who will be pleased to help you with a comprehensive review of your policy.

Acceptance of these changes does not waive the provisions of the coinsurance clause or any other policy clause.

Thank you for choosing Farmers. We appreciate your business.

**Notice to Policyholders
Regarding Mold and Microorganism
Exclusions and Limitations**



Dear Valued Customer:

The following is a summary of the exclusions and limitations for loss resulting from mold or microorganisms contained in your policy.

No coverage is provided by this summary nor can it be construed to replace any provisions of your policy. Not all coverage forms or endorsements referenced in this notice are included in a particular policy. **You should read your policy and review your Declaration Page for complete information on the coverages contained in your policy.** If there are any differences between the policy and this summary, the provisions of the policy shall prevail.

**Liability**
**Commercial General Liability Coverage Form**
**Businessowners Liability Coverage Form**
**Apartment Owners Liability Coverage Form**
**Condominium Liability Coverage Form**
**Directors and Officers Liability Coverage**
**Commercial Umbrella Policy**
**Businessowners Coverage Form**

Endorsements (**S2274 or E4011**) amend the Liability Coverage of your policy. These endorsements exclude coverage for Bodily Injury, Property Damage or Personal and Advertising Injury arising out of, resulting from, caused by or contributed by, whether directly or indirectly, mold or microorganisms.

The exclusion of coverage will also apply to costs or obligations for supervision, instruction, recommendation, warning or advice that was given or should have been given in connection with mold or microorganisms. It further excludes coverage for any obligation to reimburse, share or repay any third party held liable for any damages or injury due to mold or microorganisms.

**Property**
**Businessowners Coverage Form**
**Businessowners Property Coverage Form**
**Building and Personal Property Coverage Form**
**Apartment Owners Property Coverage Form**
**Condominium Property Coverage Form**

The property coverage forms, including but not limited to those listed above, exclude any coverage for mold or microorganisms as a CAUSE OF LOSS. However, damage resulting from mold or microorganisms is covered if it results from an otherwise covered CAUSE OF LOSS such as fire or lightning.

This summary is provided for informational purposes only. Your agent will be available to answer any questions you may have.

**MID-CENTURY INSURANCE COMPANY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



**FARMERS**
**INSURANCE**

j**7122**
**1st Edition**

## LOSS PAYMENT CONDITION -
## PROFIT, OVERHEAD, AND INCREASED FEES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM
BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
APARTMENT OWNERS PROPERTY COVERAGE FORM
CONDOMINIUM PROPERTY COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the applicable Coverage Form apply unless modified by this endorsement.

Paragraph **6.d.** of Sub-section **E. Property Loss Conditions** of Section **I - PROPERTY** of the Businessowners Coverage Form, Paragraph **6.d.** of Section **E. Property Loss Conditions** of the Businessowners Special Property Coverage Form and the Apartment Owners Property Coverage Form, and Paragraph **5.d.** of Section **E. Property Loss Conditions** of Condominium Property Coverage Form is amended as follows:

Sub-paragraph **(1)** is amended to add the following:

**(f)** We will not pay for the increased fee, charge or cost attributable to a general contractor's profit and overhead or other similar fees or charges, unless you have incurred and paid for them and they are reasonable.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

INTERLINE
IL 00 03 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    BUSINESSOWNERS POLICY
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL CRIME COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    PROFESSIONAL LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



E4288
1st Edition

# EXCLUSION
# TRAVEL AGENTS AND RELATED OPERATIONS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS LIABILITY COVERAGE FORM

The following exclusion is added to Paragraph **B.1. Exclusions** applicable to Business Liability Coverage:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any act, error or omission for which the insured may be held liable:

1. Because of;
    a. Any obligation assumed by any insured, or by any person or organization for whose acts the insured is legally liable;
    b. The failure to discharge or the improper discharge of any obligation or duty, contractual or otherwise, with respect to any contract or agreement related to travel services; or
    c. The failure to comply with or violation of any statutes and regulations; including but not limited to, orders issued by the Office of Foreign Assets Control.
2. Because of the membership in or contribution to or management, administration or services rendered to or received from any organization or association, whether voluntary or involuntary.
3. Caused by or resulting from the rendering of, or failure to render, any and all travel services. Travel Services as used in this endorsement, may include but are not limited to:
    a. Advertising, advising, inspecting, investigating or making recommendations in the insured's capacity as a travel agent, consultant, broker or an agent or representative thereof;
    b. Leasing, chartering or arranging for an accommodations or means of transportation;
    c. Issuance or delivery of tickets, vouchers, reservations or confirmations;
    d. Acting in any fiduciary capacity to include issuance of travel insurance or travel life insurance; or
    e. Acting in any capacity as a trustee for client's property or funds held in float on behalf of clients and suppliers.
4. Caused by or resulting from the failure of any computer or systems, when used to provide travel services.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

Copyright, Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

 **FARMERS** INSURANCE

J**6345**
**1st Edition**

## EXCLUSION - VIOLATION OF STATUTES THAT GOVERN
## E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF
## SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS LIABILITY COVERAGE FORM**

The following exclusion is added to Paragraph **B. Exclusions - Applicable To Business - Liability Coverage.**

**B. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury", "property damage", "personal injury" or "advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

 **FARMERS** INSURANCE

ᴇ**2042**
**2nd Edition**

## MULTIPLE OR ENHANCED DAMAGES
## EXCLUSION

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS LIABILITY COVERAGE FORM**

The following exclusions are added to Section **B. Exclusions:**

1. **Applicable to Business Liability Coverage**

   This insurance does not apply to:

   **r. Multiple Or Enhanced Damages Because of "Bodily Injury", "Property Damage", or "Personal and Advertising Injury."**

   The enhanced or multiple amount of damages awarded against any insured including, but not limited to, double or treble damages, whether or not awarded as compensation, because of "bodily injury", "property damages" or "personal and advertising injury".

   **s. Taxes, Fines or Penalties**

   Taxes, fines or penalties that are awarded or imposed against any insured.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

Copyright, Insurance Services Office, Inc., with its permission.

**Policy Number:** 60548-58-54

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



**FARMERS**
**INSURANCE**

j**6351**
**2nd Edition**

### LIMITED TERRORISM EXCLUSION
### (OTHER THAN CERTIFIED ACTS OF TERRORISM);
### CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the policy number indicated above.

### SCHEDULE

| |
|---|
| The **Exception Covering Certain Fire Losses** (Paragraph **B.2.**) applies to property located in the following state(s): |
| California, Hawaii, Iowa, Illinois, Massachusetts, Maine, Missouri, North Carolina, New Jersey, New York, Oregon, Rhode Island, Virginia, Washington, Wisconsin, West Virginia |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** The following definitions are added with respect to the provisions of this endorsement:

**1.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**2.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act. However, "other act of terrorism" does not include an act which meets the criteria set forth in Paragraph **b.** of the definition of "certified act of terrorism" when such act resulted in aggregate losses of $5 million or less.

**B.** The **Property Coverage Form** attached to this policy is amended as follows:

**1.** The following exclusion is added:

### EXCLUSION OF AN "OTHER ACT OF TERRORISM"

We will not pay for loss or damage caused directly or indirectly by an "other act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But this exclusion applies only when one or more of the following are attributed to such act:

**a.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**b.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials; or

   **c.** The total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "other acts of terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident.

   With respect to this item, **B.1.c.** the immediately preceding paragraph describes the threshold used to measure the magnitude of an "other act of terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an "other act of terrorism", there is no coverage under this Policy.

  **2. Exception Covering Certain Fire Losses**

   The following exception to the Exclusion in Paragraph **B.1.** applies only if indicated and as indicated in the Schedule of this endorsement.

   If an "other act of terrorism" results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the exception does not apply to insurance provided under business income and/or extra expense coverage or endorsements that apply to those coverages.

**C.** The **Liability Coverage Form** attached to this policy is amended as follows:

  **1.** The following exclusion is added:

   This insurance does not apply to:

   **TERRORISM**

   "Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism". However, this exclusion applies only when one or more of the following are attributed to such act:

   **a.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

   **b.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

     **(1)** Physical injury that involves a substantial risk of death; or
     **(2)** Protracted and obvious physical disfigurement; or
     **(3)** Protracted loss of or impairment of the function of a bodily member or organ; or

   **c.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

   **d.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

   **e.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

   With respect to this exclusion, Paragraphs **C.1.a.** and **b.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**2.** The following definition is added:

    **a.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Form to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage" or "personal and advertising injury" as may be defined in any applicable Coverage Form.

## D. APPLICATION OF OTHER EXCLUSIONS

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

## E. CAP ON CERTIFIED TERRORISM LOSSES

The following limitation applies to property and liability coverage for any one or more "certified acts of terrorism" that are not excluded by the terms of Paragraph **D.**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



**FARMERS**
**INSURANCE**

J**7230**
**1st Edition**

## SUPPLEMENTARY PAYMENTS

This endorsement modifies insurance provided under the following:

APARTMENT OWNERS LIABILITY COVERAGE FORM
BUSINESSOWNERS COVERAGE FORM
BUSINESSOWNERS LIABILITY COVERAGE FORM
CONDOMINIUM LIABILITY COVERAGE FORM

Paragraph **d.** or **f. Coverage Extension    Supplementary Payments** of the applicable coverage form is deleted and replaced with the following:

**Coverage Extension    Supplementary Payments**

**(1)** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**(a)** All expenses we incur.

**(b)** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

**(c)** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

**(d)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**(e)** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**(f)** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**(g)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the limit of liability.

**(2)** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**(a)** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**(b)** This insurance applies to such liability assumed by the insured;

**(c)** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**(d)** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**(e)** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**(f)** The indemnitee:

**(i)** Agrees in writing to:

       **i.**    Cooperate with us in the investigation, settlement or defense of the "suit";

       **ii.**   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

       **iii.**  Notify any other insurer whose coverage is available to the indemnitee; and

       **iv.**  Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

  **(ii)**  Provides us with written authorization to:

       **i.**    Obtain records and other information related to the "suit"; and

       **ii.**   Conduct and control the defense of the indemnitee in such "suit".

**(3)**  So long as the conditions in Paragraph **(2)** are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Subparagraph **b.(2)** of the Contractual Liability Exclusion, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**(a)**  We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

**(b)**  The conditions set forth above, or the terms of the agreement described in Paragraph **(2)(f)** above, are no longer met.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

**FARMERS**
**INSURANCE**

## ADDITIONAL CONDITIONS

Applicable only if this policy is issued by the Truck Insurance Exchange or Farmers Insurance Exchange

### RECIPROCAL PROVISIONS

As used in these provisions the term "Underwriters Association" means the Truck Underwriters Association or the Farmers Underwriters Association respectively, attorney-in-fact for the Insurance Exchange issuing the policy.

This policy is made and issued in consideration of your premium payment to us. It is also issued in consideration of the information you gave to us during the application process, some of which is set out in the policy Declarations, and in consideration of the Subscription Agreement, which is provided to you and is incorporated herein by reference. You acknowledge that you have read, understood and agree to all the terms and conditions of the Subscription Agreement. Among other things, the Subscription Agreement appoints your Attorney-in-Fact, authorizes your Attorney-in-Fact to execute interinsurance policies between you and other subscribers and to perform various functions, and addresses compensation of the Attorney-in-Fact.

Nothing in this policy is intended, or shall be construed, to create either:
a. A partnership or mutual insurance association, or
b. Any joint liability.

We may sue or be sued in our own name, as though we were an individual, if necessary to enforce any claims which arise under this policy. In any suit against us, service of process shall be under the Underwriters Association attorney-in-fact. Membership fees which you pay are not part of the premium. They are fully earned when you are granted membership and coverage is effective. They are not returnable. However, they may be applied as a credit to membership fees required you for other insurance which we agree to write.

We hold the Annual Meeting of the members of the Truck Insurance Exchange at our Home Office at Los Angeles, California, on the first Tuesday following the first Monday following the 15th day of March of each year at 1:00 p.m. If this policy is issued by the Farmers Insurance Exchange such meeting is held at the same place on the first Monday following the 15th of March of each year at 2:00 P.M. The Board of Governors may elect to change the time and place of the meeting. If they do so, you will be mailed a written or printed notice at your last known address at least ten days before such a time. Otherwise, no notice will be sent to you.

The Board of Governors shall be chosen by subscribers from among yourselves. This will take place at the Annual Meeting or at any special meeting which is held for that purpose. The Board of Governors shall have full power and authority to establish such rules and regulations for our management as are not inconsistent with the subscribers' agreements.

Your premium for this policy and all payment made for its continuance shall be payable to us at our Home Office or such location named by us in your premium notice. The funds which you pay shall be placed to your credit on our records. They will be applied to the payment of your proportion of losses and expenses and to the establishment of reserves and general surplus. The Board of Governors or its Executive Committee has the authority to deposit, withdraw, invest and reinvest such funds. You agree that any amount which the Board of Governors allocates to our surplus fund may be retained by us. Also, after provision is made for all of our liabilities, it may be applied to any purpose deemed proper and advantageous to you and other policyholders.

This policy is nonassessable.

### SPECIAL PROVISIONS

(Applicable only if this policy is issued by Mid-Century Insurance Company.)

Policy fees which you pay are not part of the premium. They are fully earned when the policy is issued. They are not returnable. However, they may be applied as a credit to policy fees required of you for other insurance which we agree to write.

This policy shall not be effective unless countersigned on the Declarations page by a duly authorized representative of the Company named on the Declarations Page.

The Company named on the Declarations has caused this policy to be signed by the officers shown below.

**FARMERS INSURANCE EXCHANGE**
By Farmers Underwriters Association,
Attorney-in-Fact

**MID-CENTURY INSURANCE COMPANY**

**TRUCK INSURANCE EXCHANGE**
By Truck Underwriters Association,
Attorney-in-Fact

Secretary

President